**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **Cicel (Beijing) Science & Technology Co., Ltd.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Misonix, Inc., Stavros Vizirgianakis, Scott Ludecker, John Salerno, Richard Zaremba, John W. Gildea, Charles Miner, III, Patrick McBrayer, and Thomas M. Patton,**<br><br>**Defendants.** | Case No. 17 Civ. 1642 (ADS) (SIL) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

WILLIAMS AND CONNOLLY LLP

Alexander S. Zolan
1330 Avenue of the Americas, Suite 23A
New York, NY 10019
Telephone: (202) 434-5000

Dated: May 19, 2017

*Attorney for Defendants Misonix, Inc., Stavros Vizirgianakis, Scott Ludecker, John Salerno, Richard Zaremba, John W. Gildea, Charles Miner, III, Patrick McBrayer, and Thomas M. Patton*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………ii

I.   STATEMENT OF FACTS ........................................................................ 2

II.   ARGUMENT...................................................................................... 6

   A.   Legal Standard ............................................................................. 6

   B.   Cicel's Breach of Contract Claim Should Be Dismissed (Count
        Four)........................................................................................ 7

        1.   Cicel's Breach of Contract Claim Does Not State a
             Plausible Claim for Relief...................................................... 7

        2.   Cicel Is Barred from Seeking Specific Performance ......................... 8

   C.   Cicel's Tort and Fraud-Related Claims and Its Request for
        Punitive Damages Also Should Be Dismissed for Being
        Inadequately Pled And/Or Duplicative of the Breach of Contract
        Claim...................................................................................... 10

        1.   Conversion (Count Five) ..................................................... 11

        2.   Tortious Interference with Contract (Count Two)........................... 11

        3.   Tortious Interference with Prospective Contract (Count
             Three)........................................................................... 13

        4.   Fraudulent Inducement (Count Six) ......................................... 14

        5.   Unfair Competition (Count One).............................................. 16

        6.   Punitive Damages ............................................................. 19

   CONCLUSION ……………………………………………………………… 20

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504 (2d Cir. 1991) ...............................................19

*Adv. Global Tech., LLC v. XM Satellite Radio, Inc.*, No. 07 Civ. 3654 (JSR), 2007 WL 3196208 (S.D.N.Y. Oct. 29, 2007) ...................................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................6, 7, 8, 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................6

*Computerized Radiological Svcs. v. Syntex Corp.*, 786 F.2d 72 (2d Cir. 1986) ..........................14

*DiPilato v. 7–Eleven, Inc.*, 662 F. Supp. 2d 333 (S.D.N.Y. 2009) ..................................................9

*Dorset Industries, Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395 (E.D.N.Y. 2012) ..............................................................................................................................18

*Enzo Biochem., Inc. v. Amersham PLC*, 981 F. Supp. 2d 217 (S.D.N.Y. 2013) ..........................12

*G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233 (S.D.N.Y. 2001) ..............................14

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ........................................................7, 16

*Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243 (2d Cir. 2002) ...............................................9

*Medical Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F. Supp. 2d 643 (S.D.N.Y. 2003) ...................................................................................................................12

*Milton Abeles, Inc. v. Farmers Pride, Inc.*, No. 03 Civ. 6111 (DLI) (WDW), 2007 WL 2028069 (E.D.N.Y. July 11, 2007) ..................................................................................13

*Naughright v. Weiss*, 826 F. Supp. 2d 676 (S.D.N.Y. 2011) ........................................................16

*Norte v. Worldbusiness Capital, Inc.*, No. 14 Civ. 10143 (CM), 2015 WL 7730980 (S.D.N.Y. Nov. 24, 2015) ..................................................................................13

*Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398 (S.D.N.Y. 2012) ..........................12

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ............................................................................6

*Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc.*, 672 F.2d 1095 (2d Cir. 1982) .................................................................................17

*S.W.B. New England, Inc. v. R.A.B. Food Grp., LLC.*, No. 06 Civ. 15357 (GEL), 2008 WL 540091 (S.D.N.Y. Feb. 27, 2008)...................................................................9, 10

*Sandrino v. Michaelson Assocs., LLC*, No. 10 Civ. 7897 (BSJ), 2012 WL 5851135 (S.D.N.Y. Nov. 19, 2012) ..............................................................................18

*Scalfani v. Misonix, Inc.*, No. 16 Civ. 5218 (ADS) (AKT) (E.D.N.Y.)......................................4, 5

*Semper v. N.Y. Methodist Hosp.* 786 F. Supp. 2d 566 (E.D.N.Y. 2011) .......................................12

*Symquest Group, Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257 (E.D.N.Y. 2016)...................12

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250 (S.D.N.Y. 2005).......................19

*U.S. v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326 (S.D.N.Y. 2009) ......................................7, 8

*Volmar Distributors, Inc. v. N.Y. Post Co., Inc.*, 899 F. Supp. 1187 (S.D.N.Y. 1995) ........................................................................................................................17, 18

*Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ....................................................................................................19

*Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383 (S.D.N.Y. 2004) .................................11

## STATE CASES

*Americana Petroleum Corp. v. Northville Indus. Corp.*, 200 A.D.2d 646 (2d Dep't 1994) .........................................................................................................................15

*Carvel Corp. v. Noonan*, 3 N.Y.3D 182 (2004)...............................................................................14

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382 (1987).............................................19

*Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435 (1st Dep't 1988)......................................16

*JHH Pictures, Inc. v. Rawkus Entertainment LLC*, 291 A.D.2d 356 (1st Dep't 2002) .........................................................................................................................13, 14

*Lama Holding Co. v. Smith Barney Inc.* 88 N.Y.2d 413 (1996)....................................................12

*MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*, 927 N.Y.S.2d 517 (Sup. Ct. 2011) ...........................................................................................................................15

*Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Co.*, 101 N.Y.S.2d 483 (N.Y. Sup. Ct. 1950) ............................................................................................................17

*Prozeralik v. Capital Cities Comm'ns, Inc.*, 82 N.Y.2d 466 (1993)..............................................19

*Rocanova v. Equitable Life Assurance Society of the U.S.*, 83 N.Y.2d 603 (1994) .....................15

*Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409 (2001)...................................................9

*Van Wagner Adv. Corp. v. S&M Enters.*, 67 N.Y.2d 186 (1986) ....................................................9

*WIT Holding Corp. v. Klein*, 282 A.D.2d 527 (2d Dep't 2001) ....................................................16

*Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416 (1999) ....................................................11

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 9(b) ....................................................................................1, 6, 16

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 6

Foreign Corrupt Practices Act ............................................................................................ passim

Defendant Misonix, Inc., a publicly-traded medical device manufacturer, terminated its distribution agreement with its former distributor in China, Plaintiff Cicel (Beijing) Science & Technology Company, in September 2016 after uncovering evidence of Cicel's business practices that were inconsistent with Misonix's policies and raised concerns under the Foreign Corrupt Practices Act ("FCPA").  After the termination, Misonix filed a Form 8-K, notifying the Securities and Exchange Commission and the investing public that it had contacted the Department of Justice and the SEC to voluntarily report these questionable business practices, which potentially implicated the FCPA.  The Form 8-K also stated that Misonix had engaged outside counsel to conduct an internal investigation.  Not surprisingly, Misonix was delayed in filing its Form 10-Q for the quarter that ended September 30, 2016.  When that Form 10-Q was filed in March 2017, it reported further details about the company's internal investigation, including that Misonix had spent nearly $2 million on its investigation and had provided documents and other information to the SEC and DOJ.

Despite these developments, Cicel filed suit, alleging that Misonix breached the parties' distribution agreement, and that Misonix and eight individual officers and directors of the company (collectively, the "Defendants") committed fraud and various other torts that are all grounded in the same alleged breach of contract.  Cicel's claims hinge on a central and illogical premise—that Misonix's decision to publicly implicate itself (through the acts of Cicel) in potential FCPA violations, report the conduct to the DOJ and SEC, and spend millions of dollars investigating the conduct—was a ruse simply to escape its contract with Cicel.

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Cicel's Amended Complaint should be dismissed in its entirety, and each of its claims fails for multiple reasons.  Cicel's breach of contract claim, brought against Misonix only, is beyond implausible on its face;

it would require a finding that Misonix made fraudulent SEC filings in which it lied about reporting potentially unlawful conduct to the SEC and DOJ, thereby exposing itself to liability for securities fraud just so it could cut Cicel—which also happens to be Misonix's largest customer—out of its distribution network.  Such a pleading does not satisfy the *Iqbal/Twombly* standard, as interpreted in this Circuit.  The breach of contract claim also should be dismissed because Cicel has failed to plead facts sufficient to support its extraordinary request for specific performance.

Cicel's other claims, brought against all Defendants, are simply an effort to turn what is a breach of contract action between two companies into fraud and tort claims against not only Misonix but numerous of its officers and directors, who are not specifically alleged to have done anything other than approve Misonix's termination of its relationship with Cicel.  These tort claims are impermissibly duplicative of the breach of contract claim.  Moreover, each also suffers from other pleading defects, such as failure to plead essential elements.  Accordingly, all of the tort claims should be dismissed.

# I.      STATEMENT OF FACTS

Misonix, a public company based in Farmingdale, New York, is a leading manufacturer of ultrasonic surgical devices.  Amended Complaint ("Am. Compl.") ¶ 2 (Dkt. 6).  Misonix's products are used worldwide, including in China.  *Id.* ¶ 13.

On May 20, 2013, Misonix and Cicel entered into a "Sole Distribution Agreement" ("Agreement") for Cicel to operate as the distributor of certain Misonix products in China.  *Id.*, Ex. A.  Cicel, as the distributor, had many obligations under the Agreement, including:

> 6.1.4    Use its best endeavors to develop, promote and expand the sale, distribution and usage of the [Misonix] Products throughout the Territory.

