**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
CICEL (BEIJING) SCIENCE &
TECHNOLOGY CO., LTD.,

                    Plaintiff,

            -against-

MISONIX, INC., STAVROS
VIZIRGIANAKIS, SCOTT LUDECKER,
JOHN SALERNO, RICHARD ZAREMBA,
JOHN W. GILDEA, CHARLES MINER, III,
PATRICK McBRAYER, and THOMAS M.
PATTON,

                  Defendants.

--------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-1642 (ADS)(SIL)

**APPEARANCES:**

**DEHENG CHEN, LLC**
*Attorneys for the Plaintiff*
233 Broadway, Suite 2200
New York, NY 10279
      By:    Dean T. Cho, Esq., Of Counsel

**WILLIAMS AND CONNOLLY LLP**
*Attorneys for the Defendants*
1330 Avenue of the Americas, Suite 23A
New York, NY 10019
      By:    Alexander S. Zolan, Esq., Of Counsel

**SPATT, District Judge**:

      The Plaintiff, Cicel (Beijing) Science & Technology Co., Ltd., ("Cicel" or the "Plaintiff")

commenced this action against the Defendants, Misonix, Inc. ("Misonix"), Stavros Vizirgianakis,

("Vizirgianakis"), Scott Ludecker ("Ludecker"), John Salerno ("Salerno"), Richard Zaremba

("Zaremba"), John W. Gildea ("Gildea"), Charles Miner III ("Miner"), Patrick McBrayer

("McBrayer") and Thomas M. Patton ("Patton") (collectively the "Defendants") for damages stemming from a contractual dispute between the Plaintiff and Misonix. The amended complaint, which invokes the Court's diversity jurisdiction, alleges causes of action sounding in (1) unfair competition against the Defendants, (2) tortious interference with contract against the Defendants, (3) tortious interference with a prospective contract against the Defendants, (4) breach of contract against Misonix, (5) conversion against the Defendants, and (6) fraudulent inducement against the Defendants. The Plaintiff asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) to dismiss the Plaintiff's entire amended complaint. For the following reasons, the Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted with respect to Counts I, II, III, V and VI, but denied with respect to Count IV.

## I. BACKGROUND

### A. The Factual Background

Unless otherwise noted, the following salient facts are drawn from the amended complaint and are construed in favor of the Plaintiff.

#### 1. The Parties

The Plaintiff is a Chinese corporation that promotes, markets and distributes medical devices in China and Hong Kong. With a principal place of business in Beijing and seven offices throughout China, the Plaintiff developed and maintained relationships with Chinese physicians, hospitals and other medical device customers. Sales of Misonix's products account for roughly 70% of the Plaintiff's business. Complaint ¶¶ 1, 20.

Misonix is a publically traded, New York corporation that manufactures medical devices. The company's principal place of business is 1938 New Highway, Farmingdale, NY 11735. *Id.* ¶ 2.

Vizirgianakis is the CEO, President, and Chairman of the Board of Directors ("Board") of Misonix. *Id.* ¶ 3.

Ludecker was the Senior Vice President of Global Sales and Marketing and Salerno was the Vice President of Regulatory Affairs for Misonix during portions of relevant time period. Zaremba was Misonix's former Vice President of Finance. *Id.* ¶¶ 4-6.

Miner, McBrayer and Patton were Directors on the Board of Misonix during the relevant time period. *Id.* ¶¶ 7-9.

The Complaint does not discuss Gildea's present or former position with Misonix.

## 2.  The Facts

On May 1, 2010, the Plaintiff and Misonix entered into their first distribution agreement, whereby the Plaintiff began distributing Misonix's products in China. This first distribution agreement resulted in "millions of dollars per year" in ordered products for Cicel. *Id.* ¶ 13.

On May 20, 2013, the Plaintiff and Misonix entered a second distribution agreement (the "Agreement"). Pursuant to the terms of the Agreement, the Plaintiff became Misonix's sole distributor in China and Hong Kong for certain products, namely the SonaStar Ultrasonic Aspiration System, and the BoneScalpel Ultrasonic Bone Cutting System. The Agreement went into effect on June 1, 2013 and was set to terminate on May 17, 2018. *Id.* ¶¶ 13-15.

