# UNITED STATES DISTRICT COURT
for the
Eastern District of New York
Central Islip Division

| | | |
|---|---|---|
| CICEL (BEIJING) SCIENCE & TECHNOLOGY CO., LTD. | ) | 17-CV-1642 (ADS)(SIL) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Jury Trial Demanded** |
| -v- | ) | |
| | ) | |
| MISONIX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN
## SUPPORT OF PLAINTIFF'S MOTION TO COMPEL, ETC.

DEHENG CHEN, LLC
233 Broadway, Suite 2200
New York, New York 10279
(718) 344-8188

Counsel for Plaintiff
 Cicel (Beijing) Science &
 Technology Co., Ltd.

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................(i)

Statement of Facts ......................................................................................................1

ARGUMENT ..............................................................................................................2

POINT I:     MISONIX'S DOCUMENTS ARE NOT SUBJECT TO THE
ATTORNEY-CLIENT OR WORK-PRODUCT PRIVILEGES ................2

    A.    Many Of Misonix's Withheld Documents Listed In Its Privilege
Log Do Not Involve Communications With Counsel ............................3

    B.    Many Of The Withheld Documents Were Not Treated As
Confidential Having Been Shared With Mr. McManus Whose
Interests Were Understood To Be Adverse To Misonix ........................4

    C.    Misonix Has Not Shown That The Investigatory Documents Were
Prepared Primarily For The Purpose Of Seeking Or Obtaining
Legal Advice ..........................................................................................5

POINT II:    MISONIX HAS WAIVED THE PRIVILEGE AS TO ITS
INVESTIGATORY DOCUMENTS ............................................................7

    A.    Misonix Has Waived The Privilege By Failing To List Various
Documents On Its Privilege Log ............................................................7

    B.    Misonix Has Waived Any Purported Privilege Pertaining
To Its Purported Investigation ................................................................8

POINT III:   IF THE COURT DECLINES TO FIND THAT THE DOCUMENTS
ARE NOT PRIVILEGED OR THAT NO WAIVER HAS OCCURRED
BASED ON THE PARTIES' MOTION SUBMISSIONS, THE COURT
SHOULD UNDERTAKE AN IN-CAMERA REVIEW OF ALL
DOCUMENTS WITHHELD BY MISONIX ............................................12

POINT IV:   IN THE ALTERNATIVE, THE COURT SHOULD ENTER AN
ORDER OF PRECLUSION .......................................................................13

CONCLUSION ..........................................................................................................13

TABLE OF AUTHORITIES

CASELAW:

*Brennan Center for Justice at N.Y. Univ. Sch. Of Law v. U.S. Dep't of Justice*, 697 F.3d 184 (2d Cir. 2012) ...................................................................2,3

*Brown v. Dep't of Corr. Servs.*, 2011 U.S. Dist. LEXIS 59633 (W.D.N.Y. 2011)..................7

*Colton v. U.S.*, 306 F.2d 633 (2d Cir. 1962) .......................................................................3

*Edibali v. Bankers Std. Ins. Co.*, 2017 U.S. Dist. LEXIS 110665 (E.D.N.Y. 2017)...............2

*Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012) ............................................................5

*Heublein, Inc. v. E & J Gallo Winery, Inc.*, 1995 U.S. Dist. LEXIS 16178 (S.D.N.Y. Nov. 1, 1995) ..........................................................................................................2

*Hurst v. F.W. Woolworth Co.*, 1997 U.S. Dist. LEXIS 1407 (S.D.N.Y. 1997).....................7

*In re County of Erie*, 473 F.3d 413 (2d Cir. 2007) .................................................................5

*In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007)...............2

*Koumoulis v. Independent Fin. Marketing Group*, 295 F.R.D. 28 (E.D.N.Y. 2013) ..............10

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006 U.S. Dist. LEXIS 90970 (SDNY 2006)......5, 8

*Reino de Espana v. American Bureau of Shipping*, 2005 U.S. Dist. LEXIS 33334 (S.D.N.Y. Dec. 14, 2005)..........................................................................................................5

*Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993).........................................................................................................8, 9

*Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459 (W.D.N.Y. 2006) .......................................3

*Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 575 N.Y.S.2d 809 (N.Y. 1991) ......................................................................................................5

*TVT Records, Inc. v. Island Def Jam Music Group*, 214 F.R.D. 143 (S.D.N.Y. 2003)...........3

*Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981) .....................................................................2

*U.S. v. Atias*, 2016 U.S. Dist. LEXIS 93819 (E.D.N.Y. 2016) ..........................................12

*U.S. v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ..................................................................11

*U.S. v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996) ........................7

*U.S. v. Mejia,* 655 F.3d 126 (2d Cir. 2011) ............................................................2

*U.S. v. Nobles,* 422 U.S. 225 (1975) ...............................................................2, 4

Weber v. Paduano, 2003 U.S. Dist. LEXIS 858, 2003 WL 161340
(S.D.N.Y. Jan. 22, 2003)..........................................................................12

Statutes:

F.R.C.P. 26 .................................................................................6, 7, 8

F.R.C.P. 37 .....................................................................................7

Plaintiff Cicel (Beijing) Science & Technology Co., Ltd. ("Cicel") respectfully submits this memorandum of law in support of its motions to:

A. Compel Misonix to produce all documents pertaining to its purported investigation(s) concerning conduct by Cicel that purportedly raised issues or concerns relating to the Foreign Corrupt Practice Act ("FCPA"), many of which documents are listed in Misonix's privilege log, on the grounds that the documents are not privileged or because the privilege has been waived by Misonix;

B. Alternatively, to have the Court conduct an *in-camera* review of the documents listed in Misonix's privilege log to ascertain whether those documents are privileged;

C. Alternatively, if the Court determines that Misonix documents listed on the privilege log are not subject to disclosure, for an order of preclusion precluding Misonix's use of such documents and reference to its investigation in connection with any further proceedings and trial of this action.

D. For an award of attorneys' fees and costs pursuant to FRCP 37.

## **STATEMENT OF FACTS**

The relevant facts are discussed below and will not be repeated here for the sake of brevity.

1

## ARGUMENT

### POINT I

### MISONIX'S DOCUMENTS ARE NOT SUBJECT TO THE ATTORNEY-CLIENT OR WORK-PRODUCT PRIVILEGES

The attorney-client privilege protects communications (1) between a client and his or her attorney, (2) that are intended to be, and in fact were, kept confidential, and (3) primarily for the purpose of obtaining or providing legal assistance. *Brennan Center for Justice at N.Y. Univ. Sch. Of Law v. U.S. Dep't of Justice,* 697 F.3d 184, 207 (2d Cir. 2012), *citing, U.S. v. Mejia,* 655 F.3d 126, 132 (2d Cir. 2011). "The purpose of the privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. U.S.,* 449 U.S. 383, 389 (1981).

The work-product privilege shields documents created by counsel or that were created by the counsel's agents in anticipation of litigation, so as to shield the mental processes of counsel in analyzing and preparing the client's case. *U.S. v. Nobles,* 422 U.S. 225, 238-239 (1975).

The party asserting the attorney-client privilege and/or the work-product privilege "bears the heavy burden of establishing its applicability," *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183 (2d Cir. 2007), including establishing each element of the three-part standard. *Mejia,* 655 F.3d at 132; *Edibali v. Bankers Std. Ins. Co.,* 2017 U.S. Dist. LEXIS 110665 at *10-11 (E.D.N.Y. 2017). Given that assertions of privilege often are contrary to the truth finding function of legal proceedings, the privilege is to be construed narrowly, *Mejia, supra,* and **any ambiguities as to whether the essential elements have been satisfied are construed against the party asserting the privilege.** *Heublein, Inc. v. E & J Gallo Winery, Inc.,* 1995 U.S. Dist. LEXIS 16178, No. 94 Civ. 8155, 1995 WL 645438, at *2 (S.D.N.Y. Nov.

