**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**CICEL (BEIJING) SCIENCE &**
**TECHNOLOGY CO., LTD.,**

               Plaintiff,

    v.

**MISONIX, INC.,**

               Defendant.

Case No. 2:17-cv-01642-ADS-SIL

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT**

**REED SMITH LLP**

Jennifer L. Achilles
Jonathan P. Gordon
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 521-5400
Facsimile: (212) 521-5450

*Attorneys for Plaintiff Cicel (Beijing)*
*Science & Technology Co., Ltd.*

Dated:  March 28, 2019

<u>**TABLE OF CONTENTS**</u>

**Page**

STATEMENT OF FACTS ..................................................................................... 2

PROCEDURAL HISTORY.................................................................................... 5

ARGUMENT .......................................................................................................... 7

    A.  The Amendments Are Not Futile....................................................................... 8

        1.  Cicel's Amendment Seeking Damages For Breach of Contract Would Not Be Futile ................................................................................................ 8

        2.  Cicel's Claim For Defamation Per Se Would Not Be Futile ..................................... 10

        3.  Cicel's Claim for Misappropriation of Trade Secrets Would Not Be Futile ............. 15

    B.  No Undue Prejudice Or Undue Delay .......................................................... 18

        1.  Cicel's Amendment Seeking Damages Does Not Cause Undue Prejudice or Undue Delay .......................................................................................... 19

        2.  Cicel's Claim for Defamation Per Se Does Not Cause Prejudice or Undue Delay .... 20

        3.  Cicel's Claim for Misappropriation of Trade Secrets Does Not Cause Prejudice or Undue Delay ......................................................................... 21

CONCLUSION..........................................................................**Error! Bookmark not defined.**

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adlife Mktg. & Commc'ns. Co. v. Best Yet Mkt., Inc.*,
  17-cv-2978 (ADS)(ARL), 2018 WL 4568801 (E.D.N.Y. Sept. 24, 2018)....................7, 18, 21

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005)....................................................................................................7

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001)..................................................................................................10

*Ashland Mgmt Inc. v. Janien*,
  82 N.Y.2d 395 (N.Y. 1993)...................................................................................................15

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993)..................................................................................................18

*Bolt Elec., Inc. v. City of N.Y.*,
  53 F.3d 465 (2d Cir. 1995)......................................................................................................8

*Cleveland v. Caplaw Enters.*,
  448 F.3d 518 (2d Cir. 2006)....................................................................................................8

*In re Cohen*,
  98 B.R. 179 (Bankr. S.D.N.Y. 1989) ..............................................................................13, 14

*Contemp. Mission, Inc. v. N.Y. Times Co.*,
  665 F. Supp. 248 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612 (2d Cir. 1988) ...............................13

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
  893 F. Supp. 2d 395 (E.D.N.Y. 2012) .............................................................................15, 17

*E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*,
  307 F. Supp. 3d 52 (E.D.N.Y. 2018) .................................................................................9, 10

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir. 2009)..................................................................................................15

*Foman v. Davis*,
  371 U.S. 178 (1962)................................................................................................................7

*Hemphill v. Schott*,
  141 F.3d 412 (2d Cir. 1998)....................................................................................................7

*Illiano v. Mineola Union Free Sch. Dist.*,
    585 F. Supp. 2d 341 (E.D.N.Y. 2008) .................................................................10, 11, 12, 15

*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*,
    22 F.3d 458 (2d Cir. 1994)...........................................................................................................7

*Liberman v. Gelstein*,
    80 N.Y.2d 429, 590 N.Y.S.2d 857, N.E.2d 344 (1992).........................................................10

*Lopez v. John Hancock Mutual Life Insurance Co.*,
    115 F.R.D. 316 (S.D.N.Y. 1987) ..............................................................................................14

*Lorena Int'l N. Am. Inc. v. Vican Trading*,
    08-CV-2686, 2009 WL 1940428 (E.D.N.Y. July 2, 2009)........................................................9

*Lucente v. IBM Corp*,
    310 F.3d 243 (2d Cir. 2002).......................................................................................................8

*Martin v. Sprint/United Mgmt. Co.*,
    15-cv-5237 (PAE), 2016 WL 2757431 (S.D.N.Y. May 12, 2016)...........................................21

*Mills v. Miteq, Inc.*,
    2008 WL 350922 (E.D.N.Y. Feb. 7, 2008)..............................................................................11

*Olaf Soot Design, LLC v. Daktronics, Inc.*,
    299 F. Supp. 3d 395 (S.D.N.Y. Oct. 26, 2017).......................................................................18

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
    No. 12 Civ. 2224 (AJN) (JCF), 2014 WL 406497 (S.D.N.Y. Feb. 3, 2014) ...........................21

*Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*,
    17-cv-0957 (ADS)(AKT), 2017 WL 6459464 (E.D.N.Y. Dec. 15, 2017) .................15, 16, 17

*Ortiz v. City of N.Y.*,
    755 F. Supp. 2d 399 (E.D.N.Y. 2010) .....................................................................................14

*Overall v. Estate of Klotz*,
    52 F.3d 398 (2d Cir. 1995)........................................................................................................14

*Pangburn v. Culbertson*,
    200 F.3d 65 (2d Cir. 1999).........................................................................................................8

*Phillips v. Kidder, Peabody Co.*,
    933 F. Supp. 303 (S.D.N.Y. 1996)...........................................................................................14

