UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
CICEL (BEIJING) SCIENCE &
TECHNOLOGY CO., LTD.,

              Plaintiff,

    -against-

MISONIX, INC.,

              Defendant.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-1642 (ADS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By Complaint dated March 23, 2017, Plaintiff Cicel (Beijing) Science & Technology Co., Ltd. ("Plaintiff" or "Cicel") commenced this diversity action against Defendant Misonix, Inc. ("Defendant" or "Misonix") and executives of the company (the "Executives"), asserting claims sounding in unfair competition, tortious interference with contract and prospective contract, breach of contract, conversion and fraud. *See generally* Complaint, DE [1]. Plaintiff filed an Amended Complaint on April 5, 2017. *See* Amended Complaint ("Am. Compl."), DE [6]. On October 7, 2017, the Honorable Arthur D. Spatt issued a Memorandum of Decision & Order dismissing all of Plaintiff's claims except for the breach of contract count against Misonix only. *See* DE [15]. The parties subsequently proceeded with discovery, which this Court has managed and overseen. Presently before the Court is Cicel's motion seeking, *inter alia*, an order compelling Misonix to produce "all documents pertaining to its purported investigation(s) concerning conduct by Cicel that purportedly raised issues or concerns relating to the Foreign Corrupt Practice [*sic*]

Act[.]" Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel, Etc. ("Pl.'s Mem."), DE [66-5], at 1. For the reasons set forth herein, Plaintiff's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

Cicel is a Chinese corporation based in Beijing that markets and distributes medical devices throughout China and Hong Kong. *See* Am. Compl. ¶¶ 1, 14. Misonix is a publicly-traded corporation, formed under the laws of the state of New York, that manufactures medical devices. *See id.* ¶¶ 2, 40.

### A. <u>General Factual Allegations</u>

According to the Amended Complaint, the parties first entered into an agreement in May 2010, pursuant to which Plaintiff served as a distributor of Defendant's products in China. *See id.* ¶ 13. Three years later, in May 2013, Cicel and Misonix executed a subsequent agreement (the "Agreement") naming Plaintiff as the sole distributor within China and Hong Kong of certain products manufactured by Defendant. *See id.* Cicel alleges that, "[a]lthough the Agreement's term was to run from June 1, 2013 to at least May 17, 2018, [the Executives] caused Misonix to wrongfully terminate the Agreement by letter dated September 27, 2016. *See id.* ¶ 12. Plaintiff further contends that Defendant took such action in "bad faith" as part of a "scheme to damage Cicel's business reputation." *Id.* ¶ 40. Misonix, by contrast, has maintained that "it stopped selling product to Cicel after uncovering evidence that Cicel's business practices were inconsistent with Misonix's policies and raised concerns under the Foreign Corrupt

Practices Act [("FCPA")]." *See, e.g.*, Answer of Misonix, Inc. to Plaintiff's Amended Complaint (the "Answer"), DE [17], ¶ 21.

## B. <u>The Internal Investigation</u>

According to Martha B. Stolley ("Stolley"), a partner with the law firm of Morgan, Lewis & Bockius LLP ("Morgan Lewis"), the Audit Committee of Misonix's Board of Directors retained Morgan Lewis in May 2016 to "provide legal advice regarding issues surrounding [Defendant's] Chinese distributor, for which government investigations and civil litigation was anticipated." Declaration of Martha B. Stolley ("Stolley Declaration" or "Stolley Decl."), DE [67-4], ¶¶ 1, 2. Stolley claims that "Misonix asked Morgan Lewis to conduct an internal investigation relating to, among other things, possible violations of laws related to the distribution of its products in China" and that "Morgan Lewis then conducted an investigation in connection with and to facilitate th[e] legal advice" sought by Defendant (the "Internal Investigation"). *Id.* ¶ 2.

As part of the Internal Investigation, "Morgan Lewis attorneys interviewed and corresponded with numerous current and former Misonix employees, as well as two employees of Cicel . . . —May Lee and Sunny Li." *Id.* ¶ 3. Stolley contends that "[t]he interviews, as well as the correspondence with current and former Misonix employees, including with Michael McManus [("McManus")],[1] were all conducted confidentially, pursuant to the attorney-client privilege between Misonix and its

---

[1] McManus served as Chief Executive Officer of Misonix from May 13, 2016 through September 2, 2016. *See* Declaration of Tian Huang in Support of Defendant's Opposition to Plaintiff's Motions to Compel, for an In-Camera Review, To Preclude, and for Fees and Costs ("Huang Decl."), DE [67], Exhibit ("Ex.") B at 2.

legal counsel." *Id.* ¶ 4. That is, "at the outset of each interview of current and former Misonix employees, including with Michael McManus, and of May Lee and Sunny Li, Morgan Lewis informed the witness that: (i) Morgan Lewis did not represent the witness, and (ii) the purpose of the interview was to gather information to assist in providing legal advice to Misonix." *Id.* In addition, Morgan Lewis informed each employee interviewee that: "(i) the interview was . . . privileged, (ii) this privilege belonged to Misonix, and (iii) the witness should keep confidential the matters discussed at the interview." *Id.* Attorneys from Morgan Lewis also "corresponded with current and former Misonix employees, including Michael McManus, to request information in anticipation of litigation, and directed employees to gather information to aid counsel in providing legal services." *Id.* ¶ 5.

Stolley further declares that, although "Morgan Lewis attorneys took notes during the interviews," neither "the witnesses nor Morgan Lewis made recordings, transcripts, or other verbatim recitations of the interviews . . . ." *Id.* ¶¶ 6, 7. Those notes, which have not been provided to any individuals outside of Morgan Lewis, "reflect the questions counsel chose to ask and mental impressions and opinions of the attorneys who took the notes." *Id.* ¶ 7. Although "Morgan Lewis has generated investigatory materials from the [I]nternal [I]nvestigation in light of the ongoing government investigations and in anticipation of this civil litigation and other potential litigation[,] [t]hese materials, unless they were in an email, have not been shared with Misonix, any government agency, or any third party." *Id.* ¶ 8. It is Stolley's understanding that any documents provided by Misonix to the government

"related to Cicel's business practices in China and Misonix's concerns about those practices" have likewise been produced in this litigation. *Id.* ¶ 9.

### C. **Misonix's September 28, 2016 Form 8-K**

On September 28, 2016, Misonix filed with the United States Securities and Exchange Commission ("SEC") a Form 8-K,[2] which disclosed the following information:

> On September 27, 2016 and September 28, 2016, respectively, Misonix, Inc. (the "Company") contacted the [SEC] and the U.S. Department of Justice ("DOJ") to voluntarily inform both agencies that the Company may have had knowledge of certain business practices of the independent Chinese entity that distributes its products in China, which practices raise questions under the [FCPA].

> The Audit Committee of the Board of Directors of the Company engaged outside counsel to conduct an internal investigation to review these and other matters. The internal investigation is ongoing. The Company has no current information derived from the investigation to date or otherwise to suggest that its previously reported financial statements and results are incorrect in any material respect.