*          *          *

> 6.1.8    Submit a report to [Misonix] concerning the condition of [Cicel] in general and the activities of [Cicel] with respect to the [Misonix] Products in particular,

2

whenever material changes or developments occur, and otherwise within 30 days after receipt of a request to this effect from [Misonix].

6.1.9    Provide [Misonix] with a market report, whenever the sales prices of [Cicel] or of competitors are subjected to material changes and otherwise within 30 days after receipt of a request to this effect from [Misonix].

6.1.10  Provide [Misonix] annually, in the month of May, with a sales report regarding the preceding 11 months and with a sales forecast concerning the coming 12 months.

*Id.*, Ex. A, at 5-6.

Pursuant to those terms, Misonix on several occasions requested that Cicel provide reports on the market as well as Cicel's activities in promoting and selling Misonix products. *See, e.g.*, *id.*, Exs. C-H, M. In fact, in a June 1, 2015 email to Cicel's executives attached to the Amended Complaint, Misonix's then-Chief Executive Officer, Michael McManus, reminded Cicel that it was obligated to provide this information pursuant to "Section 6.1.8, 6.1.9, and 6.1.10." *Id.*, Ex. D.

In April 2016, Misonix's management informed Misonix's Board of Directors of violations of Misonix's policies and procedures, as well as possible violations of laws and regulations, involving Mr. McManus, and other Misonix personnel. Decl. of Alexander S. Zolan, Ex. 1 ("Form 10-Q"), at 21. Mr. McManus's employment with the Misonix subsequently ceased. *Id.* In mid-May 2016, the Audit Committee of the Board of Directors, with the assistance of external counsel, began an investigation into these matters, which resulted in Misonix notifying the SEC and DOJ about possible FCPA violations involving Cicel. *Id.*

On September 27, 2016, Misonix terminated the Agreement in a letter to Cicel. *Id.*, Ex. B. The next day Misonix filed a Form 8-K, stating that, on September 27 and 28, 2016, Misonix had contacted the SEC and DOJ to "voluntarily inform both agencies that [Misonix] may have had knowledge of certain business practices of the independent Chinese entity [Cicel] that distributes

3

its products in China, which practices raise questions under the Foreign Corrupt Practices Act." *Id.*, Ex. N.  The Form 8-K also stated that Misonix's Audit Committee of the Board of Directors had engaged outside counsel to conduct an internal investigation to review the matter, and that the investigation was ongoing.  *Id.*, Ex. N.

On March 13, 2017, Misonix filed its Form 10-Q for the quarterly period that ended on September 30, 2016.  *See* Form 10-Q.  Misonix explained that it was not able to timely file the Form 10-Q because it had, for several months and with the assistance of outside counsel, "been conducting a voluntary investigation into the business practices of the independent Chinese entity [Cicel] that previously distributed our products in China and [Misonix's] knowledge of those business practices, which may have implications under the Foreign Corrupt Practices Act [], as well as into various internal controls issues identified during the investigation." *Id.* at 3.  The Form 10-Q also stated that Misonix had "provided and will continue to provide documents and other information to the SEC and the DOJ, and are cooperating fully with these agencies in their investigations of these matters." *Id.* at 3, 8, 13, 24.  In its Form 10-Q, as in its Form 8-K, Misonix stated that it may face "the imposition of fines, civil and criminal penalties, which are not currently estimable, as well as equitable remedies, including disgorgement of any profits earned from improper conduct and injunctive relief, limitations on the Company's conduct, and the imposition of a compliance monitor." *Id.* at 13, 24.  Misonix also revealed that it "may suffer other civil penalties or adverse impacts, including lawsuits by private litigants in addition to the lawsuit that has already been filed [*Scalfani v. Misonix, Inc.*, No. 16 Civ. 5218 (ADS) (AKT) (E.D.N.Y.)], or investigations and fines imposed by local authorities." *Id.* at 13, 24.

Misonix further noted that Cicel had been Misonix's largest customer during the prior three fiscal years, resulting in about $8 million in sales from the relationship.  *Id.* at 13, 24.  However,

with the discovery of the potential FCPA violations, Misonix terminated that lucrative relationship, and as of March 2017, had spent about $1.9 million on its internal investigation. *Id.* at 13, 19. The potential FCPA implications of Cicel's business practices also led to a putative class action securities litigation, which is ongoing before this Court. *Id.* at 12-13, 24; *see also Scalfani v. Misonix, Inc.*, No. 16 Civ. 5218 (ADS) (AKT) (E.D.N.Y.), Dkt. 17 ("Defendants' alleged misconduct centers around allegations of violations of the Foreign Corrupt Practices Act [] in China. Plaintiffs must thus conduct their investigation in both the U.S. and China.").