In order to carry out the distribution of Misonix's products, the Plaintiff entered its own distribution contracts with third party distributors. This was done in compliance with the

Agreement and with the approval of Misonix.  Since June 2013, Cicel continued to build and grow this distribution network in China.  *Id*. ¶¶ 16-18.

Section 13.0 of the Agreement enumerates the reasons that the Agreement may be terminated prior to May 2018:

> [1.] The [Plaintiff] commits a breach of any of the terms of this Agreement and the breach is not remedied within 15 days after written notice by [Misonix] requiring a remedy of the same.  [2.] To the extent permitted by applicable mandatory law, either [Misonix or the Plaintiff] is declared bankrupt or becomes insolvent or subject to proceedings under any law pertaining to the relief of debtors or the settlement of debts. [3.] The [Plaintiff] fails to meet the minimum purchase requirements for two (2) consecutive quarters. [4.] "any material change" in "the present management, organization, ownership [or] location of [the Plaintiff].

*Id*. Ex. A at 11.

From June 2013 to September 2016, the Plaintiff was a "top global distributor of Misonix products."  *Id*. ¶ 20.

Beginning in November 2014, Misonix began requesting detailed business information from the Plaintiff, including sales information, customer data, competitive data, and the Plaintiff's distribution agreements in China.  *See id*. ¶¶ 23-31.  Section 6 of the Agreement details the Plaintiff's disclosure obligations to Misonix.  *Id*. ¶ Ex. A, at 4-6.

In late May 2016, at the instruction of Misonix's Board, Misonix ceased all shipments of product to the Plaintiff and began refusing to provide replacement parts or service to the Plaintiff's customers.  *Id*. ¶¶ 34, 36.

On September 2, 2016, Misonix informed the Plaintiff that it was "wind[ing] down the business relationship between Cicel and Misonix" and requested additional information from Cicel.  *Id*. ¶¶ 37-38.

On September 28, 2016, Misonix filed a Form 8-K with the Securities and Exchange Commission, informing the government and investors that it had "contacted the [SEC and DOJ] to voluntarily inform both agencies that [Misonix] may have knowledge of certain business practices of [the Plaintiff], which practices raise questions under the [Foreign Corrupt Practices Act]."

As a result of Misonix's termination of the Agreement, Cicel has been forced to breach its contracts and agreements with its own distributors and customers, has been threatened with and had to defend against lawsuits, and was "effectively blacklisted" by the Shanghai local authorities. *Id.* ¶¶ 44, 57, 59.

**B.  The Procedural Background**

On March 23, 2017, the Plaintiff commenced this action against the Defendants by filing the original complaint.

On April 5, 2017, the Plaintiff filed the amended complaint, and included multiple attachments, including the Agreement (Exhibit A) as well as correspondences between the Defendants and the Plaintiff (Exhibits B-O).

The present motion was filed on May 19, 2017 by the Defendants seeking to dismiss the entire amended complaint, pursuant to Rule 12(b)(6).

## II.  DISCUSSION

**A.  Standard of Review**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469

(2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

For the Plaintiff's fraud based claims, those portions of the complaint are subject to Rule 9(b)'s heightened pleading standard. To meet Rule 9(b)'s heightened pleading standard, these elements must be alleged with specificity. Namely, the Plaintiff must: "(1) detail the statements (or omissions) that the [P]laintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); *accord Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). "In short, a plaintiff must set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2008) (citations and quotation marks omitted). "Fraud must be pleaded with particularity while malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Houraney v. Burton & Assoc., P.C.*, 701 F. Supp. 2d 258, 260 (E.D.N.Y. 2010) (citing Rule 9(b)).

**B. Consideration of Materials Outside the Complaint**

The Defendants contend that the Plaintiff's claims ignore Misonix's SEC filings. According to the Defendants, the company's disclosures to the SEC discredit the Plaintiff's factual contentions. Memorandum of Law in Support of Motion to Dismiss ("Defendants' Brief") at 7-8. The Plaintiff contends that these documents may not be considered by the Court at the motion to dismiss stage because such documents "are premised on vague, unsworn and unsupported assertions that cannot be considered under Rule 12(b)(6). Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Brief") at 6.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6)

motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (citation and quotation marks omitted). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) *public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission*, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Environmental Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (emphasis added) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. April 28, 2010); *Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015).