2

1, 1995); *Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 462, (W.D.N.Y. 2006) (citing cases). Because both in-house and outside attorneys frequently give their clients business or other advice, no presumption of privilege over documents or communications arises from the mere existence of an attorney-client relationship. *Colton v. U.S.*, 306 F.2d 633, 638 (2d Cir. 1962); *TVT Records, Inc. v. Island Def Jam Music Group*, 214 F.R.D. 143, 144 (S.D.N.Y. 2003).

### A. MANY OF MISONIX'S WITHHELD DOCUMENTS LISTED IN ITS PRIVILEGE LOG DO NOT INVOLVE COMMUNICATIONS WITH COUNSEL

A review of Misonix's privilege log (Cho Aff. Ex. 1) reveals that Misonix has improperly withheld numerous email documents based on baseless assertions of privilege, as those as those emails were not authored by, sent to, or copied to attorneys for Misonix. Instead, those emails were exchanged between various officers, directors, employees, and/or agents of Misonix who were not legal counsel for Misonix. Those documents include those being listed on Misonix's privilege log bearing the following numbers: 22-23, 110-114, 131-132, 143-144, 173, 176, 208, 254, 259-261, 268-271, 346-347, 357, 359-360, 385-388, 400-401, 403, 406, 409-411, 420, 425, 433, 435, 450, 456, 460, 466-467, 469-470, 472-473, 475-477, 479, 489, 501, 504, 506-514, 519-520, 524-526. 533, 535, 543-544, 547-548, 550-552, 554, 560-561, 566-567, 527-578, 582, 591-594, 596, 614-615, 629, 635, 688, 697, 700, 704, 715, 720, 721-722, 724, 727-729, 731, 733, 735, 739, 742, 754, 762-763, 766, 769-770, 780, 783, 801, 803-807, 811, 814, 818, 820, 822-826, 836, 839-841, 875-878, 895, 901-902, 925, 941, 944-945, 961-962, 964-966, 968,980, 1020-1023, 1025-1035, 1045-1047, 1064-1065, 1068-1069, 1078, 1080, 1099-1100, 1105-1109, 1111.

Because those documents clearly are not communications between a client and his/her attorney, those documents are not subject to the attorney-client privilege. *Brennan Center,*

3

*supra.* Similarly, those documents are not protected by the work-product privilege because the documents were not prepared by counsel and do not reveal the mental processes of counsel in analyzing and preparing the client's case. *Nobles, supra.* Accordingly, those documents should be ordered produced.

### B. MANY OF THE WITHHELD DOCUMENTS WERE NOT TREATED AS CONFIDENTIAL HAVING BEEN SHARED WITH MR. MCMANUS WHOSE INTERESTS WERE UNDERSTOOD TO BE ADVERSE TO MISONIX

Misonix's privilege log also lists numerous emails reflecting communications between Michael McManus with various attorneys and other personnel at Misonix during the period May 13, 2016 to July 22, 2016. Those documents also are obviously not privileged because during that period Mr. McManus' interests were adverse and divergent from those of Misonix, as he personally was the subject of Misonix's purported investigation into possible FCPA violations. This is confirmed by Misonix's own memorandum of law in support of its motion to dismiss previously submitted in this action, which states:

> In April 2016, Misonix's management informed Misonix's Board of Directors of violations of Misonix's policies and procedures, as well as possible violations of laws and regulations, **involving Mr. McManus,** and other Misonix personnel. Mr. McManus's employment with the Misonix subsequently ceased. In mid-May 2016, the Audit Committee of the Board of Directors, with the assistance of external counsel, began an investigation into these matters . . . . (Cho Aff. Ex. 2(B) at page 3) (citations omitted).