*Pusey v. Bank of Am., N.A.*,
    14-cv-04979 (FB)(LB), 2015 WL 4257251 (E.D.N.Y. July 14, 2015) .............................13, 14

*Reed v. Garden City Union Free Sch. Dist.*,
  987 F. Supp. 2d 260 (E.D.N.Y. 2013) ....................................................................8

*Ricciuti v. N.Y.C. Transit Auth.*,
  941 F.2d 119 (2d Cir. 1991), *overruled on other grounds by* 544 U.S. 197
  (2005) ......................................................................................................................8

*Rosenberg v. Martin*,
  478 F.2d 520 (2d Cir. 1973), *cert. denied*, 414 U.S. 872 (1973)...........................12

*Ryder Energy Dist. Corp. v. Merrill Lynch Commodities Inc.*,
  748 F.2d 774 (2d Cir. 1984)....................................................................................8

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981)...................................................................................18

*TNS Media Research, LLC v. TRA Glob., Inc.*,
  No. 11 Civ. 4039 (SAS), 2012 WL 2052679 (S.D.N.Y. June 4, 2012)...................21

*U.S. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
  889 F.2d 1248 (2d Cir. 1989)..................................................................................21

*Walker v. Schult*,
  717 F.3d 119 (2d Cir. 2013).....................................................................................8

*Yesner v. Spinner*,
  765 F. Supp. 48 (E.D.N.Y. 1991) .....................................................................12, 15

Plaintiff Cicel (Beijing) Science & Technology Co., Ltd. ("Cicel") submits this memorandum of law in support of its motion for leave to amend its First Amended Complaint (the "FAC") pursuant to Rule 15 of the Federal Rules of Civil Procedure.  Cicel moves for leave to amend the FAC to (i) seek monetary damages on its breach of contract claim; and (ii) add additional claims for defamation *per se* and misappropriation of trade secrets.

During the time since Cicel filed the FAC seeking specific performance of the distribution agreement between the parties (the "Agreement"), the contract term has expired making specific performance impossible.  Additionally, Cicel has suffered actual damages as a result of Misonix's breach in the form of payments to Misonix for products that were never delivered; settlement payments to customers for unfulfilled product orders; loss of expected profits for the remainder of the term of the Agreement; loss of distribution contracts with other manufacturers; and loss of business in China due to being blacklisted by the Chinese authorities.

Cicel's claim for defamation *per se* is based on three false statements Misonix published to third parties accusing Cicel of violating the U.S. Foreign Corrupt Practices Act ("FCPA"). Misonix made false statements about Cicel in its September 28, 2016 Form 8-K filing, its November 2016 letter to the NASDAQ, and a December 14, 2016 e-mail to one of Cicel's competitors in China.  Cicel only knew about one of the three defamatory statements at the time it filed the FAC in 2017; the other two were discovered through a review of documents that Misonix produced during discovery.  Cicel mentioned the Form 8-K filing at the time it filed the FAC in 2017, and complained that it was part of a "bad faith scheme to damage Cicel's business reputation."  FAC ¶ 40-42.  Accordingly, although defamation was not articulated as a separate cause of action in the FAC, this claim relates back to the FAC for purposes of the statute of limitations and Misonix was on notice of the claim.

Cicel's claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act and New York common law arises as a direct result of documents produced by Misonix during the course of document discovery in this matter.  Although Cicel knew that Misonix had hired one of its former employees in China in 2014, Cicel did not know until reviewing Misonix's documents that Misonix had used its former employee to obtain Cicel's confidential and proprietary business information.  Misonix misappropriated trade secrets and confidential information including, but not limited to, Cicel's business plan, pricing and strategy information, sales and budget data, and lists of contacts in China. Upon information and belief, Misonix used Cicel's confidential information for its own commercial advantage including, but not limited to, disclosing it to its new distributors in 2017 and 2018 following Misonix's wrongful termination of its Agreement with Cicel.

Cicel respectfully requests that the Court grant its motion for leave to file an amended complaint, which proposed Second Amended Complaint (the "PAC") is attached to the Declaration of Jennifer L. Achilles, dated March 28, 2019, as Exhibit 1.

## STATEMENT OF FACTS

In 2013, Cicel and Misonix signed an exclusive distribution agreement under which Plaintiff Cicel had the exclusive right to distribute certain Misonix medical device products in China and Hong Kong.  Although the Agreement's term was to run from June 1, 2013 until at least May 17, 2018, Misonix began contacting customers directly in 2014; stopped shipping products to Cicel in May 2016; and wrongfully terminated the Agreement by letter dated September 27, 2016.

Misonix claims that it was justified in breaching and ultimately terminating its Agreement with Cicel because it suspected that Cicel had engaged in violations of the FCPA.

However, the Agreement's terms do not provide for termination based on noncompliance with the FCPA.  Moreover, the events surrounding Misonix's breach make plain that Misonix grew frustrated with the terms of the Agreement, hired a former Cicel employee to misappropriate Cicel's confidential information, began contacting customers directly, and ultimately used its FCPA suspicions as an excuse to cut Cicel out of the distribution chain so that Misonix could control the prices of its products in China.

Approximately one year into its five-year Agreement with Cicel, Misonix hired a former employee of Cicel who had recently been asked to leave Cicel. Misonix immediately began pressing Cicel's former employee for confidential information she learned during her employment with Cicel. Over the course of the following year, Cicel's former employee provided Misonix with competitively sensitive pricing information, sales and budget data, business plan and lists of contacts in China that she received during the course of her employment with Cicel.  John Dobash, the General Manager for Misonix's Asia Pacific and China region, repeatedly advised Cicel's former employee not to tell Cicel about what they were doing, and to be discreet for fear of getting sued by Cicel.