> The Company intends to cooperate fully with the DOJ and SEC as the investigation continues. At this stage, the Company is unable to predict what, if any, action the DOJ or the SEC may take or what, if any, penalties or remedial measures these agencies may seek. Any determination that the Company's operations or activities are not in compliance with existing laws or regulations could result in the imposition of fines, civil and criminal penalties, equitable remedies, including profit disgorgement, and injunctive relief.

Huang Decl., Ex. A.

---

[2] "A Form 8-K is the SEC form used for companies' current reports pursuant to . . . 15 U.S.C. §§ 78m(a)(2), 78o(d) . . . , [which] must be filed upon the occurrence of certain significant corporate events as defined by the SEC and may be filed with respect to any other matter the company considers of material importance." *Lasker v. UBS Sec. LLC*, No. 08-cv-854, 2009 WL 57137, at *1 (E.D.N.Y. Jan. 7, 2009), *aff'd*, 358 F. App'x 225 (2d Cir. 2009).

## D. <u>Procedural History of This Case</u>

Following the events described above, Cicel commenced this suit against Misonix and the Executives on March 23, 2017.  *See* DE [1].  On April 5, 2017, Plaintiff filed an Amended Complaint that asserted the following claims:  (i) Count One: Unfair Competition; (ii) Count Two: Tortious Interference with Contract; (iii) Count Three: Tortious Interference with Prospective Contract; (iv) Count Four: Breach of Contract; (v) Count Five: Conversion; and (vi) County Six: Fraudulent Inducement.  *See* Am. Compl. ¶¶ 45-85.  Defendant and the Executives moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on May 19, 2017.  *See* DE [9].  By Memorandum of Decision & Order dated October 7, 2017, Judge Spatt granted the motion as to all claims against the Executives and all but Count Four, Breach of Contract, against Misonix. *See* DE [15].

On June 15, 2018, Cicel filed a letter motion seeking an order compelling Defendant to produce:  "(1) any transcripts, notes, recordings or videotapes of the questioning of Cicel's executives May Lee and Sunny Li by the law firm Morgan Lewis . . . ; and (2) all documents pertaining to Misonix's purported investigation of Cicel's conduct, by [Morgan Lewis], that purportedly led to Misonix's termination of Cicel's exclusive distributorship agreement."  DE [34] at 1.  Defendant submitted a letter brief in opposition on June 19, 2018.  *See* DE [35].  Following additional unrelated motion practice, at an in-person hearing on October 17, 2018, this Court, *inter alia*, denied Plaintiff's letter motion to compel without prejudice and with

leave to renew as a formal motion. *See* DE [53]. Thereafter, on December 13, 2018, Cicel filed the instant fully-briefed motion. *See* DEs [66]-[68].[3]

Primarily, Plaintiff's motion seeks an order compelling Defendant to "produce all documents pertaining to its purported investigation(s) concerning conduct by Cicel that purportedly raised issues or concerns relating to the [FCPA], many of which documents are listed in Misonix's privilege log, on the grounds that the documents are not privileged or because the privilege has been waived by Misonix[.]" Pl.'s Mem. at 1. In the alternative, Cicel urges the Court to conduct an *in camera* review of the documents listed on Defendant's privilege log. *See id.* Plaintiff also seeks alternative relief in the form of an order precluding Misonix from using or referring to documents identified in its privilege log, or its investigation in general, in connection with "any further proceedings and trial of this action[,]" if the Court deems such documents undiscoverable. *Id.* Finally, Cicel requests an award of attorneys' fees and costs under Rule 37 of the Federal Rules of Civil Procedure. *Id.*

## II.    APPLICABLE LAW

As a preliminary matter, because Plaintiff has invoked diversity jurisdiction under 28 U.S.C. § 1332 as the basis for this Court's subject matter jurisdiction, the Court must determine the appropriate law to apply in evaluating the instant motion. Where federal jurisdiction is based on diversity of the parties, "[i]t is clear that . . . Fed. R. Evid. 501 requires the application of state law to questions of

---

[3] On March 7, 2019, Defendant filed a "supplemental response to Cicel's motion to compel[,]" in which it informed the Court of factual developments that it contends further strengthen its opposition to the instant motion. DE [76].

privilege." *R.R. Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.), Inc.*, 97 F.R.D. 37, 39 (E.D.N.Y. 1983); *see also* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").[4]    However, because "the work product doctrine does not constitute a true privilege," *Weber v. Paduano*, No. 02-cv-3392, 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003), courts distinguish between claims of attorney-client privilege and the attorney work-product doctrine for purposes of Fed. R. Evid. 501. *See Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007) ("While state law governs the question of attorney-client privilege in a diversity action, federal law governs the applicability of the work product doctrine."). Accordingly, "federal law governs the applicability of the work-product doctrine in all actions in federal court." *Calabro v. Stone*, 225 F.R.D. 96, 98-99 (E.D.N. Y 2004) (internal quotation omitted).

## III.   LEGAL STANDARDS

Where, as here, a party raises privilege as a basis for withholding otherwise discoverable materials, "the burden is on a party claiming the protection of a privilege to provide evidence sufficient to establish the essential elements of the privileged relationship." *S.E.C. v. NIR Grp., LLC*, 283 F.R.D. 127, 131 (E.D.N.Y. 2012) (citations omitted).  "This burden cannot be discharged by mere conclusory or *ipse dixit* assertions." *Id.*

---

[4] It is of no material consequence that both sides cite exclusively federal decisions and neglect to address the choice of law issue, because "[t]here are . . . few differences between federal law and New York state law relevant to the attorney-client privilege." *In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 21 (W.D.N.Y. 1997) (citation omitted).

### A. **Attorney-Client Privilege**

Pursuant to New York law, "[t]he attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client." *In re Nassau Cty. Grand Jury Subpoena Duces Tecum Dated June 24, 2003*, 4 N.Y.3d 665, 678, 797 N.Y.S.2d 790 (2005); *see also* N.Y. C.P.L.R. § 4503 (codifying New York's attorney-client privilege); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 470 (S.D.N.Y. 2003) ("Under New York law, in order for the attorney-client privilege to apply, there must be a communication made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." (internal quotation omitted)). Moreover, "[t]he communication itself must be 'primarily or predominantly of a legal character.'" *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 168 (S.D.N.Y. 2008) (quoting *Rossi v. Blue Cross & Blue Shield of Greater New York*, 73 N.Y.2d 588, 594, 542 N.Y.S.2d 508 (1989)). Ultimately, "[t]he critical inquiry is whether, viewing the . . . communication in its full content and context, it was made in order to render legal advice or services to the client." *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 379, 575 N.Y.S.2d 809 (1991).

### B. **Work Product Doctrine**

The federal work-product doctrine protects from disclosure "documents prepared 'in anticipation of litigation or for trial by or for [a] party or by or for that . . . party's representative.'" *Ruotolo v. City of New York*, No. 03-cv-5045, 2005 WL 823015, at *1 (S.D.N.Y. Apr. 7, 2005) (quoting Fed. R. Civ. P. 26(b)(3)); *see also*

*DeAngelis v. Corzine*, No. 11-cv-7866, 2015 WL 585628, at *4 (S.D.N.Y. Feb. 9, 2015) ("The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative."). The Second Circuit has construed the phrase "in anticipation of litigation" to mean that, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis removed).