In addition to its internal investigation, Misonix announced that it would revise and strengthen its internal policies and procedures regarding anti-corruption compliance, including compliance with the FCPA and other applicable anti-bribery provisions. Form 10-Q, at 23. Further, Misonix instituted a more robust screening process for its independent distributors with respect to legal compliance, including compliance with the FCPA and other applicable anti-bribery provisions. *Id.*

Just ten days after this Form 10-Q was filed, however, Cicel filed this action, alleging upon "information and belief" that Misonix's September 28, 2016 Form 8-K, as well as Misonix's periodic requests for market reports during its years of conducting business with Cicel, were part of a "bad faith scheme to damage Cicel's business reputation," and to "[cut] Cicel out of the distribution network built by Cicel itself." Am. Compl. ¶¶ 22, 40. Cicel thus claims that Misonix has breached the Agreement, and seeks specific performance. *Id.* ¶¶ 68-75 (Count Four). Cicel also brings several other tort and fraud-related claims against the company and eight individual defendants, all of whom are officers or directors of Misonix; those claims arise solely from Misonix's alleged breach of contract. *Id.* ¶¶ 45-67, 76-85 (Counts One, Two, Three, Five, and Six). Each of these pleaded causes of actions fails to state a claim and should be dismissed.

## II.    ARGUMENT

### A.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering whether a complaint states a claim upon which relief can be granted, the court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determine whether remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement of relief." *Id.* at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In deciding a motion to dismiss, a court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)) (emphasis added).

Under Rule 9(b), "[i]n alleging fraud [], a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  The Rule requires the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation omitted).

### B.      Cicel's Breach of Contract Claim Should Be Dismissed (Count Four)

Cicel's breach of contract claim, brought against Misonix only, fails for two reasons:  First, the claim should be dismissed because Cicel's allegations do not state a plausible claim for relief. Second, Cicel seeks only specific performance, but that remedy is not available for the alleged breach of a requirements contract involving non-unique goods.

### 1.      Cicel's Breach of Contract Claim Does Not State a Plausible Claim for Relief

In alleging Misonix's "bad faith scheme" to breach the distribution contract, Cicel asserts that Misonix committed securities fraud by falsely stating that it had self-reported potential criminal conduct to the DOJ and the SEC, simply to escape its contract with Cicel.  Nowhere in the Complaint are there any factual allegations to explain—in a remotely plausible way—why a public company would voluntarily expose itself to potential criminal and civil liability under the FCPA and the federal securities laws, and spend millions of dollars on lawyers to investigate the reported conduct, simply to avoid a contract with a distributor.  "Judicial experience and common sense," which courts apply when evaluating nonsensical allegations such as these, *Iqbal*, 556 U.S. at 679, dictate that such allegations are implausible.  *See U.S. v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326, 342 (S.D.N.Y. 2009) (("[C]ommon sense counsels against inferring that a substantial international bank, bearing an historic name and presumably wishing to maintain a global reputation for integrity and honorable dealing, would, with no stake in the criminal securities fraud itself, and no financial incentive other than to maintain the patronage of a fee-generating client, enter into a conspiracy with two Cypriot depositors to defraud investors in the United States.").

Notably, in making its allegations, Cicel ignores established facts from public sources that the Court can and should consider on a motion to dismiss.  For example, Misonix's SEC filings

report that the company not only informed the SEC and DOJ of its investigative findings, but also has turned over documents and other information, may face civil and criminal punishments, and has spent almost $2 million on an internal investigation into the matter.  Cicel also fails to mention that as a result of Misonix's disclosures regarding Cicel and the FCPA, Misonix faces a putative securities class action in this very Court.  Finally, Cicel does not state that Misonix has publicly disclosed that Cicel, prior to the FCPA investigation, had been its largest customer, with about $8 million in sales.  Cicel was fully aware of Misonix's securities filings, because it selectively quotes them in the Complaint, but omitted all of this factual information from its allegations, because that information highlights the implausibility of Cicel's pleaded claims.

"Common sense" does not plausibly support that Misonix terminated its lucrative distributor relationship its largest customer, made false SEC filings about its disclosures to the SEC and the DOJ (for which Misonix might face other civil or criminal repercussions, not to mention shareholder fallout), and spent almost $2 million (*i.e.*, a quarter of Misonix's sales through Cicel) on the related investigation for the sole purpose of cutting out Cicel from its distribution network.  *Lloyds TSB Bank PLC*, 639 F. Supp. 2d at 342.  Indeed, for Cicel to survive this motion to dismiss, the Court must find it plausible that Misonix falsely stated that it had reported potential criminal activity to the SEC in a filing submitted to the very same SEC.  Such a finding would, at a minimum, be contrary to both "judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  For these reasons, the Court should dismiss Cicel's breach of contract claim.