Misonix's public filings with the SEC, including its Form 10-Q for the quarter that ended on September 30, 2016 are clearly permitted by Second Circuit jurisprudence. *See Pehlivian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 642-43 (S.D.N.Y. 2015); *Graal Enterprises, Ltd. v. Desourdy Int'l 1949 Inc.*, No. 95-civ.-0752, 1996 WL 353003, at *3 (S.D.N.Y. June 26, 1996).

## C. Breach of Contract (Count IV)

The Plaintiff's breach of contract claim (Count IV) alleges that Misonix breached the Agreement and seeks the remedy of specific performance. Complaint ¶¶ 69-75. Misonix contends

that the claim fails to state a plausible claim and that Cicel is not entitled to specific performance. The Plaintiff counters that it has presented a *prima facie* contract claim; that Misonix's FCPA allegations should not be considered or alternatively provide no evidence of wrongdoing; that Misonix mischaracterizes the complaint; and that the Plaintiff is entitled to specific performance. For the reasons below, the Court declines to hold that this claim fails as a matter of law. Further, the Court holds that the Plaintiff may seek the remedy of specific performance at this juncture.

Under New York law, to assert a breach of contract claim, a plaintiff must establish "(1) the existence of a contract; (2) that the plaintiff has performed his or her obligations under the contract; (3) that the defendant failed to perform his or her obligations thereunder; and (4) the plaintiff was thereby damaged." *Brooklyn 13th Street Holding Corp. v. Nextel of New York, Inc.*, 11-cv-1048, 2011 WL 6945862, at *3 (E.D.N.Y. Dec. 30, 2011) (citing *Crowley v. VisionMaker, LLC*, 512 F.2d 144, 151 (E.D.N.Y. 2007)); *accord Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806, 921 N.Y.S.2d 260, 264 (2d Dept. 2011); *Segui*, 91 F.3d at 348.

### 1. Whether the Plaintiff Establishes a Claim

The Plaintiff's complaint asserts a *prima facie* claim for breach of contract. The parties do not dispute that the contract at issue in this matter is the Agreement. Moreover, it is also undisputed that the Plaintiff performed its contractual obligations under the Agreement. The sale of Misonix's products in China under the Agreement accounted for the majority of the Plaintiff's business, and there is nothing in the record to call into question the Plaintiff's execution of that Agreement. Allegedly, Cicel diligently sold product and increased the company's market share in China and disclosed sales and other information to Misonix when requested. In addition, Misonix does not

dispute that the Plaintiff was damaged as a result of the termination of the Agreement. *See* Defendants' Brief at 8.

The parties' briefing demonstrates that there are unresolved issues of material fact regarding the breach of contract claim. Misonix contends that although it terminated the Agreement with the Plaintiff, it was justified in doing so because of Misonix's FCPA investigation regarding the Plaintiff. In response, the Plaintiff claims that the investigation was a ruse for breaching the contract. Such an issue, namely whether Misonix's breach of the Agreement was justified, is not ripe for decision at the motion to dismiss stage. *See, e.g.*, *Boston Concessions Grp., Inc. v. Criterion Ctr. Corp.*, 250 A.D.2d 435, 436, 673 N.Y.S.2d 111 (1st Dep't 1998) ("Concerning the breach of contract cause of action, numerous issues of fact exist, including . . . whether defendant terminated the agreement . . . and the validity of defendant's termination."); *Corallo v. Merrick Cent. Carburetor, Inc.*, 733 F.2d 248, 252 (2d Cir. 1984) ("[T]he issue of contract termination and arbitrability simply does not lend itself to summary disposition."). This question is better answered after the parties have the opportunity to conduct discovery. As such, the Court declines to hold that the Plaintiff failed to state a breach of contract claim as a matter of law.