Clearly no attorney-client relationship existed between Mr. McManus, on the one hand, and Misonix's in-house counsel or Morgan Lewis on the other, as Mr. McManus' interests plainly were divergent and potentially directly in conflict from those of Misonix. Accordingly, all communications between Misonix personnel or its counsel with Mr. McManus during this period plainly were not privileged and the sharing of any such communications with Mr. McManus plainly was contrary to their being treated as confidential, thus obviating the notion

4

that they are subject to the attorney-client or work-product privileges. The documents in question appear in Misonix's privilege log as being numbered 54, 63, 65-75, 77-82, 88-92, 95-97, 107-109, 115-130, 133-136, 138-142, 145-151, 155-172, 174-175, and 177-182. Accordingly, those documents should be ordered produced.

### C. MISONIX HAS NOT SHOWN THAT THE INVESTIGATORY DOCUMENTS WERE PREPARED PRIMARILY FOR THE PURPOSE OF SEEKING OR OBTAINING LEGAL ADVICE

Just because an attorney is consulted by a client does not render the ensuing communications privileged if the purpose of the consultation is to obtain other than legal advice or services. *In re County of Erie*, 473 F.3d 413, 421 (2d Cir. 2007) (consultation with attorney for purpose other than attaining legal advice is not privileged); *Reino de Espana v. American Bureau of Shipping*, 2005 U.S. Dist. LEXIS 33334, 2005 WL 3455782, at *2-3 (S.D.N.Y. Dec. 14, 2005) (e-mails among a party's executives and in-house attorney containing "non-legal discussions of business-related issues" including "public relations strategies," not privileged particularly where employees outside legal department are recipients and "legal issues do not predominate."). To be privileged, a communication's primary purpose must be to obtain or render legal advice, *Favors v. Cuomo,* 285 F.R.D. 187, 198 (E.D.N.Y. 2012). Investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel. *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006 U.S. Dist. LEXIS 90970, *11-12, 2006 WL 3771010, *citing, Spectrum Sys. Int'l Corp. v. Chem. Bank,* 78 N.Y.2d 371, 581 N.E.2d 1055, 1061, 575 N.Y.S.2d 809 (N.Y. 1991) ("a lawyer's communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a non-lawyer"). Accordingly, no privilege will attach where the role performed by counsel could have been performed by non-lawyers.

5

Here, Misonix's own documents – including, *inter alia*, its correspondence with the NASDAQ (Cho Aff. Ex. 2(A) and relevant portions of Misonix's prior motion to dismiss in this action (Cho Aff. Ex. 2(B) – repeatedly confirm that Morgan Lewis was not retained to provide core legal advice, but rather was expressly retained to "**conduct an internal investigation**", *i.e.*, a fact-finding mission, a role that could have been performed by non-counsel. "Investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel." *One Beacon, supra.* Nowhere does Misonix ever mention that Morgan Lewis was retained to provide legal services in this case. Indeed, any such notion that Morgan Lewis was primarily retained to provide legal services relating to actual or anticipated litigation is undercut by the facts that Morgan Lewis has never appeared as Misonix's counsel of record here and the fact that Misonix retained separate litigation counsel – Williams & Connolly – to represent it in litigation. Misonix's privilege claims essentially are supported by nothing more than its conclusory say-so in its privilege log. Misonix therefore cannot satisfy its "heavy burden" of establishing its privilege claims. Moreover, any records, recordings and notes of its interview of Cicel personnel clearly are not privileged because Cicel personnel indisputably were not clients of Morgan Lewis and Cicel is entitled to those documents and records, pursuant to F.R.C.P. 26(b)(3)(C) and an award of its fees/expenses under FRCP 37(a)(5).

## POINT II

## MISONIX HAS WAIVED THE PRIVILEGE AS TO ITS INVESTIGATORY DOCUMENTS

### A. MISONIX HAS WAIVED THE PRIVILEGE BY FAILING TO LIST VARIOUS DOCUMENTS ON ITS PRIVILEGE LOG

Misonix's privilege log (Cho Aff. Ex. 1) contains 139 pages and lists numerous documents. However, it is striking that EVERY entry contained in that 139-page privilege log consists of emails. No letters, memoranda, notes, reports, resolutions, transcripts, information Misonix admittedly disclosed to the SEC or DOJ, or other kinds of documents are listed, when such documents plainly should exist, especially since the existence of such documents is alluded to in Misonix's own writings and Misonix's 10-Q filing. (See Cho Aff. Ex. 2(A), (B), Ex. 3).