Approximately eighteen months into its five-year Agreement with Cicel, Misonix grew frustrated with the terms of its contract with Cicel.  Misonix executives internally discussed their frustration over Misonix's contractual obligation to allow Cicel to set the resale prices for Misonix products in China. Misonix's then-CEO Michael McManus asked Cicel's former employee, "how do you propose we control the price?  May [referring to May Lee, of Cicel] has a contract that says she buys units.  At that point she owns them and can set the price." Cicel's former employee responded by suggesting that Misonix should end its contractual relationship with Cicel.  She provided Misonix with the names of customers in China who

- 3 -

wanted to deal directly with Misonix rather than go through Cicel

Following its wrongful termination of its Agreement with Cicel, Misonix negotiated a contract with a different Chinese distributor named Shandong Weigao Orthopaedic Device Co., Ltd. ("Weigao") with commercial terms that were much more favorable to Misonix. In sharp contrast to the Agreement with Cicel, which allowed Cicel to set the resale price of Misonix products in China, the agreement with Weigao allowed Misonix to set the price and provided that Misonix would receive a share of the revenue from any sales that exceeded that price. Also in sharp contrast to its Agreement with Cicel, the agreement with Weigao allowed Misonix to terminate the contract for non-compliance with the FCPA or, indeed, for no reason at all with one hundred and twenty (120) days' prior written notice.

The fact that Misonix used the FCPA as a ruse to terminate its contract with Cicel is further evidenced by the fact that Misonix did not similarly terminate its contract with Weigao in April 2017 when Weigao's parent company was found by a Chinese administrative authority to have engaged in bribery in China.  Additionally, after it terminated the Agreement with Cicel, Misonix continued to look to Cicel for assistance with registration of one of its products in China.  If Misonix genuinely cared that Cicel could have been bribing foreign officials, it would not have continued to seek Cicel's assistance in dealing with the Chinese authorities for the registration of its product.

In an effort to legitimize its pretextual reason for terminating its contract with Cicel and shift blame away from itself, Misonix made public statements impugning Cicel's business reputation.  Misonix's former board member and current CEO Stavros Vizirgianakis admitted that Misonix published information in 2016 and 2017 about Cicel being the subject of investigations concerning improper conduct and bribery and potential violations of the

FCPA.  Indeed, Misonix made statements in its published SEC filings that gratuitously referred to "certain business practices of the independent Chinese entity that distributes its products in China, which practices raise questions under the FCPA."  Misonix also corresponded with the NASDAQ and one of Cicel's competitors in China (and likely others) spreading false information about Cicel that damaged Cicel's business reputation.

As a result of Misonix's (i) misappropriation of Cicel's trade secrets, (ii) breach of the Agreement, and (iii) defamation, Cicel suffered significant damages in the form of the unauthorized use of its trade secrets and confidential information; payments to Misonix for products that were never delivered; settlement payments to customers for unfulfilled product orders; loss of expected profits for the remainder of the term of the Agreement; loss of distribution contracts with other manufacturers; loss of business in China due to being blacklisted by the Chinese authorities; legal expenses in China and the U.S.; and other damages to be to be proven at trial including punitive damages.

## PROCEDURAL HISTORY

On March 23, 2017, Cicel filed a complaint against Misonix and eight individual officers and directors of the company.  ECF Dkt. No. 1.  Cicel filed an amended complaint just two weeks later on April 5, 2017.  ECF Dkt. No. 6.  Cicel's amended complaint included claims for unfair competition, tortious interference with contract, tortious interference with prospective contract, breach of contract, conversion, and fraudulent inducement.  *Id.*  Regarding the breach of contract claim, Cicel sought specific performance of the contract given that the contract term was still in effect.

On May 19, 2017, Misonix filed a motion to dismiss all of the claims against all defendants.  ECF Dkt. No. 9.  Cicel opposed the motion.  ECF Dkt. No. 13.  On October 7, 2017, this Court granted Misonix's motion to dismiss as to the tort claims and the individual

defendants, but denied the motion as to the breach of contract claim against Misonix.  ECF Dkt.

No. 15.  Misonix filed its answer on November 2, 2017.  ECF Dkt. No. 17.  Since late 2017, the

parties have been engaged in the discovery process, exchanging written discovery and

documents.  There have been several discovery motions, some of which have not yet been

resolved.  On September 27, 2018, Cicel filed a motion for leave to amend the complaint (ECF

Dkt. No. 43), which was denied without prejudice and with leave to re-file.  On December 13,

2018, Cicel refiled its motion for leave to amend as instructed.  ECF Dkt. No. 63.  That motion

has not been decided, and Cicel hereby withdraws that motion in favor of the instant motion for

leave to amend.

Document discovery and depositions in this matter are still ongoing, with the first three

depositions having occurred during the last week in February 2019.  On February 28, 2019, the

parties appeared before Magistrate Judge Locke for a status conference, during which Cicel

informed the Court that, "given what has been uncovered in recent discovery we actually might

be seeking to change our proposed amendment."  Achilles Decl. Ex. 2 (Feb. 28 Tr.) at 5.

Magistrate Judge Locke asked, "So you need to withdraw the motion and file another motion?"