In analyzing the applicability of the work-product doctrine, courts distinguish between factual and opinion work product. *See, e.g., Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007) ("[T]he work product doctrine protects both factual and opinion work product . . . ."); *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 127 (N.D.N.Y. 2007) ("It is important to note that the work product doctrine classifies documents into two categories: 'non-opinion' work product and 'opinion' work product."). Whereas opinion work product includes "mental impressions, conclusions, opinions, or legal theories of an attorney," *In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir. 2000), non-opinion or factual work product includes "nonprivileged facts." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001). It is well-established that "[o]pinion work product receives higher protection so that litigation strategy is not revealed . . . ." *Strougo*, 199 F.R.D. at 521; *see also Palazzetti Imp./Exp., Inc. v. Morson*, No. 98-cv-722, 2000 WL 1015921, at *3 (S.D.N.Y. July 21, 2000) ("Although both factual and opinion work product fall

within the scope of the doctrine, an attorney's mental impressions, conclusions, opinions, or legal theories typically are afforded greater protection."). Non-opinion work product, therefore, "is not discoverable absent a showing of 'substantial need,'" and opinion work product "is not discoverable absent a 'highly persuasive showing' of need." *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013) (quoting *In re Grand Jury Proceedings*, 219 F.3d at 190-91), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014); *see also United States v. Ghavami*, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012) (holding that opinion work product "is entitled to virtually absolute protection"); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 230 (E.D.N.Y. 2007) ("[F]actual material may be ordered upon a showing that the party seeking discovery has substantial need of the materials and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." (internal quotation and alteration omitted)).

### C. <u>Waiver of Privilege</u>

#### 1. Failure to List Documents on Privilege Log

Waiver of privilege may also occur where a party fails to list withheld documents on its privilege log. Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A), a party who withholds documents on the account of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Consistent with that Federal Rule, courts typically require that

parties provide a detailed privilege log for all documents withheld. *See Trudeau v. N.Y. State Consumer Prot. Bd.*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006) ("In this respect, and in order to evaluate and facilitate the determination of whether a privilege exists, courts generally require compliance with th[e] statutory mandate [of Fed. R. Civ. P. 26(b)(5)] that an adequately detailed privilege log be provided."). Fed. R. Civ. P. 26 is further supplemented by Local Civil Rule 26.2, which requires that a party withholding documents on the grounds of privilege set forth: "(i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other . . . ." Local Civil Rule 26.2(a)(2)(A); *see also Go v. Rockefeller Univ.*, 280 F.R.D. 165, 174 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(b)(5) and Local Civil Rule 26.2 in analyzing the sufficiency of a privilege log). In assessing the adequacy of a privilege log, courts must also ask whether it "suffice[s] to establish each element of the privilege or immunity that is claimed." *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97-cv-4978, 2000 WL 1538003, at \*2 (S.D.N.Y. Oct. 17, 2000) (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.*, 90-cv-6291, 1992 WL 367070, at \*5 (S.D.N.Y. Nov. 20, 1992)); *see also Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (explaining that a privilege log should "identify each document and the individuals who were parties to the communications, providing sufficient detail

to permit a judgment as to whether the document is at least potentially protected from disclosure").

Consistent with these principles, courts in the Second Circuit have uniformly concluded that "[t]he failure of a party to list a document withheld during the course of discovery on a privileged log . . . ordinarily results in a finding that the privilege otherwise asserted has been waived." *Feacher v. Intercontinental Hotels Grp.*, No. 3:06-cv-0877, 2007 WL 3104329, at *5 (N.D.N.Y. Oct. 22, 2007); *see FG Hemisphere Associates, L.L.C. v. Republique Du Congo*, No. 01-cv-8700, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) ("As other judges in this District and I have repeatedly held, the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege." (citations omitted)); *accord Kogut v. Cty. of Nassau*, No. 06-cv-6695, 2011 WL 13284714, at *4 (E.D.N.Y. Nov. 14, 2011) ("The failure of defendants to list the . . . documents [in question] on a privilege log constitutes a waiver of any applicable privilege.").

### 2. Voluntary Disclosure

"It is [also] well-settled that '[v]oluntary disclosure of privileged communications to a third party results in waiver of the attorney-client privilege.'" *Curto v. Med. World Commc'ns, Inc.*, 783 F.Supp. 2d 373, 378 (E.D.N.Y. 2011) (quoting *Local 851 of the Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F.Supp.2d 127, 129 (E.D.N.Y.1998)); *see also In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("Matters actually disclosed in public lose their privileged status

because they obviously are no longer confidential."); *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F.Supp.2d 713, 744 (S.D.N.Y. 2011) ("[T]he attorney[-]client privilege can be waived if the document is published, or disclosed to private individuals." (internal quotation and citation omitted)), *amended on reconsideration*, (S.D.N.Y. Aug. 8, 2011).  "Under federal and New York State law, a party waives attorney-client privilege where 'he voluntarily undertakes actions that will predictably lead to the disclosure of the document.'" *Falise v. Am. Tobacco Co.*, 193 F.R.D. 73, 79 (E.D.N.Y. 2000) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993)).  As to work product, the test for whether waiver has occurred "is whether the disclosure at issue has 'substantially increased the opportunities for potential adversaries to obtain the information.'" *In re Vitamin C Antitrust Litig.*, No. 06-md-1738, 2011 WL 197583, at *2 (E.D.N.Y. Jan. 20, 2011) (internal quotation and citation omitted) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y. 2000)).

### 3. At-Issue Waiver

In addition, it is established law in this Circuit that "[b]oth the attorney-client and work-product privileges may be waived if a party puts the privileged communication at issue by relying on it to support a claim or defense." *Koumoulis*, 295 F.R.D. at 40; *see Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*, No. 16-cv-6517, 2018 WL 4864833, at *2 (E.D.N.Y. Sept. 28, 2018) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword[.]"); *Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) ("A defendant may not use the privilege to

prejudice his opponent's case . . . ." (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991))); *see also In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) ("A client may . . . by his actions impliedly waive the privilege or consent to disclosure." (internal citations omitted)). Moreover, a waiver may occur even if the asserting party does not make direct use of the privileged communication itself when that party avers material facts at issue related to the privileged communication, and where the validity of those facts can only be accurately determined through an examination of the undisclosed communication. *See Laborers Local 17 Health Benefit Fund v. Philip Morris, Inc.*, No. 97-cv-4550, 1998 WL 414933, at *1-2 (S.D.N.Y. July 23, 1998) (citing *Bilzerian*, 926 F.2d at 1292; *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)). Under such circumstances, fundamental fairness strongly supports a finding that a waiver of attorney-client privilege has occurred. *Id.*

Just as the party asserting privilege has the burden of establishing it, that party "also bears the burden of demonstrating that it has not been waived." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009); *see also Curto*, 783 F.Supp.2d at 380 ("The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived." (internal quotation and citation omitted)).