### 2.  Cicel Is Barred from Seeking Specific Performance

Count Four should also be dismissed because Cicel is not entitled to specific performance, the only remedy it seeks for its breach for contract claim.  *See* Am Compl. ¶ 74 (requesting that the Court direct "Misonix to specifically perform all of its obligations under the Agreement to resume filling Cicel's orders for the shipment of Products, replacement parts and related supplies

and to repair or replace defective Products under warranty at the same prices and terms as Misonix did prior to its breach of the Agreement").  In arguing for specific performance, Cicel alleges that the "goods [] are unique in kind, quality and personal association." *Id.* ¶ 72.

In New York, "before the 'extraordinary' equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002).  "A court may grant specific performance where money damages would not suffice, such as when 'the subject matter of the particular contract is unique and has no established market value.'" *DiPilato v. 7–Eleven, Inc.*, 662 F. Supp. 2d 333, 345 (S.D.N.Y. 2009) (citing *Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409 (2001)).  "The word 'uniqueness' is not [] a magic door to specific performance." *Van Wagner Adv. Corp. v. S&M Enters.*, 67 N.Y.2d 186, 192 (1986); *see also Adv. Global Tech., LLC v. XM Satellite Radio, Inc.*, No. 07 Civ. 3654 (JSR), 2007 WL 3196208, at *3 (S.D.N.Y. Oct. 29, 2007) (granting motion to dismiss, including on plaintiff's request for specific performance, where the plaintiff's "bare and conclusory statement that the [] agreement involves a 'unique relationship' is nothing but window dressing and does not, of itself, give rise to any equitable relief").  Rather, "[t]he point at which breach of contract will be redressable by specific performance [] must lie not in any inherent physical uniqueness of the property but instead in the uncertainty of valuing it." *Van Wagner*, 67 N.Y.2d at 193.

In fact, courts have recognized that a "mass-produced item is the antithesis of the word 'unique.'" *S.W.B. New England, Inc. v. R.A.B. Food Grp., LLC.*, No. 06 Civ 15357 (GEL), 2008 WL 540091, at *7 (S.D.N.Y. Feb. 27, 2008) (internal quotation omitted).  In *S.W.B.*, a kosher food products distributor sought specific performance under Massachusetts law, which, like New York,

9

states that specific performance is proper only where "the goods are unique." *Id.* The court noted

that other courts had dismissed similar claims for specific performance even where "the plaintiff

had tailored its business around the defendant's product." *Id.* (internal citations omitted). Rather,

a request for specific performance of a requirements contract would not be dismissed where the

plaintiff "has alleged not merely that it has chosen to tailor its business around [the defendant's]

products, but that other [products] simply are not adequate replacements for [the defendant's]

products." *Id.*

Here, Cicel has not alleged that it has no adequate replacements for Misonix's products.

Cicel's request for specific performance does little more than recite that the Misonix products Cicel

distributed are "unique," with no supporting facts, and ignores that these goods are sold around

the world and have established market value. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In

fact, the Agreement, which Cicel attaches to its Amended Complaint, contains a price list for each

product Cicel purchased from Misonix. *See* Am. Compl., Ex. A, at 19 (Price Lists), 24 (2013

Misonix Surgical Distributor Price List). In short, Count Four should be dismissed because Cicel

has not alleged any facts supporting the "extraordinary" relief of specific performance.

### C. Cicel's Tort and Fraud-Related Claims and Its Request for Punitive Damages Also Should Be Dismissed for Being Inadequately Pled And/Or Duplicative of the Breach of Contract Claim

Cicel, aside from its breach of contract claim, brings five tort and fraud-related claims,

each of which should be dismissed, among other reasons, for being duplicative of its breach of

contract claim. These claims, aside from acting as vehicles to allow Cicel to bring unsubstantiated

claims against the eight individual defendants, also are a conduit for Cicel to request punitive

damages. The Court should dismiss these counts because Cicel does not—and cannot—plead facts

adequate to warrant such extraordinary relief.

### 1.      Conversion (Count Five)

In New York, "[a] conversion claim [] that merely duplicates a breach of contract claim is not actionable." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004); *see also Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417 (1999). In *Matzan v. Eastman Kodak Co.*, the court dismissed the plaintiff's conversion claim, noting that the claim was "for nonperformance under an alleged agreement and his remedy is to sue for breach of contract. . . . A breach of contract does not give rise to a tort action in the absence of additional allegations of wrongdoing." 521 N.Y.S.2d 917, 918 (1987) (internal citations omitted).

Cicel alleges in Count Five that it paid Misonix $202,148.22 for products that Misonix later declined to deliver, and that Cicel has made "multiple requests" for Misonix to "honor its contractual obligations." Am. Compl. ¶ 77 (emphasis added). Despite explicitly alleging a contractual violation, Cicel nonetheless asserts that Misonix's alleged non-return of the funds to Cicel constitutes conversion. *Id.* ¶ 78. Cicel's conversion claim therefore is simply a breach of contract claim for nonperformance. Count Five therefore should be dismissed as duplicative of its breach of contract claim.