### 2. Whether the Plaintiff May Seek Specific Performance

The parties further dispute whether the Plaintiff may seek the remedy of specific performance for its breach of contract claim, which is the only remedy that the Plaintiff seeks against Misonix. Specifically, the Plaintiff seeks a court order requiring Misonix to perform all of its obligations under the Agreement, including resuming the shipment of products to China, and repairing or replacing already sold defective products. Complaint ¶ 74. Specific performance is

a type of remedy, not an independent claim. *Cacchillo v. Insmed Inc.*, 833 F. Supp. 2d 218, 236 n.18 (N.D.N.Y. 2011); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 345 (S.D.N.Y. 2009).

Under New York law, the Plaintiff is required to establish that it was willing and able to perform its remaining obligations under the Agreement, that Misonix was also able to do so, and that there was no adequate remedy at law. *Id.* (internal citations omitted). "The Court's task on a motion to dismiss is to 'consider the factual allegations in [the Plaintiff's] complaint to determine if they plausibly suggest an entitlement to relief,' . . . and not to determine the appropriate remedy." *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10-civ.-25, 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011) (internal citations omitted). Thus, it is premature at the motion to dismiss stage to determine what form of damages may be appropriate. *Lia v. Saporito*, 909 F. Supp. 2d 149, 169 (E.D.N.Y. 2012) (Spatt, J.) ("Ordinarily, the issue of whether damages would adequately compensate a plaintiff is inappropriate for resolution on a motion to dismiss the complaint." (internal citation omitted)); *FCOF UB Securities LLC v. Mor Equity, Inc.*, 663 F. Supp. 2d 224, 231 n.2 (S.D.N.Y. 2009) ("[I]t is premature to determine what form of damages might be appropriate [at the motion to dismiss stage]. The Court will not address [the Defendant]'s motion to dismiss as to the issue of damages or specific performance."). The allegations that the Plaintiff alleges in the complaint are sufficient at the pleadings stage to seek the remedy of specific performance for a breach of contract claim.

Accordingly, the Defendants' motion to dismiss is denied with respect to the breach of contract claim (Count IV).

## D. Unfair Competition (Count I)

The Defendants assert that the unfair competition claim (Count I) in the Plaintiff's amended complaint fails to state a claim under New York law because Cicel does not plead the requisite

elements.  In opposition, the Plaintiff argues that viewed in the light most favorable to the Plaintiff, unfair competition is properly alleged at this stage.  The Plaintiff asserts this claim against all the Defendants.  The Court finds that for the reasons stated below, the claim is subject to dismissal because it is duplicative of the Plaintiff's breach of contract claim.

To establish a *prima facie* case of unfair competition under New York law, the Plaintiff must allege "(1) acts or omissions by [the Defendants] that proximately caused a misappropriation; and (2) the property or benefit misappropriated." *Washington v. Kellwood Co.*, No. 05-civ.-10034, 2009 WL 855652, at *7 (S.D.N.Y. March 24, 2009) (citing *Volvo North America Co. v. Men's Intn'l Professional Tennis Council*, 857 F.2d 55, 75 (2d Cir. 1988)).  The Plaintiff must allege some element of bad faith.  *Washington*, 2009 WL 855652, at *7 (citing *Saratoga v. Vichy Springs*, 625 F.2d 1037, 1044 (2d Cir. 1980)).  There is a multitudinous array of conduct that New York courts consider as within range of unfair competition.  *See Roy Exp. Co. Est. of Vaduz, Liech., et al. v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (internal citations omitted).

"Where the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty 'independent' of its duties under the contract; otherwise plaintiff is limited to an action in contract." *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003) (internal citations omitted).  This general concept applies more specifically to a common law claim for unfair competition.  *See Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) ("It is well-settled, however, that no claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the implied contractual obligations asserted in the cause of action for breach of contract.") (internal citations and quotations omitted).