Misonix's failure to list such documents on its privilege log and its service of a misleading, incomplete privilege log should result in a waiver of all investigatory documents not listed on its privilege log. *Brown v. Dep't of Corr. Servs.*, 2011 U.S. Dist. LEXIS 59633, *44-45 (W.D.N.Y. 2011) (holding that under FRCP 26(b)(5)A), "When a party withholds relevant information that is discoverable, pursuant to Fed.R.Civ.P. 26(b)(1), on the grounds of privilege, a party is obligated to promptly provide the adverse party with notice of the claimed privilege by preparing and serving a privilege log sufficiently describing the withheld information to enable the adverse party to assess the validity of the asserted privilege" and that "a failure to comply with this requirement results in a waiver of the asserted privilege in the withheld information"), *citing United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (failure to provide adequately detailed court-ordered privilege log waives privilege); *accord, Hurst v. F.W. Woolworth Co.*, 1997 U.S. Dist. LEXIS 1407, *9-10 (S.D.N.Y. 1997) (holding that "failure to state a privilege objection, or provide the attendant privilege log, "within

7

the time provided by the Federal Rules of Civil Procedure, or any extensions thereof" waives privilege); Fed. R. Civ. P. 26(b)(5), Advisory Committee Notes ("To withhold materials without such notice is contrary to the rule . . . and may be viewed as a waiver of the privilege or protection."). As noted in *OneBeacon,* courts in New York have repeatedly held that the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege. *OneBeacon Ins. Co.,* 2006 U.S. Dist. LEXIS 90970 at *21-22 (citing multiple cases).

### B. MISONIX HAS WAIVED ANY PURPORTED PRIVILEGE PERTAINING TO ITS PURPORTED INVESTIGATION

Even if this court deems Misonix's documents to be privileged in the first instance, it should find that Misonix has waived any such privilege by through its conduct.

Misonix has waived the privilege as a matter of law by disclosing materials pertaining to its investigation to the SEC. In its Form 10-Q, , filed May 19, 2017 (pertinent portions of which are annexed as Ex. 3 to the Cho Aff.), Misonix stated:

> For several months, with the assistance of outside counsel, the Company has been conducting the investigation into the business practices of the independent Chinese entity that previously distributed its products in China and the Company's knowledge of those business practices, which may have implications under the FCPA, as well as into various internal controls issues identified during the Investigation.
> **On September 27, 2016 and September 28, 2016, we voluntarily contacted the SEC and the DOJ, respectively, to advise both agencies of these potential issues. We have provided and will continue to provide documents and other information to the SEC and DOJ, and are cooperating fully with these agencies in their investigations of these matters.** (Emphasis added).

In *Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.,* 9 F.3d 230 (2d Cir. 1993), the Second Circuit held that a corporation waives its attorney-client and work-product privileges, vis-à-vis private litigants, by voluntarily disclosing investigatory documents and information to the SEC and/or DOJ. In so holding, the Second Circuit declared:

8

>The D.C. Circuit rejected the selective waiver theory, in part based on the perception that the selective waiver doctrine allows a party to manipulate use of the privilege through selective assertion. We agree that selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage . . . . Voluntary cooperation with government investigations may be a laudable activity, but it is hard to understand how such conduct improves the attorney-client relationship. The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit . . . . Voluntary disclosure is generally made because a corporation believes that there is some benefit to be gained from disclosure. The SEC's amicus brief argues convincingly that the protection of privilege is not required to encourage compliance with SEC requests for cooperation with investigations. The SEC has continued to receive voluntary cooperation from subjects of investigations, notwithstanding the rejection of the selective waiver doctrine by two circuits and public statements from Directors of the Enforcement Division that the SEC considers voluntary disclosures to be discoverable and admissible. The D.C. Circuit recognizes that a corporation has substantial incentives to cooperate with sec requests for assistance. Voluntary cooperation offers a corporation an opportunity to avoid extended formal investigation and enforcement litigation by the SEC, the possibility of leniency for prior misdeeds, and an opportunity to narrow the issues in any resulting litigation. These incentives exist regardless of whether private third-party litigants have access to attorney work product disclosed to the SEC . . . . An allegation that a party facing a federal investigation and the prospect of a civil fraud suit must make difficult choices is insufficient justification for carving a substantial exception to the waiver doctrine.