Cicel's counsel stated, in pertinent part, "yes, then we would withdraw the motion and we would

substitute a new motion to amend."  *Id.*  Accordingly, following the status conference,

Magistrate Judge Locke issued an Electronic Order requiring the parties to (i) file any motions to

join new parties or amend the pleadings on or before March 22, 2019; and (ii) complete

depositions on or before May 15, 2019.  ECF Dkt. No. 69.

Less than a week later on March 5, 2019, new legal counsel for Cicel filed a Notice of

Appearance.  ECF Dkt. No. 70.  On March 14, 2019, Magistrate Judge Locke granted Cicel's

motion for an extension of time to file a motion to amend and complete depositions.  According

to Magistrate Judge Locke's most-recent order, "[T]he deadline to file motions to join new parties or amend the pleadings is extended from 3/22/2019 to and including 4/19/2019, and the deadline to complete depositions is extended from 5/15/2019 to and including 5/29/2019." The next status conference in this matter is set for June 5, 2019.

## ARGUMENT

Federal Rule of Civil Procedure 15(a), which governs a motion to amend a complaint, states, in relevant part, "A party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving party, the district court should grant leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave should… be freely given.").  The decision on whether to grant a motion to amend rests within the sound discretion of the district court.  *Adlife Mktg. & Commc'ns. Co. v. Best Yet Mkt., Inc.*, 17-cv-2978 (ADS)(ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (J. Spatt) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005); *Hemphill v. Schott*, 141 F.3d 412, 420 (2d Cir. 1998); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)).

As set forth below, Cicel's motion for leave to amend should be granted because (A) the proposed amendments would not be futile; and (B) Misonix will not suffer undue prejudice, and there has been no undue delay.

A.      **The Amendments Are Not Futile**

In considering whether a proposed amendment to a complaint is futile, the Court must determine whether it could withstand a Rule 12(b)(6) motion to dismiss.  *Lucente v. IBM Corp*, 310 F.3d 243, 258 (2d Cir. 2002).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

The Second Circuit has advised against denying a motion to amend based on futility unless it is "beyond doubt that the plaintiff can prove no set of facts in support" of the amended claims.  *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), *overruled on other grounds by* 544 U.S. 197 (2005)).  *See also Ryder Energy Dist. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (stating that to overcome futility argument, the moving party need only show at least colorable grounds for relief).

1.      Cicel's Amendment Seeking Damages For Breach of Contract Would Not Be Futile

Cicel filed an amended complaint on April 5, 2017 alleging five tort claims in addition to a claim for breach of contract.  FAC at ¶¶ 45-85.   As a result of this Court's decision on Misonix's motion to dismiss, Cicel's only remaining claim against Misonix is for breach of contract.  Cicel previously sought specific performance as a remedy for that claim, but considering that the term of the parties' Agreement has now expired, specific performance is no

longer possible.  Accordingly, Cicel is seeking to amend the complaint now to avoid any doubt

that it is entitled to monetary damages flowing from the breach.

In a breach of contract claim, a plaintiff may seek two types of damages: (a) general

damages to compensate the plaintiff based on the value of the performance that was promised in

the contract; and (b) consequential damages, which provide additional compensation.

*E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, 307 F. Supp. 3d 52, 60

(E.D.N.Y. 2018) (J. Spatt) (citing *Lorena Int'l N. Am. Inc. v. Vican Trading*, 08-CV-2686, 2009

WL 1940428, at *3 (E.D.N.Y. July 2, 2009)).  Under New York law, a claim of consequential

damages must prove that (1) the damages were foreseeable; (2) both parties contemplated such

damages when the contract was made; and (3) such damages can be quantified with reasonable

certainty.  *E. Materials Corp.*, 307 F. Supp. 3d at 60 (citing *Lorena*, 2009 WL 1940428, at *3).

Regarding general damages, Cicel's proposed amended complaint alleges that Cicel has

suffered "loss of expected profits for the remainder of the term of the Agreement," and

"payments to Misonix for products that were never delivered."  PAC ¶¶ 10, 64, 79.  These

allegations satisfy the pleading requirement for general damages because they seek recovery to

compensate Cicel for the value of Misonix's performance that was promised in the parties'

Agreement.

Regarding consequential damages, Cicel's proposed amended complaint alleges that

Cicel has suffered "settlement payments to customers for unfulfilled product orders," and "loss

of business in China due to being blacklisted by the Chinese authorities."  In this case, there is a

provision in the Agreement that shows that consequential damages were foreseeable and that

Misonix contemplated such damages when the contract was made.  Section 14 of the Agreement

is entitled, "Consequences of Termination."  PAC Ex. A § 14.0.  It discusses what will happen

"upon the expiry of this Agreement." *Id.* § 14.1. The section specifies that, upon expiry of the Agreement, the "Company shall not be liable to the Distributor either for compensation of damage of any kind or on account of loss by the Distributor of present or prospective profits on present or prospective sales, investments or goodwill, and the Distributor hereby waives any rights, which may be granted pursuant to applicable law." *Id.* § 14.1.4. Accordingly, Misonix (the Company) was only entitled to limit its liability to Cicel (the Distributor) upon expiry of the Agreement after proper termination of the Agreement under Section 13.