## IV. DISCUSSION

Applying the standards outlined above, and for the reasons set forth below, Cicel's motion is granted insofar as the Court directs Misonix to: (i) provide to the

Court for *in camera* review all emails listed on its privilege log involving solely non-lawyers; (ii) amend its privilege log to include all Internal Investigation materials in the possession of Morgan Lewis; and (iii) to the extent not already done, produce all responsive materials provided to the SEC. Plaintiff's motion is otherwise denied.[5]

## A. <u>Whether the Documents in Question are Subject to the Attorney-Client Privilege or the Work-Product Doctrine</u>

In support of its motion, Cicel argues that the documents withheld by Misonix are not protected from disclosure by either the attorney-client privilege or the work product doctrine because: (i) certain documents do not involve communications with counsel; (ii) certain documents were not treated as confidential; and (iii) Defendant has not demonstrated that the investigatory documents were prepared primarily for the purpose of seeking or obtaining legal advice, or in anticipation of litigation. *See* Pl.'s Mem. at 2-6. Because the central issue before this Court is whether Misonix's investigatory documents are privileged, the Court addresses Plaintiff's third argument at the outset and then proceeds to analyze the first two arguments in turn.

---

[5] The Court is unpersuaded by Misonix's argument that Cicel's motion should denied altogether for failure to confer in good faith pursuant to Federal Rule of Civil Procedure 37. *See* Def.'s Opp. at 3-4. The parties appeared for oral argument on Plaintiff's initial letter motion to compel on October 17, 2018, and this Court directed Cicel to resubmit its application by formal motion. *See* DE [53]. Accordingly, the Court deems Plaintiff's meet and confer obligation satisfied and waives the sworn certification requirement under Rule 37. *See Woodward v. Holtzman*, No. 16-cv-1023A(F), 2018 WL 5112406, at *2 (W.D.N.Y. Oct. 18, 2018) ("[D]istrict courts maintain discretion to waive the meet-and-confer required [of Rule 37(a)(1)]." (quoting *Elhannon LLC v. F.A. Bartlett Tree Expert Co.*, No. 2:14-cv-262, 2017 WL 1382024, at *9 (D. Vt. Apr. 18, 2017)).

1. Purpose of the Internal Investigation

In its moving papers, Cicel maintains that documents pertaining to the Internal Investigation are not privileged because "Morgan Lewis was not retained to provide core legal advice, but rather was expressly retained to '*conduct an internal investigation*[,]' *i.e.*, a fact-finding mission, a role that could have been performed by non-counsel." Pl.'s Mem. at 5-6. Plaintiff further contends that "any records, recordings and notes of [Defendant's] interview of Cicel personnel clearly are not privileged because Cicel personnel indisputably were not clients of Morgan Lewis[,] and Cicel is entitled to those documents and records, pursuant to [Fed. R. Civ. P.] 26(b)(3)(C) . . . ." *Id.* at 6. Additionally, Plaintiff argues in its reply brief that "Misonix's investigation documents are not privileged . . . [because] they were prepared, not for litigation, but for the primary purpose of permitting Misonix to file its required Form 10-K and 10-Q statements, [which] are required of publicly[-]listed companies." Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion to Compel, Etc. ("Pl.'s Reply"), DE [68-1], at 6.[6]

As a general rule, "[i]nvestigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel." *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04-cv-2271, 2006 WL 3771010, at *5 (S.D.N.Y. Dec. 15, 2006). Rather, as explained

---

[6] Cicel consistently fails to expressly distinguish between—and at times appears to conflate—its arguments relating to the attorney-privilege and those relating to the work-product doctrine. *See, e.g.*, Pl.'s Reply at 4 ("Misonix plainly has failed to meet its 'heavy burden' of demonstrating the attorney-client or work product privileges' applicability, as its conclusory assertion[s] concerning providing legal advice are plainly insufficient . . . ."). This is understandable given that Defendant has relied on similar facts—namely, those set forth in the Stolley Declaration—to support its assertions of both privileges. Nevertheless, this Court will address each issue independently.

above, to qualify for protection under the attorney-client privilege, communications must be "made for the purpose of obtaining or providing legal advice." *Favors*, 285 F.R.D. at 198. Moreover, the work product doctrine protects only those documents prepared "in anticipation of litigation." *Koumoulis*, 295 F.R.D. at 39.

a. Attorney-Client Privilege

In the seminal case of *Upjohn Co. v. United States*, the United States Supreme Court held that interview notes and memoranda prepared by a corporation's inside counsel in connection with an internal investigation were protected by the attorney-client privilege. *See* 449 U.S. 383, 395, 101 S. Ct. 677, 685 (1981). As a foundation for its holding, the *Upjohn* Court explained that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390, 101 S.Ct. at 683. Moreover, the Court emphasized that "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id.* at 390-91, 101 S.Ct. at 683. In reaching its conclusion that the attorney-client privilege applied, the Court reasoned that: (i) "[t]he communications at issue were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel"; (ii) the investigation was factual in nature and undertaken "to determine the nature and extent of the [conduct in question] and to be in a position to give legal advice to the company with respect to th[at] [conduct]"; (iii) "the communications concerned

matters within the scope of the employees' corporate duties"; and (iv) "the employees [interviewed] were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Id.* at 394, 101 S. Ct. at 685.

Subsequently, in a case involving facts closely analogous to those here, a trial court in the Southern District of New York, relying heavily upon *Upjohn*, concluded that investigatory materials generated from an internal investigation conducted by a company's outside counsel were properly withheld pursuant to the attorney-client privilege as well as the work product doctrine. *See In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 531 & 533 (S.D.N.Y. 2015). The *General Motors* court concluded that "*Upjohn* appl[ied] squarely to the materials at issue":

> Here, as in *Upjohn*, the internal investigation and accompanying interviews were conducted "as part of [the company's] request for legal advice" in light of possible misconduct and accompanying governmental investigations and civil litigation . . . . Here, as in *Upjohn*, the employees interviewed were aware (and, in fact, explicitly told) that the purpose of the interviews was to collect information to assist in providing legal advice to the company, and that the matters discussed were therefore confidential . . . . Here, as in *Upjohn*, the documents reflecting communications between the company's lawyers and its employees during the interview process have not been provided to third parties . . . .

*General Motors*, 80 F. Supp. 3d at 527-28 (internal citations omitted). The Court explained, "although the investigation [t]here was conducted by outside counsel rather than in-house counsel, that difference from *Upjohn* strengthens rather than weakens [the company's] claim to the privilege." *Id.* at 528.