### 2.      Tortious Interference with Contract (Count Two)

In its claim for tortious interference with contract, Cicel alleges in Count Two that Defendants intentionally interfered by "wrongfully terminating the Agreement" and "actively and intentionally seeking to undermine Cicel's business reputation," and thus "forc[ing] Cicel's breach of [its] agreements" with Cicel's sub-distributors and other customers. *Id.* ¶ 57.

Under New York law, a tortious interference claim requires a plaintiff to plead and prove "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Semper v.*

11

*N.Y. Methodist Hosp.* 786 F. Supp. 2d 566, 583 (E.D.N.Y. 2011) (quoting *Lama Holding Co. v. Smith Barney Inc.* 88 N.Y.2d 413, 424 (1996)).

Cicel does not allege that any of its sub-distributors or other customers breached their contracts with Cicel, but rather that <u>Cicel</u> has breached its contracts with them, as a result of Misonix's alleged breach of contract.  That is fatal to Cicel's claim; tortious interference can exist only when a <u>third party</u> allegedly has breached its contract with the plaintiff.  Cicel has alleged no such thing.  Its allegations are therefore insufficient to state a claim.  *Symquest Group, Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 267 (E.D.N.Y. 2016) (granting motion to dismiss tortious interference with contract claim where plaintiff "does not allege that any of [the third parties] breached their contracts, but rather that [the plaintiff] will breach or has breached its contracts with third parties as a result of [the defendant's] alleged breach of contract with [the plaintiff]"); *see also Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404-405 (S.D.N.Y. 2012) (collecting cases).

In addition to failing to allege the necessary breach by a third party, Cicel's tortious interference claim is insufficient because it merely restates its breach of contract claim.  *See, e.g.*, *Enzo Biochem., Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 225 (S.D.N.Y. 2013) (holding that plaintiff must allege "more than mere contract breach" to state a valid claim for tortious interference).  More specifically, Cicel asserts that Defendants interfered with its sub-distributor contracts by "wrongfully terminating the Agreement."  Am. Compl. ¶ 57.  In other words, Cicel "bases its tort claim on the same allegations that it argues constitutes breach of contract."  *Medical Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F. Supp. 2d 643, 650 (S.D.N.Y. 2003) (dismissing plaintiff's tortious interference with contract claim for being duplicative of its breach of contract claim).  As courts have repeatedly held, tortious interference claims that are grounded

in breach of contract "should be dismissed as duplicative of the contract based claims." *JHH Pictures, Inc. v. Rawkus Entertainment LLC*, 291 A.D.2d 356, 357 (1st Dep't 2002) (dismissing tortious interference claims grounded in defendant's failure to perform the contract); *see also Norte v. Worldbusiness Capital, Inc.*, No. 14 Civ. 10143 (CM), 2015 WL 7730980, at *12 (S.D.N.Y. Nov. 24, 2015) ("Because New York law does not permit the same conduct to be assigned as both a breach of contract and a tort, Plaintiffs' tortious interference claim is duplicative of its breach of contract claim, and so would have to be dismissed on that ground alone.").  Count Two should therefore be dismissed.

### 3.     Tortious Interference with Prospective Contract (Count Three)

Cicel also alleges that Defendants "directly interfered with Cicel's prospective relationships with [] third-parties by the use of dishonest, unfair, or improper means." Am. Compl. ¶ 65.  Not only does Cicel not allege what the "dishonest, unfair, or improper means" were, but it fails to allege any conduct by Defendants directed towards a third party (*e.g.*, the prospective relationships).  For this reason, Count Three must also be dismissed.

To state a claim for tortious interference with prospective contractual relations, Cicel must allege: "(1) that it had a business relationship with a third party; (2) that the defendants knew of that relationship and intentionally interfered with it; (3) that the defendants either acted solely out of malice or used wrongful means; and (4) that the defendants' interference caused injury to plaintiff's relationship with the third party." *Milton Abeles, Inc. v. Farmers Pride, Inc.*, No. 03 Civ. 6111 (DLI) (WDW), 2007 WL 2028069, at *4 (E.D.N.Y. July 11, 2007).  "Because courts are more protective of contracts than prospective relationships, a higher degree of interference is required is required to plead the [prospective contract] claim." *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 254 (S.D.N.Y. 2001).

A tortious interference with prospective contractual relations claim "must fail [where] defendants' alleged conduct [is] not directed towards any third party with whom [the plaintiff] had an existing or prospective relationship." *Carvel Corp. v. Noonan*, 3 N.Y.3D 182, 192 (2004) (internal quotations omitted) (collecting cases).  Here, Cicel has failed to allege that Defendants' conduct (alleged breach of the Agreement and/or undermining of Cicel's business reputation) was directed towards any of its prospective sub-distributors and other customers.   Further, as with the tortious interference with contract claim, Cicel's tortious interference with prospective contract should be dismissed for being duplicative of its breach of contract claim.  *JHH Pictures*, 291 A.D.2d at 357.