Here, the Plaintiff alleges that the Defendants "misappropriated Cicel's confidential information . . . to unfairly enrich itself at Cicel's expense." Complaint ¶ 47. It does not allege that any of the Defendants "had an independent legal duty other than its duty to comply with its express and implied obligations under [the Agreement]. Thus, the Plaintiff has not pled an 'alternative theory' under which it could recover separate and apart from the breach of contract claims[.]" *Dorset Industries, Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 414 (E.D.N.Y. 2012) (Spatt, J.). The Plaintiff argues that while the breach of contract claim is premised on Misonix's refusal to perform under the agreement, the unfair competition claim is premised on the obtainment and misuse of confidential information. *See* Plaintiff's Brief at 18. In the Court's view, this distinction is entirely artificial. Both actions are specifically addressed in the Agreement. At the heart of the Plaintiff's attempt at establishing an "alternative theory" is still the question of whether Misonix "complied with its obligations under the Agreement." If Misonix did comply with its commitments under Section 6, then there is no liability in that regard. If it did not comply, then the Plaintiff must seek to hold Misonix liable under its existing duty under the Agreement.

As such, the Plaintiff's common law unfair competition claim (Count I) must be dismissed as duplicative of the breach of contract claim.

**E. Tortious Interference with a Contract (Count II)**

The Plaintiff's second claim, tortious interference with a contract, alleges that the Defendants "intentionally and improperly procured and forced Cicel's breach of [sub-distributor] agreements by causing Misonix to cease shipment of products, replacement parts and related supplies to Cicel despite accepting Cicel's payments of such shipment orders, as well as refusing to repair or replace defective products under warranty by actively and intentionally seeking to

undermine Cicel's business reputation, and by wrongfully terminating the Agreement."  Complaint ¶ 57.  The Defendants contend that Cicel fails to state a plausible claim because it was the Plaintiff that breached its contracts with sub-distributors, and that the claim is duplicative.  For the reasons stated below, the Court finds that the claim fails as a matter of law and that the Plaintiff's tortious interference with a contract claim merely restates its breach of contract claim.

"To state a claim for tortious interference with contract under New York law, a plaintiff must demonstrate the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom."  *Symquest Grp., Inc. v. Cannon U.S.A., Inc.*, 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016); *accord Restis v. American Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 727 (S.D.N.Y. 2014); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006).  Further, the Plaintiff must assert that but for the activities of the Defendants, there would not have been a breach of the contract.  *Restis*, 53 F. Supp. 3d at 727 (internal citations omitted).

The Plaintiff's amended complaint fails to allege several required elements of a tortious interference with a contract claim.  First, the Plaintiff has not included any details regarding specific contracts between itself and its sub-distributors, or any other third parties.  Cicel merely alleges the existence of such agreements, but fails to provide any particulars regarding the number of agreements, the parties to the contracts and any relevant provisions or dates.  The Plaintiff fails to provide the who, what, where, when details that are required.  *See Plasticware, LLC v. Flint Hills Resources, LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (collecting cases).

Second, rather than alleging that one of the third parties breached its contract with Cicel, the Plaintiff alleges that *it* breached its contracts with third parties because of the alleged breach

of the Agreement. This assertion is deficient as a matter of law. *Id.* (dismissing a tortious interference with a contract claim because the plaintiff alleged that it breached its contracts with third parties, rather than vis versa, as required); *Symquest*, 186 F. Supp. 3d at 267 ("[The Plaintiff] does not allege that any of its end-users breached their contracts, but rather that [the Plaintiff] will breach or has breached its contracts with third parties as a result of [the Defendant's] alleged breach of its contract with [the Plaintiff]. Such allegations are insufficient." (internal citations omitted)).

Finally, the Plaintiff's tortious interference claim is duplicative of its breach of contract claim as the allegations allege identical facts and revolve around the parties' same rights and responsibilities under the contract. *See Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 225 (S.D.N.Y. 2013) ("[T]he record must reflect something more than mere contract breach in order to support a claim for tortious interference." (internal citation omitted)).

In the Court's view, these deficiencies in the complaint are fatal to the Plaintiff's claim. Accordingly, the Court grants the Defendants' motion to dismiss as it regards to tortious interference with a contract (Count II).

## F. Tortious Interference with a Prospective Contract (Count III)

The Plaintiff's third claim, tortious interference with a prospective contract (or prospective business relations), is similar to its second claim and alleges that the Defendants "directly interfered with Cicel's prospective relationships with . . . third-parties by the use of dishonest, unfair or improper means." Complaint ¶ 65. For the reasons set forth below, the Court grants the Defendants motion to dismiss with respect to the Plaintiff's third claim.