*Id.* at 235-236 (citations omitted).

Accordingly, the Second Circuit found a waiver of the privilege and declared that:

>When a corporation elects to participate in a voluntary disclosure program like the SEC's, it necessarily decides that the benefits of participation outweigh the benefits of confidentiality . . . . It foregoes some of the traditional protections of the adversary system in order to avoid some of the traditional burdens that accompany adversary resolution of disputes, especially disputes with such formidable adversaries as the SEC.

*Id.* at 236.

Misonix also has waived the privilege by expressly putting the investigation conducted by Misonix and Morgan Lewis into issue via its prior court filings (Cho Aff. Ex. 2(B) and 3) as well as its letter to the NASDAQ. (Cho Aff. Ex. 2(A)). "Both the attorney-client and work-product privileges may be waived if a party puts the privileged communication at issue by relying on it to support a claim

9

or defense" given that fairness dictates that the privilege may not be used both a as a shield and a sword. *Koumoulis v. Independent Fin. Marketing Group,* 295 F.R.D. 28, 40 (E.D.N.Y. 2013) (citing cases).

Here, Defendant expressly put MLB's investigation in issue via its prior court filings as well as its Letter. As previously noted, the Letter asserts "<u>As a result of that investigation,</u> the Audit Committee determined that there was evidence that Cicel engaged in the improper business practices described and knew that their sub-distributors were making improper payments to doctors" and based on same suspended shipments to Cicel and "formally terminated Cicel as a distributor." Misonix's answer and motion papers filed in this action (see pertinent portions at Cho Aff. Ex. 2(B) hereto) similarly assert that its purported investigation uncovered evidence of purported wrongdoing by Cicel that allegedly justified the termination of the Agreement. Misonix's answer repeatedly trumpets that Misonix "stopped selling product to Cicel after uncovering evidence that Cicel's business practices were inconsistent with Misonix's policies and raised concerns under the Foreign Corrupt Practices Act." (Misonix Answer ¶¶ 34, 36, 37, 71).

Misonix's disclosure of details of MLB's purported investigation, both in this litigation and to third parties such as the NASDAQ, and its selective disclosure of purported facts allegedly uncovered by that investigation to justify Cicel's termination, puts the credibility of its investigation in issue and therefore constitutes a waiver of any privilege with regards to the investigation. Indeed, Misonix trumpeted that it "began an extensive and thorough investigation" and that its purported finding of wrongdoing by Cicel is supported by the same, including interviews of Cicel personnel. It has been recognized that "the attorney-client privilege cannot at once be used as a shield and a sword . . . A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes . . . Thus, the privilege may implicitly be waived when

10

defendant asserts a claim that in fairness requires examination of protected communications. *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

The credibility of Misonix's purported investigation as supporting Cicel's termination is undercut by Misonix's own documents that confirm that Misonix ceased shipments (in May 2016) and terminated Cicel BEFORE its investigation was even completed. Misonix's termination letter to Cicel (which does not state any reason for termination) was dated September 27, 2016. (Cho Aff. Ex. 2(C)). However, Misonix's own November 14, 2016 Letter to the NASDAQ (Cho Aff. Ex. 2(A)) states that "Morgan Lewis expects to complete its investigation by December 31, 2016." Moreover, a self-serving September 29, 2016 company wide memo issued by Misonix's interim CEO (issued two days AFTER Cicel's termination) confirms that Misonix had yet to confirm any wrongdoing by Cicel by obliquely referring to "a *potential* questionable practice . . . ." (Cho Aff. Ex. 2(D)).