Section 14 of the Agreement shows that Misonix understood and foresaw that if it wrongfully terminated the Agreement, Misonix could be liable for Cicel's losses including consequential damages. Accordingly, Cicel's motion for leave to amend should be granted. *See E. Materials*, 307 F. Supp. 3d at 61 (holding that the proposed amended complaint adequately pled consequential damages because it alleged that the defendant was "aware" that it would be responsible for consequential damages in the event of a breach). Accordingly, Cicel's PAC properly seeks damages for the breach of contract claim, and Cicel's addition of this remedy would not be futile.

## 2. Cicel's Claim For Defamation *Per Se* Would Not Be Futile

To state a claim for defamation under New York law, a plaintiff must allege that: (i) a false defamatory statement of fact; (ii) of and concerning the plaintiff; (iii) was published to a third party; (iv) made with the applicable level of fault on the part of the speaker; and (vi) caused special harm or constituted defamation *per se*. *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 355-56 (E.D.N.Y. 2008) (J. Spatt) (citing *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001)). Among the type of statements that have been considered defamatory *per se* are those that "tend to injure the plaintiff in his or her trade, business or profession." *Illiano,* 585 F. Supp. 2d at 356 (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605,

N.E.2d 344 (1992)).  Under New York C.P.L.R. § 3016(a), the plaintiff is required to set forth "the particular words complained of" and the person or persons to whom the alleged defamatory comments were made.  *Illiano,* 585 F. Supp. 2d at 356 (citing *Mills v. Miteq, Inc.*, 2008 WL 350922, at *2 (E.D.N.Y. Feb. 7, 2008)).

In its proposed amended complaint, Cicel has stated a claim for defamation *per se* against Misonix.  PAC ¶¶ 46-50.  The PAC alleges that, on three occasions, Misonix published false defamatory statements about Cicel accusing Cicel of achieving its sales through bribery.

On the first occasion, which occurred on September 28, 2016, Misonix issued a Form 8-K stating that it had contacted the U.S. government because Misonix "may have had knowledge of certain business practices of the independent Chinese entity that distributes its products in China, which practices raise questions under the Foreign Corrupt Practices Act ('FCPA')."  *Id.* ¶ 46.  Misonix did not have any legal obligation to accuse its distributor of a crime in its disclosure; all relevant market participants understood the Form 8-K to be referring to Cicel.  *Id.* ¶ 47.  Misonix knew of information contradicting its public statement about Cicel.  *Id.* ¶¶ 26, 48-49.

On the second occasion, which occurred in November 2016, Misonix sent a letter to the NASDAQ stating that Cicel admitted to providing "extensive extra benefits to the end user surgeons," and that Cicel's sub-distributors facilitated "illegal payments to surgeons."  *Id.* ¶ 48.  Misonix knew that, David Battles, the Misonix employee who reported Cicel's alleged bribes had an ulterior motive for reporting wrongdoing, and had made contrary statements in writing to Misonix executives only two months prior.  *Id.*

On the third occasion, a Misonix executive sent an email dated December 14, 2016 to one of Cicel's competitors in China stating that, "In May of 2016, our Director of Asia Pacific

Sales, David Battles, informed the company that there might have been certain business practices by Cicel that could have violated the FCPA." *Id.* ¶ 49. Again, Misonix published these defamatory statements when Misonix knew they were biased and contradicted. *Id.* The e-mail also attached a link to Misonix's September 28, 2016 Form 8-K. *Id.*

Each of Misonix's statements constitutes defamation *per se* because it charged Cicel with violating a U.S. criminal statute which prohibits bribing foreign officials, and injured Cicel's business reputation by claiming that Cicel conducted business corruptly. *See Illiano*, 585 F. Supp. 2d at 356 (finding statements defamatory *per se* where defendants stated that plaintiff was fired for misusing her work email account); *Yesner v. Spinner*, 765 F. Supp. 48, 50, 52 (E.D.N.Y. 1991) (J. Spatt) (finding statements defamatory *per se* where the defendant stated that the plaintiff court reporter had a practice of modifying transcripts and had refused to pay agreed upon rates).

The defamation claims in the PAC are not time-barred because they relate back to the amended complaint, which was brought on April 5, 2017, well within the one-year statute of limitations period. Federal Rule of Civil Procedure 15(c)(1)(B) states that an amendment relates back to the original pleading when it arises "out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading." In deciding whether an amendment relates back, the principal inquiry is whether adequate notice has been given to the opposing party "by the general fact situation alleged in the original pleading." *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973), *cert. denied*, 414 U.S. 872 (1973).

In this case, the FAC pleaded that, "Consistent with and in furtherance of that bad faith scheme to damage Cicel's business reputation, on September 28, 2016, Misonix filed a Form 8-K with the Securities and Exchange Commission announcing" that it had contacted the U.S.

- 12 -

government because Misonix "may have had knowledge of certain business practices of the

independent Chinese entity that distributes its products in China, which practices raise questions

under the Foreign Corrupt Practices Act ('FCPA')."  FAC ¶ 40.  Accordingly, Cicel's addition of

a defamation claim based on Misonix's September 28, 2016 defamatory statement relates back

because it adds a claim that makes more specific what has already been alleged.  *Contemp.*

*Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248, 255-56 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612

(2d Cir. 1988).