This Court agrees with Misonix that *General Motors* and *Upjohn* govern here. Initially, in this case, as in *Upjohn* and *General Motors*, the Internal Investigation

was conducted as part of the company's request for legal advice regarding issues pertaining to government investigations and anticipated civil litigation. *See* Stolley Decl. ¶ 2. More specifically, Defendant "retained Morgan Lewis to provide legal advice regarding issues surrounding its Chinese distributor, for which government investigations and civil litigation was anticipated." *Id.* To facilitate that advice, Morgan Lewis then "conduct[ed] an internal investigation relating to, among other things, possible violations of laws related to the distribution of [Misonix's] products in China." *Id.* Thus, Misonix has adequately demonstrated that the "primary purpose" of Morgan Lewis's internal investigation was "the provision of legal advice" such that the privilege should apply. *General Motors*, 80 F. Supp. 3d at 530; *see also id.* ("So long as obtaining or providing legal advice was one of the significant purposes of the internal investigation, the attorney-client privilege applies, even if there were also other purposes for the investigation . . . ." (quoting *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C.Cir. 2014))). Further, similar to outside counsel in *General Motors*, Morgan Lewis attorneys interviewed current and former employees of the company, informed them that the interviews were privileged, and instructed them to maintain in confidence the subject matter discussed. *See id.* ¶ 4. Morgan Lewis also advised each witness that the firm did not represent the witness and that the purpose of the interview was to gather information to assist in providing legal advice to Misonix. *See id.*

Cicel's argument that the position taken by Defendant in opposition to this motion "represents a new tune," Pl.'s Reply at 2, is unavailing. As evidence of

Misonix's allegedly inconsistent views regarding the purpose of the Internal Investigation, Plaintiff identifies: (i) Defendant's September 28, 2016 Form 8-K, *see* Huang Decl., Ex. A; (ii) Misonix's memorandum of law in support of its motion to dismiss filed in this case, *see* DE [9-1] at 3; and (iii) a letter dated November 14, 2016 from Defendant to the NASDAQ, *see* Affirmation of Dean T. Cho, Esq. in Support of Motion to Compel ("Cho Aff."), DE [66-1], Ex. 2(A).[7] According to Cicel, Misonix's representation in each of those documents that it retained outside counsel to "conduct an internal investigation" belies any notion that Morgan Lewis's primary purpose was to provide legal advice. But as *General Motors* and *Upjohn* make clear, internal investigations—if commenced with the primary purpose of obtaining legal advice—may trigger application of the attorney-client privilege. And the Stolley Declaration establishes that Misonix retained Morgan Lewis for that primary purpose. Thus, although perhaps insufficient by themselves to support an assertion of privilege, Defendant's prior written statements do nothing to undermine either Stolley's assertions or its position with respect to the instant motion.

Cicel's remaining two arguments on this point similarly lack merit. First, Plaintiff contends that "Misonix's opposition papers fail to specify the legal issues that [Morgan Lewis] purportedly was retained to address." Pl.'s Reply at 2. To the contrary, Stolley affirms that Defendant retained Morgan Lewis "to provide legal advice regarding issues surrounding its Chinese distributor," including "possible

---

[7] Cicel incorrectly identifies June 15, 2018 as the date of Misonix's letter to the NASDAQ. *See* Cho Aff., Ex. 2(A).

violations of laws related to the distribution of its products in China." *See* Stolley Decl. ¶ 2. Second, Cicel insists that Defendant's retention of new counsel, the law firm of Williams & Connolly, LLP, to represent the company in this litigation confirms "that [Morgan Lewis]'s work was investigative, not legal, in nature . . . ." Pl.'s Reply at 2; *see also id.* at 3 ("If [Morgan Lewis]'s work was legal in nature, why wouldn't Misonix have retained [Morgan Lewis] as litigation counsel?"). This argument is legally unsupported and, in any event, defies logic. As discussed, investigatory and legal work are not mutually exclusive. *See generally Upjohn*, 449 U.S. at 395, 101 S. Ct. at 685; *General Motors*, 80 F. Supp. 3d at 521. In the same vein, the mere premise that Defendant hired a different law firm to represent it in this litigation is insufficient to support the conclusion that Morgan Lewis's work was not primarily legal in nature. Thus, Cicel's assertions are rejected.

Accordingly, having determined that Misonix has met its burden to show that it retained Morgan Lewis for the primary purpose of providing legal advice, the Court concludes that all communications with counsel stemming from Defendant's Internal Investigation are protected from disclosure by the attorney-client privilege.

### b. Work Product Doctrine

The Court next considers the applicability of the work product doctrine to Misonix's investigatory materials. "[D]ocuments prepared 'in the ordinary course of business,' . . . that 'would have been created in essentially similar form irrespective of the litigation,' are not protected by the work product doctrine." *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390 (S.D.N.Y. 2016). Nevertheless,

"[i]nterview notes and memoranda produced in the course of . . . internal investigations have long been considered classic attorney work product." *General Motors*, 80 F. Supp. 3d at 532; *see also Upjohn*, 449 U.S. at 399, 101 S. Ct. at 687 ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." (citation omitted)).  As the Second Circuit has explained: "Nowhere does Rule 26(b)(3) state that a document must have been prepared to aid in the conduct of litigation in order to constitute work product, much less primarily or exclusively to aid in litigation.  Preparing a document 'in anticipation of litigation' is sufficient." *Adlman*, 134 F.3d at 1198.  It is therefore well-settled that "conducting an investigation for business purposes on the one hand and in anticipation of litigation on the other are not mutually exclusive . . . ." *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-cv-3923, 2016 WL 8377036, at *9 (E.D.N.Y. Sept. 30, 2016).

Here, as the Stolley Declaration provides, at the time Defendant retained Morgan Lewis in May 2016, "government investigations and civil litigation" arising from "possible violations of laws related to the distribution of its products in China" were anticipated.  Stolley Decl. ¶ 2.  As noted above, in furtherance of the Internal Investigation, "Morgan Lewis attorneys . . . corresponded with current and former Misonix employees . . . to request information in anticipation of litigation . . . ." *Id.* ¶ 5.  Morgan Lewis attorneys also interviewed current and former employees of Defendant, as well as Cicel employees May Lee and Sunny Li.  *Id.* ¶ 3.  As in

*General Motors*, the interviews here were plainly "shaped by the specter of litigation[.]" 80 F. Supp. 3d at 532; *compare id.* ("All witnesses were informed 'that the purpose of the interview[s] was to gather information to assist in providing legal advice to New GM,' and the interviews were conducted with an eye towards the goal of 'facilitat[ing] [Jenner's] provision of legal advice to New GM.'" (alterations in original) (citations omitted)), *with* Stolley Decl. ¶¶ 3, 4 ("[I]n order to facilitate their provision of legal advice, Morgan Lewis attorneys interviewed . . . numerous current and former Misonix employees . . . [and,] at the outset of each interview, . . . informed the witness that . . . the purpose of the interview was to gather information to assist in providing legal advice to Misonix."). Misonix has therefore demonstrated that its investigatory materials—including emails and memoranda derived from the Internal Investigation—were prepared in anticipation of litigation. In addition, the notes taken by Morgan Lewis attorneys during those interviews "reflect the questions counsel chose to ask and mental impressions and opinions of the attorneys who took the notes[,]" Stolley Decl. ¶ 7, and, as such, are entitled to the highest level of work product protection. *See Strougo*, 199 F.R.D. at 521.

Cicel contends that the work-product doctrine does not apply here because Defendant's "investigation documents . . . were prepared, not for litigation, but for the primary purpose of permitting Misonix to file its required Form 10-K and 10-Q statements, [which] are required of publicly listed companies." Pl.'s Reply at 6. As a preliminary matter, Plaintiff misstates the applicable law—to be afforded protection under the work product doctrine, materials need not be prepared *for*

litigation, only *in anticipation of* litigation. *See Adlman*, 134 F.3d at 1198. Bearing this principle and those outlined above in mind, the Court finds Cicel's argument unpersuasive. Although Plaintiff is correct that timely filing of disclosures with the SEC is a business concern, it does not follow that Defendant initiated the Internal Investigation for the primary purpose of complying with its regulatory obligations. *See Symbol*, 2016 WL 8377036, at *9 (upholding assertion of work product doctrine over internal investigation documents despite Chief Financial Officer's testimony that "the most important" reason for engaging in the investigation "was to get the numbers right so that [the company] could file the [10-]Q [.] . . ." (second alteration in original)). Contrary to Cicel's contention, Misonix's letter to the NASDAQ dated November 14, 2016, *see* Cho Aff., Ex. 2(A),[8] does not contradict Stolley's sworn statements establishing that Misonix retained Morgan Lewis to conduct an internal investigation with potential litigation stemming from its relationship with Plaintiff and related government investigations in mind.