### 4.      Fraudulent Inducement (Count Six)

Count Six alleges that Defendants "fraudulently induced" Cicel to disclose confidential business information to Misonix.   Am. Compl. ¶ 82.   The Amended Complaint fails to acknowledge, however, that Cicel was <u>required</u> to disclose this supposedly confidential business information under the plain language of its contract with Misonix.

To prove fraudulent inducement in New York, a plaintiff must establish "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury." *Computerized Radiological Svcs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986).  To plead a viable cause of action for fraud arising out of a contractual relationship such as the one here, "the plaintiff must allege a breach of duty which is collateral or extraneous to the contract between the parties." *Americana Petroleum Corp. v. Northville Indus. Corp.*, 200 A.D.2d 646, 647 (2d Dep't 1994).

14

Here, the "confidential" business information that Cicel alleges the Defendants fraudulently induced Cicel to provide to Misonix includes "information concerning the location of BoneScalpels, who was using those products, whether the usage was increasing, whether other doctors were sharing the products," and other market-related information.  Am. Compl. ¶¶ 24-31.  But under Sections 6.1.8, 6.1.9, and 6.1.10 of the Agreement, Cicel was required to provide such information at the request of Misonix.  *Id.*, Ex. A, at 5.  Indeed, in the June 1, 2015 email cited in the Amended Complaint, Misonix requested the aforementioned information, and highlighted that "the Agreement provides, in several sections and among others – Section 6.1.8, 6.1.9, and 6.1.10, that upon the request of Misonix, Cicel is required to provide information and reports as requested. . . . The requirement to provide information and reports is an integral part of the Agreement."  *Id.*, Ex. D, at 2.

In other words, Cicel cannot state a claim for an alleged fraudulent inducement to provide information, when Cicel is actually required to provide the information at issue.  In an attempt to plead around the contract, Cicel alleges that Misonix did not intend on meeting its contractual obligations, and instead induced Cicel to provide this information solely to eliminate Cicel from its distribution network.  Such a claim must be dismissed because "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations."  *Rocanova v. Equitable Life Assurance Society of the U.S.*, 83 N.Y.2d 603, 614 (1994).  Further, because Defendants' alleged "material misrepresentations of fact" in requesting the confidential information are not "collateral or extraneous" to the Agreement—but rather consistent with the express contractual provisions—Count Six must be dismissed.  *MBIA Ins. Corp. v. Credit Suisse Secs. (USA) LLC*, 927 N.Y.S.2d 517, 531 (Sup. Ct. 2011) (collecting cases); *see also WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 528 (2d Dep't 2001) ("A cause of

action alleging fraud does not lie where the only fraud claim relates to a breach of contract."); *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436 (1st Dep't 1988) ("It is well settled that a cause of action for fraud will not arise when the only fraud charged relates to a breach of contract.").

Cicel's fraudulent inducement claim also fails because it is not pleaded with particularity under Rule 9(b), which  requires the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  In addition, "[w]hen a claim is brought against multiple defendants, Rule 9(b) requires that a plaintiff differentiate his allegations as to each defendant and inform each defendant separately of the specific allegations." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011).

In *Golden Archer Investments, LLC v. Skynet Financial Systems*, the complaint alleged that each of the allegedly fraudulent statements was made by the defendants, and the court dismissed the fraudulent inducement claim against all defendants because the complaint "fails to allege fraudulent inducement with the particularity required by Rule 9(b) because it does not attribute the allegedly fraudulent statements to individual defendants." No. 11 Civ. 3673 (RJS), 2012 WL 123989, at *8 (S.D.N.Y. Jan. 3, 2012).  Here, similarly, Cicel alleges that all of the defendants made false statements without specifying the alleged statements, when they were made, or who made them, and without attributing the allegedly fraudulent statements to any specific defendants. Count Six therefore should also be dismissed for this reason.

### 5. Unfair Competition (Count One)

Count One alleges that Defendants engaged in unfair competition by supposedly misappropriating (1) Cicel's confidential information and (2) "Cicel's labors, skills, expenditures

16

and good will by undermining Cicel's reputation and relationships with Cicel's sub-distributors and other customers by, *inter alia*, knowingly and falsely accusing Cicel of criminal conduct and by refusing to fill Cicel's orders for Misonix Products received from Cicel's sub-distributors and other customers." Am. Compl. ¶¶ 47-48.  These allegations fail to state a claim.

In New York, "courts have agreed that [unfair competition] proscribes 'misappropriati[ng] for the commercial advantage of one person . . . a benefit or "property" right belonging to another.'" *Volmar Distributors, Inc. v. N.Y. Post Co., Inc.*, 899 F. Supp. 1187, 1197 (S.D.N.Y. 1995) (quoting *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Co.*, 101 N.Y.S.2d 483, 498 (N.Y. Sup. Ct. 1950), *aff'd*, 279 A.D. 632, (N.Y. App. Div. 1951)).  "An unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982).