To state a claim in New York for tortious interference with prospective business relations, the Plaintiff must show that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the

15

defendant acts with the sole purpose of harming the plaintiff, or failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997). "The tort of interfering with prospective contractual relations has more demanding requirements for establishing liability than those required for existing contractual relationships." *Italian & French Wine Co. of Buffalo, Inc. v. Negociants U.S.A., Inc.*, 842 F. Supp. 693, 701 (W.D.N.Y. 1993) (internal citations omitted).

First, like the Plaintiff's claim for tortious interference with a contract, the complaint fails to allege with any specificity, any details regarding any alleged prospective business relationships. The Plaintiff failed to plead who these relationships were with, how many there were, and what was the nature of these relationships or prospective contracts. This lack of detail prevents the Court from being able to evaluate whether a business relationship existed let alone whether "the third party would have entered into or extended a contractual relationship with [the Plaintiff] but for the intentional and wrongful acts of the [Defendant]." *M.J. & K. Co., Inc. v. Matthew Bender and Co., Inc.*, 220 A.D.2d 488, 490, 631 N.Y.S.2d 938 (2d Dep't 1995) (internal citations omitted).

Also, like the Plaintiff's second claim, its tortious interference with a prospective contract claim is duplicative of its breach of contract claim. *See Enzo Biochem, Inc.*, 981 F. Supp. 2d at 225.

Accordingly, the Court grants the Defendants' motion to dismiss as it regards to tortious interference with a prospective contract (Count III).

## G. Conversion (Count V)

The Plaintiff's fifth claim, conversion, alleges that the Defendants wrongfully converted $202,148.22 of Cicel's funds resulting from the Defendants' contractual obligations. Complaint ¶¶ 77-78. The Defendants allege that the Plaintiff's claim is duplicative of its breach of contract

16

claim. For the reasons set forth below, the Court agrees and grants the Defendants' motion to dismiss with respect to the Plaintiff's fifth claim based in conversion.

To state a claim for conversion in New York, a plaintiff must demonstrate "legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff's rights." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) (internal citations omitted).

The Plaintiff's conversion claim is duplicative of its breach of contract claim. First, both claims are alleged from the same set of facts. "Where a conversion claim is grounded in a contractual dispute, the plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 327 (S.D.N.Y. 2010) (internal citations and quotations omitted); *accord Robotic Vision Sys., Inc. v. Cybo Sys., Inc.*, 833 F. Supp. 189, 192 (E.D.N.Y. 1993) (Spatt, J.). However, the Plaintiff's complaint specifically states that the monetary property at issue was part of the Plaintiff's request to Misonix that it "honor its contractual obligations." Complaint ¶ 77. At its core, the conversion claim is grounded on a breach of contract claim for a failure to pay money resulting from the Agreement's commitments. *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) ("[A]n action for conversion cannot lie where damages are merely sought for breach of contract."); *Cybo Sys., Inc.*, 833 F. Supp. at 192. There is no separate tort here that is separate from the contractual dispute. *Id.* ("[T]he breach of contract must result in a 'wrong' that is separately actionable."). Here, there is simply no allegation present in the complaint that alleges any other "wrong" than the Defendants' breach of the Agreement.

Further, the damages that the Plaintiff seeks to redress its conversion claim are duplicative of that being sought in the breach of contract claim. In its contract claim, the Plaintiff requests specific performance, a court order requiring Misonix to perform its contractual obligations under the Agreement. Regarding the conversion claim, the Plaintiff requests that it be paid $202,148.22, which Cicel alleges was the amount of product that the Plaintiff paid for but never received. If the Court were to award the damages the Plaintiff seeks to redress both claims, Cicel would receive a monetary payment *and*, as part of the requested relief, Misonix would be required to ship those products to the Plaintiff, pursuant to the terms of the Agreement. While the conversion damage request is only a subset of the breach of contract damages, it would enable the Plaintiff to effectively be paid twice for those products. The jurisprudence in this Circuit prevents such a 'have your cake and eat it too' recovery. *See Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996).

Accordingly, the Court grants the Defendants' motion to dismiss the conversion cause of action (Count V).