Misonix also placed the MLB's investigation's credibility in issue because of Misonix's repeated assertions that "Cicel's business practices . . . raised concerns under the Foreign Corrupt Practices Act." Leaving aside the fact that Cicel denies bribing or participating in the bribing of Chinese officials to facilitate the sale of Misonix products, and that Misonix never provided Cicel with any FCPA training or instruction, Misonix knew or should have known that Cicel is not subject to the FCPA given the undisputed facts that Cicel is a Chinese company that is not listed on any U.S. exchange, was an independent distributor of Misonix products, who purchased the Misonix products and obtained title thereto, and who conducted no business and engaged in no wrongdoing in the U.S. (see Ex. E hereto). Therefore, serious questions exist as to whether Misonix's foregoing assertion in its pleading that Cicel's conduct (as opposed to Misonix's own conduct) raised genuine concerns about Misonix's liability under the Foreign Corrupt Practices Act. The credibility of Misonix's investigation is further called into question by the fact that Misonix gave a golden parachute to its

11

former CEO, Michael McManus, despite that fact that Mr. McManus allegedly was forced to step down due to his purported direct involvement in FCPA violations while he was Misonix's CEO. (Cho Aff. Ex. 2(F)).

## POINT III

### IF THE COURT DECLINES TO FIND THAT THE DOCUMENTS ARE NOT PRIVILEGED OR THAT NO WAIVER HAS OCCURRED BASED ON THE PARTIES' MOTION SUBMISSIONS, THE COURT SHOULD UNDERTAKE AN IN-CAMERA REVIEW OF ALL DOCUMENTS WITHHELD BY MISONIX

A review of Misonix's privilege log reveals that it – at most -- fails to contain adequate information for the Court to find that the documents listed and withheld are privileged (let alone the documents that Misonix has failed to list at all, as discussed above), particularly because its description of the listed documents consists of legally conclusory boilerplate for each such document. The Court should treat this as Misonix failing to meet its heavy burden of showing the applicability of the privilege and therefore order all of the investigatory documents produced, pursuant to the authorities set forth above.

However, if the Court for some reason declines to do so, the Court should – at bare minimum – conduct an in-camera review of all documents withheld, including both the documents listed on the privilege log and any and all withheld documents that Misonix failed to list on its privilege log. *United States v. Atias*, 2016 U.S. Dist. LEXIS 93819, *11-13 (E.D.N.Y. 2016); *Weber v. Paduano*, No. 02 Civ. 3392, 2003 U.S. Dist. LEXIS 858, 2003 WL 161340, at *13 (S.D.N.Y. Jan. 22, 2003).

## POINT IV

### IN THE ALTERNATIVE, THE COURT SHOULD ENTER AN ORDER OF PRECLUSION

If the Court, for any reason, ultimately upholds Misonix's privilege claims and declines to order all documents pertaining to its purported investigation produced, an order of preclusion should be entered barring Misonix from invoking its purported investigation or using any withheld documents in support of its defense or allegations in this action. The established principle that a party may not use the privilege as both a sword and a shield, as well as basic fairness dictates this result. Misonix should not be permitted to invoke the investigation or use withheld documents to bolster the credibility of its assertions that Cicel engaged in wrongful conduct, while Cicel is denied access to documents material to the credibility of such investigation and/or its conclusions.

### CONCLUSION

As set forth above, Misonix has not complied with its discovery obligations and its claims of privilege lack factual as well as legal merit. Accordingly, Cicel respectfully requests that its motion be granted.

Dated: November 2, 2018

                                          Respectfully submitted,

                                          DEHENG CHEN, LLC

                                          By: _____/s/_____
                                                  Dean T. Cho
                                         233 Broadway, Suite 2200
                                         New York, New York 10279
                                         (718) 344-8188
                                         Counsel for Plaintiff