Moreover, Cicel's addition of defamation claims based on Misonix's November 2016 and

December 14, 2016 defamatory statements (which Cicel learned about for the first time in

discovery) also relate back because they do not allege a new set of operational facts.  Rather,

"[t]he gravamen of the First Complaint… was that the [defendant] made false statements

regarding [the plaintiff]" that damaged her business reputation.  *Pusey v. Bank of Am., N.A.*, 14-

cv-04979 (FB)(LB), 2015 WL 4257251, at *2 (E.D.N.Y. July 14, 2015).  While the additional

statements are slightly different than those originally alleged to be defamatory, there is a

"common core of operative facts" alleged in the FAC and in the PAC sufficient to relate back for

statute of limitations purposes.  *See Contemp. Mission*, 665 F. Supp. at 256 (finding relation back

where the ten additional statements in the second amended complaint did not all involve the

same set of facts as did the matters originally alleged to be libelous).

In any event, when a court considers a motion for leave to amend, an analysis of the

sufficiency of the proposed defamation claim must remain subordinate to Rule 15 principles.

Disallowance of the claim would be premature because "justice requires that plaintiff be

afforded the opportunity to establish the validity and timeliness of" its claim on the merits.  *In*

*re Cohen*, 98 B.R. 179, 184 (Bankr. S.D.N.Y. 1989).  "Because the statute of limitations is an

- 13 -

affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claim accrued." *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995).  As a general rule, "a statute of limitations analysis is riddled with questions of fact which the defendant must establish in order to bar the plaintiff's claims." *Pusey*, 2015 WL 4257251, at *2.  Accordingly, "a motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of N.Y.*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010).

In *Lopez v. John Hancock Mutual Life Insurance Co.*, for example, the plaintiffs moved to amend their complaint to add a defamation claim.  115 F.R.D. 316, 317 (S.D.N.Y. 1987).  The defendant opposed the amendment on the ground that the defamation claim was barred by New York's one-year statute of limitations.  The plaintiffs in response noted that the doctrine of equitable estoppel prevented the assertion of the time bar.  The court observed that the parties in effect had created a "miniature motion for summary judgment," but cautioned that the court had "not lost sight, however, that the instant motion is one to amend the complaint and that an analysis of the sufficiency of the proposed defamation count must remain subordinate to Rule 15 principles." *Id.* Thus, the *Lopez* court granted the plaintiffs' motion for leave to amend to add the defamation claim.  *Id*. at 318*; see also Phillips v. Kidder, Peabody Co.*, 933 F. Supp. 303, 310 (S.D.N.Y. 1996) (holding that a ruling on a motion to amend did not constitute explicit consideration of the affirmative statute of limitations defense); *In re Cohen*, 98 B.R. at 184 ("Notwithstanding defendant's statute of limitations argument, we will not prevent plaintiff, at this stage in the proceeding, from attempting to plead the merits of his claim.").

Accordingly, Cicel's PAC states a claim for defamation *per se*, and Cicel's addition of

this claim would not be futile. *Illiano*, 585 F. Supp. 2d at 356; *Yesner*, 765 F. Supp. at 50, 52.

　　　　3.　　Cicel's Claim for Misappropriation of Trade Secrets Would Not Be Futile

　　The requirements for showing a misappropriation of a trade secret are similar under state and federal law. *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, 17-cv-0957 (ADS)(AKT), 2017 WL 6459464, at *5 (E.D.N.Y. Dec. 15, 2017) (J. Spatt). To state a claim for misappropriation of a trade secret or confidential information, a plaintiff must show (1) that it possessed a trade secret or confidential information; and (2) that the defendant used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 410 (E.D.N.Y. 2012) (J. Spatt) (citing *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009)). New York courts look to the following factors to determine whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information ; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Oneida*, 2017 WL 6459464, at *5 (citing *Ashland Mgmt Inc. v. Janien*, 82 N.Y.2d 395, 407 (N.Y. 1993)).

　　In *Oneida*, this Court found that the plaintiff had alleged sufficient facts to state a claim for misappropriation of trade secrets where the complaint identified five purported trade secrets: Oneida's business strategy; Oneida's market strategy for customers; Oneida's product margins, costs, rebate programs, and trade spend activities; Oneida's expected pricing; and Oneida's customer sales forecasting and customer-specific account strategies. 2017 WL 6549464, at *7.

- 15 -

Moreover, the Court noted that Oneida alleged that it took various steps to keep this information secret, including its employee handbook prohibiting its employees from disclosing the company's confidential information. *Id.* Accordingly, the Court denied the defendant's motion to dismiss. *Id.* at *8.

Here, the PAC pleads a claim against Misonix for misappropriation of trade secrets under both federal and state law. The PAC alleges that Misonix hired a former employee of Cicel to gain Cicel's confidential business information for its own use. PAC ¶¶ 22-32. The PAC details communications between Ms. Guo and Misonix's executives which show that Misonix asked for, and Ms. Guo provided Misonix with, Cicel's marketing strategy, budget, and sales targets, as well as Cicel's price structure and margin. Ms. Guo sent Misonix "a draft business plan for you and a PPT which I made in January for Cicel." *Id.* ¶ 23. Ms. Guo also prepared reports for Misonix which included Cicel's sales data and budget data. Ms. Guo's reports to Misonix included Cicel's sales quantities from 2013 that Ms. Guo represented she "got when I worked in Cicel," as well as budgeting information "I got when I worked in Cicel for making 2014 budget." *Id.* ¶ 28, 30. It also included market share information which Ms. Guo characterized as, "data I got from Finance group when I worked in Cicel." *Id.* Misonix executives praised Guo for "a very good job gathering the information." *Id.* Misonix also wrongfully misappropriated a list of Cicel's customers in China and Hong Kong. On November 23, 2014, Guo sent Dobash an Excel spreadsheet containing a list of customers in the Territory that Cicel had approached for sales of Misonix Products. The spreadsheet included the Province, Hospital, Title, Name, and Telephone Number for each customer listed. *Id.* ¶ 29.