Cicel also argues that it is entitled to "any records, recordings and notes of [Defendant's] interview of Cicel personnel[,]" Pl.'s Mem. at 6, namely, May Lee and Sunny Li, pursuant to Federal Rule of Civil Procedure 26(b)(3)(C), which provides:

---

[8] The portion of Defendant's November 14, 2019 letter to the NASDAQ relied upon by Cicel provides:

> Upon completion of the Morgan Lewis investigation and presentation of such to our auditors, Grant Thorton LLP, we believe that we will be able to move forward with filing our Form 10-K for the year ended June 30, 2016 in late December 2016 or January 2017. Further, we then expect to file our Form 10-Q for the first fiscal quarter ended September 30, 2016 by January 31, 2016. This would allow the Company to file its Form 10-Q for the second fiscal quarter ended December 31, 2016 on time, and to return the Company to full compliance.

Cho Aff., Ex. 2(A).

(C) Previous Statement. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

> (i) a written statement that the person has signed or otherwise adopted or approved; or

> (ii) a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement.

Fed. R. Civ. P. 26(b)(3)(C). The Court disagrees with Plaintiff's contention. Initially, according to Stolley, "[n]either the witnesses nor Morgan Lewis made recordings, transcripts, or other verbatim recitations of the interviews, including those of May Lee and Sunny Li, during or after the interviews." Stolley Decl. ¶ 6. Further, the notes Morgan Lewis attorneys took "reflect the questions counsel chose to ask and [their] mental impressions and opinions . . . ." *Id.* ¶ 6. Notably though, the Stolley Declaration does not state that such notes contain solely the mental impressions of attorneys. However, even factual components of the attorney notes need not be produced, because Plaintiff has failed to show "that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). May Lee and Sunny Li were the subjects of the interviews at issue and, as such, should be able to share their recollection of factual details with Cicel. In any event, Plaintiff has failed to articulate the relevance of the materials sought to its claims, much less establish a substantial need for them. *Cf. Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir. 1989) ("[T]here is no substantial need for the

notes since they would not have aided [the plaintiff's] efforts to satisfy the Statute of Frauds.").[9]

Accordingly, the Court concludes that any materials prepared in connection with the Internal Investigation are likewise protected from disclosure under the work product doctrine. *See General Motors*, 80 F. Supp. 3d at 532 (finding the work product doctrine applicable where "interviews were conducted—and the [i]nterview [m]aterials were prepared—in light of the pending DOJ investigation and the anticipation of civil litigation").

### 2. Third-Party Communications

Cicel also asserts that Misonix has improperly withheld on privilege grounds emails "exchanged between various officers, directors, employees, and/or agents of Misonix who were not legal counsel for Misonix." Pl.'s Mem. at 3. Plaintiff objects on this basis to Defendant's inclusion and designation of the following privilege numbers on its privilege log: PRIV0022-23, 110-114, 131-132, 143-144, 173, 176, 208, 254, 259-261, 268-271, 346-347, 357, 359-360, 385-388, 400-401, 403, 406, 409-411, 420, 425, 433, 435, 450, 456, 460, 466-467, 469-470, 472-473, 475-477, 479, 489, 501, 504, 506-514, 519-520, 524-526, 533, 535, 543-544, 547-548, 550-552, 554, 560-561, 566-567, 527[*sic*]-578, 582, 591-594, 596, 614-615, 629, 635, 688, 697, 700, 704, 715, 720, 721-722, 724, 727-729, 731, 733, 735, 739, 742, 754, 762-763, 766, 769-770, 780, 783, 801, 803-807, 811, 814, 818, 820, 822-826, 836, 839-841, 875-878, 895, 901-

---

[9] According to Defendant's March 7, 2019 "supplemental response to Cicel's motion to compel[,]" May Lee's deposition testimony—given subsequent to briefing on the instant motion—further supports Misonix's position that no recordings of May Lee's and Sunny Li's interviews were made. *See* [76]. This Court finds Defendant's representations in the March 7, 2019 letter inconsequential for purposes of the instant motion.

902, 925, 941, 944-945, 961-962, 964-966, 968, 980, 1020-1023, 1025-1035, 1045-1047, 1064-1065, 1068-1069, 1078, 1080, 1099-1100, 1105-1109, and 1111. *Id.*; *see also* Cho Aff., Ex. A ("Priv. Log"). The description for each such entry essentially states that the document identified is an email or email chain prepared in anticipation of litigation, which either provides information requested by counsel or contains legal advice from counsel. *See, e.g.*, Priv. Log at p. 23, PRIV0176 ("Email chain forwarding confidential legal advice from Joyce Cowen* and prepared in anticipation of litigation regarding internal investigation issues and registration issues."); *id.* at p. 44, PRIV0347 ("Email chain with attachments forwarding information requested by Martha Stolley* and Carolyn Silane* to assist in rendering confidential legal advice and prepared in anticipation of litigation regarding internal investigation issues and current Cicel litigation.").[10] The legal advice identified by Misonix allegedly pertains to "internal investigation issues," "registration issues," and the "current Cicel litigation." *See, e.g.*, *id.* at p. 23, PRIV0176 (internal investigation and registration issues); *id.* at p. 139, PRIV0208 (Cicel litigation).

The Court agrees with Plaintiff that Defendant has not met its burden to show that the emails involving exclusively non-lawyers identified in its privilege log are immune from disclosure. To begin with, it is axiomatic that attorney-client privilege extends to a company's employees. *See Upjohn*, 449 U.S. at 389-91, 101 S. Ct. at 682-84. Further, "[c]ommunications among non-attorneys in a corporation

---

[10] Attorneys identified in Misonix's privilege log are denoted by asterisks. *See* Cho Aff., Ex. A at p. 1.

may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services." *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006) (citations omitted), *abrogated by In re Queen's Univ. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016). Yet, "a document will not become privileged simply because an attorney recommended its preparation if it contains merely business-related or technical communications between corporate employees." *Id.* "[I]n analyzing communications created at the direction of . . . counsel, courts must be wary that the involvement of the attorney is not being used simply to shield corporate communications from disclosure." *Id.*

Here, although the Stolley Declaration provides that attorneys from Morgan Lewis "directed employees to gather information to aid counsel in providing legal services[,]" Stolley Decl. ¶ 5, Defendant fails to establish that any given communication listed on Misonix's privilege log involving solely non-attorneys was made pursuant to Morgan Lewis's directive. The conclusory assertions contained in Defendant's brief, *see* Def.'s Mem. at 11-12, and the privilege log itself are insufficient in this regard. *See von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) (rejecting conclusory statements as insufficient to establish attorney-client privilege). Nevertheless, given the likelihood that a significant number of documents associated with the above-referenced privilege log entries are in fact privileged, the Court will not order Misonix to produce all such materials at this time. Instead, the Court directs Defendant to submit the documents in question for *in camera* review by this Court. *See United States v. Atias*, No. 14-cr-403, 2016 WL

3950081, at *3 (E.D.N.Y. July 19, 2016) ("The Court will conduct an *in camera* review for privilege in the first instance of the documents . . . withheld pursuant to the attorney-client privilege.").