First, as to Cicel's claims that Defendants "knowingly and falsely accused Cicel of criminal conduct," this claim is not plausible.  To find otherwise would be to credit Cicel's claim that Misonix falsely reported itself to the DOJ and SEC in connection with potential criminal violations.  Such a claim should therefore be disregarded by the Court.  *Infra* pp. 7-8.

Second, Cicel does not plead necessary elements, including that Misonix is Cicel's competitor or how Misonix misappropriated Cicel's property.   In *Volmar*, the newspaper distributor plaintiffs alleged that the publisher defendant had misappropriated "the good will, supplier relationships and customer relationships which the plaintiffs had painstakingly built through their own efforts." *Id.* at 1197.  The court dismissed the unfair competition claim because the publisher defendant was not a competitor of the plaintiffs and further noted that the "complaint specifies no benefit" that the defendant received from its alleged misappropriation.  *Id.*  In support

of its dismissal, the *Volmar* court also noted that the plaintiffs did not allege that the defendant was using "plaintiffs' good will, supplier relationships, and customer relationships, nor is it receiving any benefit from others' use of those alleged 'property' rights." *Id.* at 1197-98.

In this case, Cicel likewise fails to allege that it competes with any of the Defendants, nor could it. Just like the *Volmar* plaintiffs, Cicel was a distributor for Misonix, not its competitor. Further, while Cicel offers conclusory allegations that Defendants "misappropriated" its "confidential information" and "labor, skills, expenditures, and good will," it does not allege that Defendants have in any way used the information or received any benefit from doing so. Indeed, the only alleged result of Misonix's action is "cutting out Cicel from the distribution network, for Misonix Products in the Territory, that was created by Cicel," but Cicel fails to state how the elimination of Misonix's largest customer is of any benefit to Misonix. Am. Compl. ¶ 49.

Further, "[i]t is well-settled [] that no claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the implied contractual obligations asserted in the cause of action for breach of contract." *Dorset Industries, Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 414 (E.D.N.Y. 2012). Again, in claiming that Misonix took its business information, Cicel entirely ignores that the information in question was obtained by Misonix pursuant to the express requirements of the parties' Agreement. As discussed above regarding Cicel's fraudulent inducement claim, Cicel was required to provide this information to Misonix pursuant to the Agreement, and would have no unfair competition claim but for Misonix's alleged breach of contract. Cicel has not "alleged any duty 'extraneous to, and not constituting elements of the contract.'" *Sandrino v. Michaelson Assocs., LLC*, No. 10 Civ. 7897 (BSJ), 2012 WL 5851135, at *10 (S.D.N.Y. Nov. 19, 2012) (quoting *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 389 (1987). As to Cicel's separate unfair competition

18

allegation that Misonix misappropriated Cicel's labors, skills, expenditures and goodwill by refusing to fill Cicel's orders for Misonix products, that is also "merely duplicative of [Cicel's] breach of contract claims." *Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *7 (S.D.N.Y. Mar. 24, 2009).  Accordingly, Count One should be dismissed.

### 6.    Punitive Damages

Cicel requests punitive damages for its claims of unfair competition, fraudulent inducement, tortious interference with contract, and tortious interference with potential contract. Am. Compl. ¶¶ 52, 60, 66, 84.  Although each of these counts should be dismissed for the reasons set forth above, Cicel's claim for punitive damages suffers from a separate fatal flaw.

In New York, punitive damages are appropriate in cases involving "gross, wanton, or willful fraud, or other morally culpable conduct." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 509 (2d Cir. 1991).  To obtain punitive damages in ordinary tort actions, a plaintiff must show that the defendant committed a tort under "circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton." *Prozeralik v. Capital Cities Comm'ns, Inc.*, 82 N.Y.2d 466, 479 (1993) (internal citation omitted). If the Court declines to find Cicel's unfair competition, fraudulent inducement, tortious interference with contract, and tortious interference with potential contract claims to be duplicative of its breach of contract claim, punitive damages should not be granted because Cicel has failed to allege that the Defendants "committed gross, wanton or willful fraud or other morally culpable conduct." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 264 (S.D.N.Y. 2005) (internal citation omitted).

**CONCLUSION**

For the foregoing reasons, Cicel's Amended Complaint should be dismissed with prejudice.

Dated:  May 19, 2017                              Respectfully submitted,


                                                  WILLIAMS AND CONNOLLY LLP


                                                  By: /s/ Alexander S. Zolan
                                                     Alexander S. Zolan
                                                     1330 Avenue of the Americas, Suite 23A
                                                     New York, NY 10019
                                                     Telephone: (202) 434-5000
                                                     E-Mail: Azolan@wc.com