## H. Fraudulent Inducement (Count VI)

The Plaintiff's sixth claim, fraudulent inducement, alleges that the Defendants "fraudulently induced" the Plaintiff into disclosing "confidential and proprietary business information." Complaint ¶¶ 81-85. The Defendants allege that the Plaintiff's claim is duplicative to its breach of contract claim; that it fails to meet Rule 9(b)'s heightened pleading standard; and that the Plaintiff was required under the Agreement to provide the business information at issue. For the reasons set forth below, the Court grants the Defendants' motion to dismiss the Plaintiff's sixth claim, alleging fraudulent inducement.

To state a claim for fraudulent inducement in New York, the Plaintiff must claim that "(1) the defendants knowingly misrepresented (or failed to mention) a material fact to [the Plaintiff]; (2) the misrepresentation or omission was made for the purpose of inducing [the Plaintiff] to rely on it; (3) [the Plaintiff] justifiably relied on that misrepresentation or omission; and (4) [the Plaintiff] was injured." *Dooley v. Metropolitan Jewish Health System*, No. 02-cv-4640, 2003 WL 22171876, at \*10 (E.D.N.Y. July 30, 2003) (citing *Lama Holding Co. v. Habros PLC*, 88 N.Y.2d 413, 421 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.*, 924 F. Supp. 512, 526 (S.D.N.Y. 1996). Fraudulent inducement claims are also subject to Rule 9(b). *Id.*

The Plaintiff's fraudulent inducement claim is duplicative of its breach of contract claim. *See International CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 491 (S.D.N.Y. 1997). "It is true that a plaintiff cannot maintain a claim for fraud 'when the only fraud charged relates to a breach of contract, or where the fraud claim is duplicative of, or inextricably related to, a breach of contract claim.'" *Dooley*, 2003 WL 22171876, at \*10 (internal citations omitted). "[I]n situations where a plaintiff raises both a breach of contract and fraud claim, 'a plaintiff must either (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *Id.* (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). None of these apply to the Plaintiff's claims.

The Plaintiff has not claimed that Misonix was subject to any "legal duty" other than those that flow directly from the Agreement. Further, the "misrepresentations and/or omissions" that were alleged in this claim cannot be used to support a claim for fraudulent inducement because

they were one of the central components of the Agreement. The Plaintiff and Misonix are two sophisticated parties who negotiated the Agreement to include provisions regarding the sharing of confidential business information. This is not a matter that is collateral to the contract, but goes to the very heart of the Agreement. What each party is required to disclose to one another is central to a distribution agreement. Finally, the Plaintiff has failed to set forth any sort of special damages that could not be recovered under a breach of contract claim. Therefore, the Plaintiff's breach of contract and fraudulent inducement claims are duplicative.

Finally, even if the Plaintiff had adequately alleged an independent fraud claim, the complaint fails to plead the requisite elements of the tort with Rule 9(b)'s heightened pleading standard applicable to claims of fraud. In the Court's view, the Plaintiff's conclusory allegations of being fraudulently induced by the Defendants to disclose proprietary business information are inadequate. *See Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 639 (E.D.N.Y. 2003) (Spatt, J.).

Accordingly, the Court grants the Defendants' motion to dismiss as it pertains to the fraudulent inducement claim (Count VI).

### III. CONCLUSION

For the reasons stated above, the Defendants' motion pursuant to Rule 12(b)(6), to dismiss the Plaintiff's amended complaint is granted with respect to Counts I, II, III, V and VI, but denied with respect to Count IV, sounding in breach of contract. As the Court is dismissing all claims against the individual defendants, the action is dismissed against defendants Vizirgianakis, Ludecker, Salerno, Zaremba, Gildea, Miner, McBrayer and Patton. The Clerk of the Court is directed to amend the caption as set forth in Schedule A.

It is **SO ORDERED**:

Dated: Central Islip, New York

October 7, 2017

__/s/ Arthur D. Spatt__

ARTHUR D. SPATT

United States District Judge

**Schedule A:**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
CICEL (BEIJING) SCIENCE &
TECHNOLOGY CO., LTD.,

                                        2:17-cv-1642 (ADS)(SIL)

                Plaintiff,

            -against-

MISONIX, INC.,

                Defendant.
---------------------------------------------------------X