The PAC also alleges that Misonix knew it was receiving Cicel's confidential information through improper means. Ms. Guo cautioned Misonix not to forward the

confidential information she had sent them to their other consultant in China because "he will transfer all the information to May [Lee, Cicel's CEO]."  Misonix's then-CEO responded that he would "protect the info." *Id.* ¶ 23. Additionally, another Misonix executive told Ms. Guo to "Please keep the information to yourself for now, as May might call you."  *Id.* ¶ 24.

The PAC further alleges that, upon information and belief, Misonix has used Cicel's confidential information for its own commercial advantage including, but not limited to, disclosing it to Weigao and other distributors in 2017 and 2018 to increase sales of Misonix products in China following Misonix's wrongful termination of its Agreement with Cicel. *Id.* ¶ 32.  Cicel has made this allegation "upon information and belief," because Misonix has refused to produce documents showing its communications with other distributors following its wrongful termination of the Agreement.

The PAC further alleges that Misonix misappropriated Cicel's confidential information, which Cicel gathered and formulated through considerable labors, skills, expenditures and good will. *Id.* ¶ 69.  The information misappropriated by Misonix was not known outside of Cicel's business, and that Cicel took measures to guard the secrecy of its information.  Ms. Guo signed an employment agreement with Cicel which incorporated Cicel's employee handbook.  The handbook prohibits Cicel's employees from disclosing the company's confidential information including, among other things, budget reports, financial reports, and agreements. *Id.* ¶ 68.

Accordingly, Cicel's PAC states a claim for misappropriation of trade secrets or confidential information, and Cicel's addition of this claim would not be futile. *See Oneida*, 2017 WL 6459464, at *5; *Dorset*, 893 F. Supp. 2d at 411-12 (denying defendant's motion to dismiss where the plaintiff identified its programs, business model, designs, methods, and procedures as trade secrets and alleged that it took reasonable steps to guard the secrecy of such

information).

**B.       No Undue Prejudice Or Undue Delay**

In assessing the likelihood of prejudice, the Court examines whether the proposed

amendment would (i) require the opponent to expend significant additional resources to conduct

discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or

(iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Adlife*, 2018 WL

4568801, at *3 (internal quotations omitted) (citing cases).

In this case, the proposed amendments would not require Misonix to expend significant

additional resources to conduct discovery and prepare for trial.  Document discovery continues to

be ongoing.  Discovery has not been completed and no summary judgment motions have been

filed.  Accordingly, there is no undue prejudice to the Defendant.  *See Olaf Soot Design, LLC v.*

*Daktronics, Inc.*, 299 F. Supp. 3d 395 (S.D.N.Y. Oct. 26, 2017) ("Courts are more likely to find

prejudice where the parties have already completed discovery and the defendant has moved for

summary judgment.").

The proposed amendments would not delay the resolution of this case.  Cicel filed the

instant motion within the time period prescribed by Magistrate Judge Locke as stated in the

docket entry on March 14, 2019.  In fact, Cicel filed the motion three weeks ahead of the

April 19, 2019 deadline.  In any event, as the case law explains, delay alone is not grounds for

denying a motion for leave to amend.  *See State Teachers Ret. Bd. V. Fluor Corp.*, 654 F.2d 843,

856 (2d Cir. 1981) (affirming grant of leave to amend even after discovery had closed, given that

"no trial date had been set by the court and no motion for summary judgment had yet been filed

by the defendants"); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (same).

- 18 -

    1.    <u>Cicel's Amendment Seeking Damages Does Not Cause Undue Prejudice or Undue Delay</u>

The FAC provided Misonix with notice that Cicel suffered monetary damages as a result of its breach of contract. Although Cicel sought specific performance as a remedy for its breach of contract claim, FAC ¶ 74, Cicel also sought monetary damages flowing from Misonix's breach of contract as a remedy for its tort claims. For example, on its conversion claim, Cicel alleged that it suffered $202,148.22 for payments to Misonix for products that were never delivered. FAC ¶ 77. Similarly, on its claims for unfair competition and tortious interference, Cicel alleged that it suffered damages flowing from "the sub-distributors' filing of lawsuits against Cicel," "many sub-distributors, hospitals and medical facilities refusing to do further business with Cicel in various provinces in China," and "loss of actual business." FAC ¶¶ 51, 59. Now that the tort claims have been dismissed, Cicel should be permitted to amend its complaint to avoid any doubt that it has alleged monetary damages on its breach of contract claim. Cicel's proposed amended complaint makes it clear that these damages are being sought as a result of Misonix's breach of the Agreement. PAC ¶¶ 10, 64, 79.

Not only was Misonix on notice that Cicel suffered monetary damages as a result of Misonix's breach, there would be no prejudice to Misonix or delay in allowing this amendment. Discovery is ongoing and there has been only one deposition of a Cicel witness which included questions relevant to monetary damages. On February 26, 2019, Misonix's counsel deposed Cicel's CEO May Lee and sought her testimony about Cicel's monetary damages including questions about lawsuits that Cicel faced as a result of the termination of the Agreement with Misonix, the amounts of the settlement payments, and legal fees. Under these circumstances, there is no undue prejudice.