### 3. Confidential Treatment

Next, Plaintiff asserts that communications listed on the privilege log involving McManus—namely, documents bearing privilege numbers PRIV0054, 63, 65-75, 77-82, 88-92, 95-97, 107-109, 115-130, 133-136, 138-142, 145-151, 155-172, 174-175, and 177-182—are not privileged because "no attorney-client relationship existed between McManus, on the one hand, and Misonix's in-house counsel or Morgan Lewis on the other, . . . [given that] McManus'[s] interests plainly were divergent and potentially directly in conflict from those of Misonix." Pl.'s Mem. at 4. Cicel's argument is misplaced. As previously discussed, it is well-settled that the attorney-client privilege "applies to communications between corporate counsel and a corporation's employees, made 'at the direction of corporate superiors in order to secure legal advice from counsel.'" *General Motors*, 80 F. Supp. 3d at 527 (quoting *Upjohn*, 449 U.S. at 394, 101 S. Ct. at 685). Here, McManus served as Misonix's Chief Executive officer from May 13, 2016 through September 2, 2016, and all documents involving McManus listed on Defendant's privilege log have dates within that period. Moreover, the statements in the Stolley Declaration regarding Misonix's employees apply equally to McManus. *See, e.g.*, Stolley Decl. ("The interviews, as well as the correspondence with current and former Misonix employees, including with Michael McManus, were all conducted confidentially,

pursuant to the attorney-client privilege between Misonix and its legal counsel."). Thus, the communications between McManus and Defendant's counsel are protected by the attorney-client privilege.

The Court is unconvinced by Cicel's contention that the attorney-client privilege lacks applicability in this instance because McManus's interests purportedly conflicted with those of Defendant. *See* Pl.'s Mem. at 4-5. Plaintiff neither cites legal support for this theory nor submits proof that any such divergence in interests actually existed. And, as Misonix correctly points out, *see* Def.'s Opp. at 13 n.7, even if it did exist, McManus's communications would likely be protected from disclosure under the common interest doctrine. *See Welby v. United States Dep't of Health*, No. 15-cv-195, 2016 WL 1718263, at *7 (S.D.N.Y. Apr. 27, 2016) ("[W]hile some case law has suggested there must be identical legal interests among the parties asserting the common interests, more recent cases have held that the parties need not have total identity of interest as long as a limited common purpose necessitates disclosure to certain parties."). Accordingly, the emails listed on Defendant's privilege log involving McManus and Defendant's counsel are immune from disclosure.

### B. <u>Whether Misonix Has Waived Privilege</u>

Plaintiff also contends that Misonix waived any applicable privilege by: (i) failing to list various documents on its privilege log; (ii) disclosing materials pertaining to its investigation to third parties; and (iii) "expressly putting the investigation conducted by Misonix and Morgan Lewis into issue via its prior court

filings . . . as well as its letter to the NASDAQ.  *See* Pl.'s Mem. at 7-12 (internal citations omitted).

### 1.  Documents Omitted from Misonix's Privilege Log

In support of its initial waiver argument, Cicel asserts that Misonix's privilege log fails to list "letters, memoranda, notes, reports, resolutions, transcripts, information Misonix admittedly disclosed to the SEC or DOJ, or other kinds of documents . . . [that] plainly should exist [.] . . ." Pl.'s Mem. at 7.  Plaintiff contends that Defendant's "failure to list such documents on its privilege log and its service of a misleading, incomplete privilege log should result in a waiver of all investigatory documents not listed on its privilege log." *Id.*

As discussed above, "the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege." *FG Hemisphere*, 2005 WL 545218, at *6 (citations omitted).  Here, Defendant has included only emails on its privilege log. *See generally* Priv. Log.  Further, Misonix maintains—though not by sworn statement—that it "does not possess the documents that Cicel is requesting." Def.'s Opp. at 17.  This contention is also bolstered by Stolley's assertion that the investigatory materials generated by Morgan Lewis, "unless they were in an email, have not been shared with Misonix, any government agency, or any other third party." Stolley Decl. ¶ 8.  Although Defendant's statements may be true in a literal sense, its position on this point is undermined by the notion that "documents held by outside counsel are in the possession, custody, and control of their clients."

*Johnson v. Riverhead Cent. Sch. Dist.*, No. 14-cv-7130, 2016 WL 4507002, at *6 (E.D.N.Y. Aug. 26, 2016); *see also* Fed. R. Civ. P. 34(a)(1) (permitting parties to serve discovery requests for "items in the responding party's possession, custody, or control" and providing that "control of documents does not require legal ownership or physical possession . . ."); *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 12-cv-1540, 2013 WL 139560, at *1 (S.D.N.Y. Jan. 11, 2013) (collecting cases). Therefore, this Court deems Morgan Lewis's investigatory materials within Misonix's "control," as that term is defined in Fed. R. Civ. P. 34(a)(1).

Considering Defendant's apparent failure to list the Morgan Lewis investigatory materials on its privilege log, this Court could "declare all of the purported privileges [with respect to such materials] waived." *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 335 (N.D.N.Y. 2006). Nonetheless, "adjudging [the privilege waived as to] these documents . . . would be too austere a remedy when the deficiencies can be readily rectified at this juncture of the litigation." *Id.* (citing *Export–Import Bank of United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 111 (S.D.N.Y.2005)). Accordingly, particularly considering Defendant's allegation that Cicel failed to meet and confer with respect to this category of documents, *see* Def.'s Opp. at 15, the Court will grant Misonix leave to serve an amended privilege log, which includes all investigatory materials in the possession of Morgan Lewis. *See Trudeau*, 237 F.R.D. at 335 (permitting the defendant to "submit new, more descriptive logs" to the plaintiffs).

2. Disclosure to the SEC

Next, Plaintiff asserts that "Misonix has waived the privilege as a matter of law by disclosing materials pertaining to its investigation to the SEC." Pl.'s Mem. at 8. In support of this argument, Cicel highlights the following passage from Defendant's Form 10-Q[11]:

> For several months, with the assistance of outside counsel, the Company has been conducting the Investigation into the business practices of the independent Chinese entity that previously distributed its products in China and the Company's knowledge of those business practices, which may have implications under the FCPA, as well as into various internal controls issues identified during the Investigation.
>
> On September 27, 2016 and September 28, 2016, we voluntarily contacted the SEC and the DOJ, respectively, to advise both agencies of these potential issues. We have provided and will continue to provide documents and other information to the SEC and the DOJ, and are cooperating fully with these agencies in their investigations of these matters.

*Id.* (emphasis removed) (quoting Cho Aff., Ex. 3).