2.      Cicel's Claim for Defamation *Per Se* Does Not Cause Prejudice or Undue Delay

Misonix has been on notice of Cicel's defamation claim since the filing of the FAC on April 5, 2017.  The FAC pleaded that, "Consistent with and in furtherance of that bad faith scheme to damage Cicel's business reputation, on September 28, 2016, Misonix filed a Form 8-K with the Securities and Exchange Commission announcing" that it had contacted the U.S. government because Misonix "may have had knowledge of certain business practices of the independent Chinese entity that distributes its products in China, which practices raise questions under the Foreign Corrupt Practices Act ('FCPA')."  FAC ¶ 40.  Accordingly, there can be no argument of undue prejudice with respect to the first occurrence of defamation dated September 28, 2016 and alleged in the PAC.  PAC ¶ 46.

There is also no credible claim of undue prejudice with respect to the second occurrence of defamation related to the letter sent to the NASDAQ in November 2016.  PAC ¶ 48.  Not only does this claim relate back to the FAC, Cicel has been on notice of it since September 27, 2018 when Cicel first filed its motion for leave to amend.  In that proposed amendment, which was attached to Cicel's motion, Cicel articulated a proposed defamation claim based on the NASDAQ letter.  ECF Dkt. No. 43.  Accordingly, Misonix cannot complain that it suffered prejudice as a result of having already taken the deposition of Cicel's CEO.  Having chosen to take a deposition of a Cicel witness while on notice about this potential claim for defamation, and having chosen not to ask questions about it, Misonix is precluded from arguing that it will be prejudiced or delayed by the addition of this claim.

With respect to the third occurrence of defamation related to Misonix's correspondence with Cicel's competitor in China on December 14, 2016 (PAC ¶ 49), the facts related to this claim were revealed to Cicel during document discovery.  Courts have routinely granted motions

- 20 -

to amend where the amended pleadings are based on facts that came to light during the course of litigation.  *See, e.g., Martin v. Sprint/United Mgmt. Co.*, 15-cv-5237 (PAE), 2016 WL 2757431, at *4 (S.D.N.Y. May 12, 2016) (granting motion to amend where the plaintiffs learned additional information giving rise to a claim during the parties' briefing); *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, No. 12 Civ. 2224 (AJN) (JCF), 2014 WL 406497, at *2 (S.D.N.Y. Feb. 3, 2014) (delay justified where plaintiff did not learn essential facts until discovery); *TNS Media Research, LLC v. TRA Glob., Inc.*, No. 11 Civ. 4039 (SAS), 2012 WL 2052679, at *1 (S.D.N.Y. June 4, 2012) (allowing party to add counterclaim defendants where earlier suspicions were subsequently borne out through discovery).

### 3. Cicel's Claim for Misappropriation of Trade Secrets Does Not Cause Prejudice or Undue Delay

Cicel's addition of claims for misappropriation of trade secrets was not motivated by undue delay or bad faith, and will not cause Misonix undue prejudice.

In *Adlife*, this Court considered whether the plaintiff's proposed amendments would prejudice the defendant. 2018 WL 4568801, at *3.  The plaintiff's proposed amendments to the complaint were developed during discovery; the parties had not yet completed discovery; and no summary judgment motions had been filed.  *Id.* at *2-*3.  The defendant's primary argument was that it had invested significant time and resources on the case, and that if the proposed amendment was allowed, the defendant would have to spend additional resources to reevaluate and adjust its strategy.  *Id.* at *3. The Court rejected the defendant's "undue burden" argument noting that "[p]arties are constantly required to adjust their strategy based on discovery, orders by a court, and a variety of other circumstances both within and outside of their control."  *Id.* Accordingly, even if supplementary discovery is required, that does not amount to an undue burden.  *See U.S. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989)

- 21 -

("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading").

Cicel learned the facts giving rise to its claims for misappropriation of trade for the first time through the discovery process in this litigation.  Cicel was not aware that Ms. Guo had provided Misonix with Cicel's marketing strategy, budget, and sales targets, as well as Cicel's price structure and margin.  Cicel was also unaware that Misonix had wrongfully misappropriated a list of Cicel's customers in China and Hong Kong.  The documents themselves reveal a concerted effort between Misonix and Ms. Guo to keep Cicel from learning about Misonix's misappropriation.  Here, as in *Adlife*, Cicel's proposed amendments to the complaint were developed during discovery; the parties have not yet completed discovery; and no summary judgment motions have been filed.  Accordingly, Cicel's motion to amend the complaint to add claims for misappropriation of trade secrets should be granted.

## <u>CONCLUSION</u>

For the forgoing reasons, Cicel withdraws the motion docketed as ECF No. 63 in favor of the instant motion, and respectfully requests that the Court grant its motion for leave to file the PAC.

Dated: March 28, 2019
          New York, New York

                                        **REED SMITH LLP**

                                        By:   /s/ Jennifer L. Achilles              
                                                 Jennifer L. Achilles
                                                 JAchilles@reedsmith.com
                                                 Jonathan P. Gordon
                                                 Jonathan.Gordon@reedsmith.com

                                        599 Lexington Avenue
                                        New York, New York 10022
                                        Telephone:  (212) 521-5400
                                        Facsimile: (212) 521-5450

                                        *Attorneys for Plaintiff Cicel (Beijing) Science &*
                                        *Technology Co., Ltd.*