The voluntary disclosure principles pertaining to waiver outlined above apply equally where, as alleged here, the third party to which otherwise privileged materials are disclosed is the SEC or other government entity. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) ("[V]oluntary submission of the memorandum to the [SEC] waived the protections of the work product doctrine as to subsequent civil litigants seeking the memorandum."). [12]   Here, Misonix

---

[11] "A Form 10-Q is the SEC form used for quarterly reports under . . . 15 U.S.C §§ 78m(a)(2), 78*o*(d)." *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 645 (S.D.N.Y. 2004).

[12] Plaintiff also argues for the first time in its reply brief that Misonix waived privilege by providing its investigation materials to its auditor. *See* Pl.'s Reply at 9. Because Defendant has not

distinguishes *Steinhardt* from the instant case, maintaining that it "has never disclosed any attorney work product or attorney-client privileged documents to the government." Def.'s Opp. at 17 (citing Stolley Decl.). Rather, according to Defendant, it "has voluntarily disclosed to the government . . . the underlying documents related to Cicel's business practices in China and Misonix's concerns about those business practices, and Misonix has produced these documents to Cicel." *Id.*; *see also* Stolley Decl. ¶ 9 ("Misonix has produced to the government documents related to Cicel's business practices in China and Misonix's concerns about those business practices. It is my understanding that these documents have been produced to Cicel in this litigation."). Thus, based on the current record, there appears to be no live dispute with regard to documents submitted by Defendant to the SEC. To the extent, however, that Misonix has provided the SEC with any documents or other information that have not been produced to Cicel in the instant litigation, this Court orders the production of such materials immediately.

### 3. At-Issue Waiver

Additionally, Cicel claims that "Misonix has . . . waived the privilege by expressly putting the investigation conducted by Misonix and Morgan Lewis into issue via its prior court filings . . . as well as its letter to the NASDAQ." Pl.'s Mem. at 10. By way of example, Plaintiff insists that "Misonix's answer repeatedly trumpets that Misonix 'stopped selling product to Cicel after uncovering evidence

---

been afforded the opportunity to respond to this argument, the Court deems it waived for purposes of the instant motion. *See In re Avaya Inc.*, 573 B.R. 93, 103 (Bankr. S.D.N.Y. 2017).

that Cicel's business practices were inconsistent with Misonix's policies and raised concerns under the Foreign Corrupt Practices Act.'" *Id.* (quoting Answer ¶¶ 34, 36, 37, 71). Plaintiff further contends that Defendant's "selective disclosure of purported facts allegedly uncovered by [the Internal Investigation] to justify Cicel's termination[] puts the credibility of its investigation in issue and therefore constitutes a waiver of any privilege with regards to the investigation." *Id.* For instance, Cicel maintains that "serious questions exist as to whether Misonix's . . . assertion in its pleading that Cicel's conduct (as opposed to Misonix's own conduct) raised genuine concerns about Misonix's liability under the Foreign Corrupt Practices Act." *Id.* at 11. Cicel also argues that "Misonix's investigation is further called into question by the fact that Misonix gave a golden parachute to [McManus], despite the fact that . . . [he] allegedly was forced to step down due to his purported direct involvement in FCPA violations while he was Misonix's CEO." *Id.* at 11-12.

Significantly, Plaintiff does not contend that Defendant has put any particular "privileged communication at issue by relying on it to support a claim or defense." *Koumoulis*, 295 F.R.D. at 40. Rather, Cicel asserts only that Defendant put the investigation itself, and not any given privileged material, at issue in this case. *See* Pl.'s Mem. at 9. Absent further detail with respect to the specific communication that Plaintiff claims has been "used as a . . . sword" by Misonix, *see Rubie's Costume*, 2018 WL 4864833, at *2, as well as a description of how Cicel will be prejudiced absent disclosure of that document, this Court is unable to conclude that Defendant has waived privilege with respect to all Internal Investigation

materials. Nevertheless, this determination is made without prejudice to a future similar application predicated upon any instance, or instances, where Misonix has used a specific communication relating to the Internal Investigation in support of its defense. *See, e.g.*, *Hussain v. Burton & Doyle of Great Neck, LLC*, No. 14-cv-5924, 2016 WL 6088309, at *4 (E.D.N.Y. Oct. 18, 2016) (finding privilege waived as to a trust agreement where party submitted several pages of the agreement in support of a motion for summary judgment).

## V.    FEE APPLICATIONS

Finally, both sides request an award of fees and expenses. *See* Pl.'s Mem. at 1; Def.'s Opp. at 9-10. Rule 37 of the Federal Rules of Civil Procedure provides, in relevant part:

(a) Motion for an Order Compelling Disclosure or Discovery.

* * *

(5) Payment of Expenses; Protective Orders.

* * *

(C) If the Motion Is Granted in Part and Denied in Part. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5)(C) (emphasis omitted). Here, in light of this Court's conclusions above, and considering that both sides asserted colorable arguments in

support of their respective positions on each issue, the Court exercises its discretion and denies their applications for fees and costs.[13]

## VI.   CONCLUSION

For the reasons set forth herein, Cicel's motion is granted in part and denied in part.[14] On or before May 13, 2019, Misonix shall:  (i) provide to the Court for *in camera* review all emails listed on its privilege log involving solely non-lawyers, namely, documents bearing privilege numbers:  PRIV0022-23, 110-114, 131-132, 143-144, 173, 176, 208, 254, 259-261, 268-271, 346-347, 357, 359-360, 385-388, 400-401, 403, 406, 409-411, 420, 425, 433, 435, 450, 456, 460, 466-467, 469-470, 472-473, 475-477, 479, 489, 501, 504, 506-514, 519-520, 524-526, 533, 535, 543-544, 547-548, 550-552, 554, 560-561, 566-567, 577-578, 582, 591-594, 596, 614-615, 629, 635, 688, 697, 700, 704, 715, 720, 721-722, 724, 727-729, 731, 733, 735, 739, 742, 754, 762-763, 766, 769-770, 780, 783, 801, 803-807, 811, 814, 818, 820, 822-826, 836, 839-841, 875-878, 895, 901-902, 925, 941, 944-945,  961-962, 964-966, 968, 980, 1020-1023, 1025-1035, 1045-1047, 1064-1065, 1068-1069, 1078, 1080, 1099-1100, 1105-1109, and 1111; (ii) amend its privilege log to include all Internal Investigation materials

---

[13] This Court has the authority to rule on the parties' respective fee applications because "[m]otions seeking Rule 37(b) sanctions for noncompliance with the Court's discovery orders are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction employed disposes of a claim."  *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318, 2017 WL 3671036, at *16 (S.D.N.Y. July 18, 2017) (citations and internal quotation marks omitted), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).

[14] The Court deems Plaintiff's request for an order of preclusion premature and, hence, does not substantively address the issue at this time.  *See Empresa Cubana Del Tabaco v. Culbro Corp.*, No. 97-cv-8399, 2003 WL 1960013, at *1 (S.D.N.Y. Apr. 25, 2003).

in the possession of Morgan Lewis; and (iii) to the extent not already done, produce all responsive materials provided to the SEC.

Dated:      Central, Islip, New York
           April 11, 2019          **SO ORDERED**

                                     s/ Steven I. Locke
                                  STEVEN I. LOCKE
                                  United States Magistrate Judge