```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
```

CICEL (BEIJING) SCIENCE &
TECHNOLOGOY CO., LTD,

        Plaintiff,

    -against-

MISONIX, INC.,

        Defendant.

```
----------------------------------------------------------X
```

**FILED
CLERK**

3:29 pm, Jan 23, 2020

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-1642 (ADS) (ARL)

## APPEARANCES:

**DeHeng Chen, LLC**
*Attorneys for the Plaintiff*
233 Broadway, Suite 2200
New York, NY 10279
    By:    Dean T. Cho, Esq., Of Counsel.

**Reed Smith LLP**
*Attorneys for the Plaintiff*
599 Lexington Avenue, 22nd Fl
New York, NY 10279
    By:    Jennifer L. Achilles, Esq.,
             Jonathan P. Gordon, Esq., Of Counsel.

**Williams & Connolly LLP**
*Attorneys for the Defendant*
725 Twelfth Street NW
Washington, DC 20005
    By:    Alexander S. Zolan, Esq.,
             Joseph G. Petrosinelli, Esq (Pro Hac Vice).,
             Simon Latcovich, Esq. (Pro Hac Vice),
             Tian Huang, Esq. (Pro Hac Vice), Of Counsel.

**Morgan, Lewis & Bockius LLP**
*Attorneys for Movants Audit Committee of Misonix, Inc., John Gildea, T. Guy Minetti, Patrick McBrayer, and Thomas Patton*
101 Park Avenue
New York, NY 10178
    By:    Martha B. Stolley, Esq.,
             Zoe Elizabeth Phillips, Esq., Of Counsel.

**SPATT, District Judge**:

**I.     BACKGROUND**

Plaintiff Cicel (Beijing) Science & Technology Co., Ltd. (the "Plaintiff") moves under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 15 for leave to amend its complaint for the second time in its breach of contract action against Misonix, Inc. (the "Defendant"). The Plaintiff had raised several claims against the Defendant, but the Court granted the Defendant's motion to dismiss all but the claim for breach of contract. The Plaintiff now seeks to amend the damages request on the breach of contract claim, and to add two new claims, for defamation *per se* and for misappropriation of trade secrets. For the reasons that follow, the Court grants the Plaintiff's motion in part and denies it in part.

**A. Underlying Factual History**

In March 2017, the Plaintiff brought this action against the Defendant, as well as several employees of the Defendant who have since been dismissed from the action. ECF 1. The Plaintiff is a Chinse corporation "engaged in the business of promoting, marketing, obtaining product registrations [for] and distributing medical devices in China." *Id.* at 1. The Defendant is a New York corporation that manufactures medical devices. *Id.* at 2.

The Plaintiff alleged that the action arose out of a 2013 distribution agreement (the "Agreement") between the parties whereby the Plaintiff had the exclusive distribution rights in China to certain medical device products manufactured by the Defendant. *Id.* at 3. The Plaintiff also alleged, *inter alia*, the following: (a) the Agreement's term ran from June 2013 to May 2018; (b) the Plaintiff established a "successful distribution network to effectively market and sell Misonix products" in China; (c) the Agreement provided for termination only in the event of four enumerated reasons; (d) at no relevant time did any of those enumerated grounds for

termination occur; (e) in May 2016, the Defendant "abruptly" stopped filling the Plaintiff's orders and repairing or replacing products under warranty; and (f) the Defendant sent a letter on September 27, 2016 purporting to terminate the Agreement and began distributing its products in the same territory through another company. *Id.* at 4–6.

The Plaintiff further alleged that the Defendant acted in bad faith to cut the Plaintiff out of the distribution network it had built and to obtain "detailed and confidential business information" created by the Plaintiff. *Id.* at 6–7. One such example of this alleged bad faith was the Defendant's "spreading false and defamatory rumors that Cicel was involved in giving bribes to Chinese governmental officials, in violation of the Foreign Corrupt Practices Act ("FCPA")." *Id.* at 12–13. The Plaintiff specified that one of those instances of spreading false rumors was in a September 28, 2016 Form 8-K filing with the Securities and Exchange Commission ("SEC"). *Id.*

The Plaintiff raised claims for unfair competition; tortious interference with contract; tortious interference with a prospective contract; breach of the Agreement; conversion; and fraudulent inducement. *Id.* at 14–20. The Plaintiff asked for compensatory damages; punitive damages; preliminary and post-judgment injunctive relief; pre- and post-judgment interest; attorneys' fees; and costs. *Id.* at 20–21.

### B. Procedural History and the Present Motion

In April 2017, the Plaintiff amended its complaint. ECF 6. The amended complaint contained the same six claims as the original complaint. *See id.* However, for the breach of contract claim it no longer asked for damages; instead, it sought for specific performance of the Agreement. *Id.* In October 2017, the Court granted the Defendant's motion to dismiss in part, dismissing all claims except the breach of contract claim, and dismissing all of the Defendant's

employees from the action. ECF 15. As to the breach of contract claim, the Court ruled that the Plaintiff stated a *prima facie* claim and that the allegations were sufficient to seek a remedy of specific performance. *Id.* at 10–11.

Following this Court's order, the Defendant answered the amended complaint and the case proceeded to discovery. ECF 17. The Plaintiff moved to amend the complaint in September 2018, ECF 43, but the Court denied the motion without prejudice and with leave to re-file, ECF 12/11/18 entry. The Plaintiff again moved to amend in December 2018. ECF 63. The Plaintiff again moves to amend its complaint, and in so doing, withdraws the December 2018 motion. ECF 79.

## II. DISCUSSION

### A. Legal Standard For a Motion to Amend

FED. R. CIV. P. 15(a)(2) applies to motions to amend the pleadings once the time for amending a pleading as a matter of right has expired. It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Courts have construed the rule liberally and have said that "the purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the Court from hearing the merits of the claim." *Safety–Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12-CV-4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits").

A court should deny leave to amend only "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or

undue prejudice to the nonmoving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

"The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 64, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502–03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137–38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

Proposed amendments are futile when they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). Under the *Bell Atlantic v. Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." 550 U.S. 444, 570, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks and alterations omitted)).

### B. Application to the Facts of This Case

The Plaintiff seeks leave to amend the breach of contract claim so that it seeks damages instead of specific performance, and to add claims for defamation *per se* under state law and misappropriation of trade secrets under both state law and the federal Defend Trade Secrets Act ("DTSA"). ECF 78. It attaches a copy of a proposed second amended complaint. ECF 81-1. Rather than seeking specific performance of the Agreement, the Plaintiff now asks for $30 million in damages, "along with consequential and incidental damages with interest from the date of the breach." *Id.* at 18.

The proposed defamation claim alleges that the Defendant made false statements about the Plaintiff on three separate occasions: in its September 2016 Form 8-K filing; in a November 2016 letter to NASDAQ; and in a December 2016 communication to one of the Plaintiff's competitors in China. *Id.* at 18. The proposed misappropriation of trade secrets claim alleges that the Defendant obtained, through a former employee of the Plaintiff, confidential information about the Plaintiff and used it for its own commercial advantage, such as the Plaintiff's business plan; pricing and strategy information; sales and budget data; and the Plaintiff's contacts in China. *Id.* at 16–17.

The Court first determines whether these proposed amendments cause the Defendant undue delay or prejudice. Second, it rules on whether the proposed amendments are futile.

#### 1. As to Whether the Plaintiff Acted With Undue Delay or Prejudiced the Defendant

The Plaintiff asserts that the Court should permit it to amend the complaint because the Defendants would not be prejudiced, in that discovery in the case is ongoing and no party has

filed a summary judgment motion. ECF 80 at 19. The Plaintiff further alleges that it has not unduly delayed proceedings because it filed the motion to amend within the period prescribed by United States Magistrate Judge Steven I. Locke. *Id.* As to the specific claims, the Plaintiff argues that the Defendant was always on notice that the Plaintiff suffered monetary loss, and the only Plaintiff's witness thus far deposed answered questions relevant to monetary damages. *Id.*

The Plaintiff also contends that the first amended complaint contained an allegation that the Defendant had made a false statement to the SEC; that the Defendant had been on notice about the second allegation of defamation—the November 2016 statement to NASDAQ—since the Plaintiff had filed its now-withdrawn September 2018 motion to amend; and, that discovery revealed the facts related to the third claim of defamation, that the Defendant had made false statement to one of the Plaintiff's competitors. *Id.* at 20–21. The Plaintiff also argues that it first learned of the facts giving rise to this claim during discovery, when it learned that its former employee had provided information to the Defendant, and that the Defendant had misappropriated a list of the Plaintiff's customers. *Id.* at 21–22.

In opposition, the Defendant asserts that the Plaintiff could have raised some of its proposed new claims when it filed its first amended complaint in April 2017, and that it is thus precluded from doing so now. ECF 88-1 at 19. For instance, it argues, the Plaintiff knew of the Form 8-K filing when it first amended the complaint, yet it fails to explain why it did not bring a defamation claim at that time. *Id.* at 20. The Defendant argues that the Plaintiff also could have asserted money damages in the first amended complaint, yet failed to do so. *Id.* In addition, the Defendant argues that it would face undue prejudice if the Court granted the motion because it would require discovery to start over when it is nearly complete. *Id.* at 22. This issue would particularly prejudice the Defendants as to monetary damages, where the parties have conducted

"no document discovery whatsoever about Cicel's alleged contract damages, misappropriation damages, or defamation damages" *Id.* at 23.

In reply, the Plaintiff contends that it needed fact discovery to confirm that the Defendants knowingly made false statements in the Form 8-K filing. ECF 94 at 8–9. The Plaintiff also argues amending the complaint will not cause undue delay because fact discovery in the case is far from complete. *Id.* at 9. The Plaintiff offers multiple examples of the case's still-developing discovery: (1) Judge Locke has recently ordered the Defendant to "amend its privilege log in this case, submit over 100 documents to the court for an *in camera* privilege review, and produce all of the documents Misonix provided to the SEC and the DOJ"; (2) depositions are ongoing in the case; and (3) the Plaintiff plans to renew several motions to compel that Judge Locke had denied without prejudice. *Id.* at 9–10.

The Court rules that the Plaintiff has not unduly delayed moving to amend the complaint and that the proposed amendments will not unduly prejudice the Defendant. The Court so rules because "'[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend.'" *Babino v. Gesualdi*, 278 F. Supp. 3d 562, 579 (E.D.N.Y. 2017) (Spatt, *J.*) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *see Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (affirming grant of motion to amend after seven-year delay, where defendant did not show prejudice).

The Court finds persuasive the Plaintiff's arguments that discovery in the case remains ongoing, and further notes that neither party has moved for summary judgment. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) ("Amendment may be prejudicial when, among other things, it would require the opponent to

expend significant additional resources to conduct discovery and prepare for trial.") (internal quotation marks omitted); *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399 (S.D.N.Y. 2017) ("Courts are more likely 'to find prejudice where the parties have already completed discovery and the defendant has moved for summary judgment.'") (quoting *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (Summary Order)).

The Court notes that while the Plaintiff knew of the Form 8-K filing at the time of the first amended complaint, it has provided an explanation for not raising it until now; that it needed the discovery process to confirm that the Defendant knowingly submitted a false statement in that Form. *See Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 80 (E.D.N.Y. 2011) (Spatt, *J.*) ("[A]lthough *some* explanation must be provided to excuse a delay, even vague or thin reasons are sufficient, in the absence of prejudice or bad faith.") (internal quotation marks omitted). For the same reason, the Court credits the Plaintiff's explanation about damages; that the term of the contract has expired since the filing of the first amended complaint; and specific performance is no longer possible.

**2. As to Whether the Proposed Amendments Are Futile**

The Plaintiff alleges that the proposed amendments are not futile for the following reasons. As to general damages, the proposed amended complaint states that the Plaintiff suffered "loss of expected profits for the remainder of the term of the Agreement," and "payments to Misonix for products that were never delivered." ECF 80 at 9 (internal quotation marks omitted). As to consequential damages, the Agreement contained a provision titled "Consequences of Termination" that stated "that Misonix understood and foresaw that if it wrongfully terminated the agreement, Misonix would be liable for Cicel's losses including consequential damages." *Id.* at 9–10.

9

As to defamation, the Plaintiff alleges that in each of the three statements—the September 2016 Form 8-K filing, the November 2016 letter to NASDAQ, and the December 2016 communication with one of the Plaintiff's competitors—the Defendant or one of its employees charged the Plaintiff with violating a United States criminal statute that prohibits bribing foreign government officials, and that these statements injured the Plaintiff's business reputation. *Id.* at 11–12. The Plaintiff argues that the defamation claims are not time-barred because they relate back to the April 5, 2017 first amended complaint, which was filed within the one-year statute of limitations for defamation claims, and which provided adequate notice to the Defendant about the statements made in the Form 8-K filing. *Id.* at 12–13. The Plaintiff asserts that the other two alleged instances of defamation relate back because they do not allege a new set of operational facts in that they also claim that the Defendant made statements that impaired the Plaintiff's business reputation. *Id.* at 13. In the alternative, the Plaintiff contends that it would be inappropriate to dismiss a claim on statute of limitations grounds at this stage of the litigation. *Id.* at 13–14. With regard to the misappropriation of trade secrets claim, the Plaintiff contends that the proposed amended complaint provides detailed allegations of specific trade secrets and confidential information obtained by the Defendants and used for their benefit. *Id.* at 15–18.

The Defendant asserts that it was justified in terminating the Agreement because it believed that the Plaintiff had violated the FCPA, namely, by bribing a Chinese government official in 2014. *Id.* at 1, 4. It argues that the defamation and misappropriation claims are futile for the following reasons. ECF 88-1. The Defendant's statements in the SEC filing and the letter to NASDAQ are protected by absolute immunity because they reported on ongoing investigations by quasi-judicial bodies, in this case, the SEC and the DOJ. *Id.* at 16–17. The

claims made in those statements concerned the Defendant, not the Plaintiff, and in any event, the Plaintiff "does not allege that Misonix falsely stated that it reported to the SEC and the DOJ about its knowledge of certain practices." *Id.* at 18–19. Further, to allow the defamation claims would go beyond the one-year statute of limitations. *Id.* at 21. The Defendant also argues that the misappropriation of trade secrets claim is futile because the proposed claim does not allege any actual trade secrets or information that was not to be disclosed pursuant to the Agreement; in fact, when the Court dismissed the unfair competition claim, it held that the Agreement contractually required the Plaintiff to provide the information to the Defendant that it now claims was misappropriated. *Id.* at 10–17.

The Plaintiff replies, contending that the Defendant's claim about bribery has no basis in law or fact, pointing to a public document showing that the Plaintiff was fined in China—two years before the parties signed the Agreement—for making payments to a travel service. ECF 94 at 1–2. As to defamation, the Plaintiff argues it is not challenging whether the statements the Defendant made about itself to the SEC and DOJ are true, it is alleging that the Defendant made false statements about the Plaintiff. *Id.* at 2–3.

In addition, the Plaintiff alleges that when the Court dismissed the unfair competition claim it was because the Defendant obtained the information in question from the Plaintiff pursuant to its obligations under the Agreement. However, the misappropriation claim is based on allegations that the Defendant obtained confidential information "surreptitiously from a former employee of Cicel." *Id.* at 5–6. Further, it argues that while the Agreement obligated the Plaintiff to provide the Defendant with reports on its activities with respect to the Defendant's products, reports on the sales prices of the products, as well as sales reports and forecasts, the Agreement did not require the Plaintiff to provide "the trade secrets described in the [proposed

11

amended complaint]." *Id.* The Plaintiff adds that it has claimed in the proposed amended complaint that the Defendant provided confidential information, such as a customer list that was developed at "considerable effort and expense," to the Plaintiff's competitors, who then exploited that information. *Id.* at 6–7.

The Court rules that the following proposed amendments are not futile, and accordingly grants the Plaintiff leave to amend the complaint with regard to them: the damages remedy for the breach of contract claim; the defamation claim based on the September 2016 Form 8-K filing; and the misappropriation claim. The Court rules that the Plaintiff's other two defamation claims are futile because they do not relate back to the first amended complaint, and the Court thus denies the Plaintiff's motion to the extent it seeks to add those claims.

### a. The Proposed Amended Remedy for Breach of Contract

The Defendant does not challenge the damages request itself on futility grounds, it only challenges the underlying breach of contract claim. The Court has already declined to dismiss the breach of contract claim for failure to state a claim. ECF 15. The Plaintiff has also put forth a plausible allegation that the Defendant's basis for terminating the Agreement was unfounded. Accordingly, the Court grants the Plaintiff leave to amend the complaint with regard to seeking damages as a remedy to the breach of contract claim.

### b. The Proposed Defamation Claim

The Court next rules on the Plaintiff's defamation claims. Under New York law, parties have one year to assert a defamation claim. N.Y. C.P.L.R. § 215; *Shamley v. ITT Corp.*, 869 F.2d 167, 172 (2d Cir. 1989); *Boda v. Phelan*, No. 11-CV-00028, 2012 WL 3241213, at *2 (E.D.N.Y. Aug 6, 2012). "A cause of action for defamation accrues, and the statute of limitation begins to run, from the date that the alleged defamatory statement is first published, not from

when a claimant first acquires knowledge of the statement." *Knoll v. Merrill Corp.*, No. 02-Civ-566, 2003 WL 22682271, at *3 (S.D.N.Y. Nov. 12, 2003). Here, all three alleged instances of defamation occurred more than one year ago, placing each proposed claim outside of the statute of limitations.

FED. R. CIV. P. 15(c) governs when an amended pleading "relates back" to the date the original pleading was filed, even though it was filed outside the applicable statute of limitations. *See Krupski v. Costa Crociere S.p.A*, 560 U.S. 538, 541, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010). An amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original pleading." FED. R. CIV. P. 15(c). Thus, to relate back, "an amendment must concern the general fact situation alleged in the original pleading." *Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018) (Summary Order) (internal quotation marks omitted).

The Plaintiff alleged in the first amended complaint that the Defendant engaged in a scheme to damage the Plaintiff's business reputation in the Form 8-K filing. The addition of a defamation claim now sharpens that prior allegation. *See Goldman*, 733 F. App'x at 570 (citing *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) ("An amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged.").

As to the Defendant's immunity argument, the Court declines to rule on that issue at this stage. The Defendant cites *Fischkoff v. Iovance Biotherapeutics Inc.*, 339 F. Supp. 3d 383, 389–90 (S.D.N.Y. 2018), as well as New York Civil Rights Law § 74, to support its argument that it had absolute immunity for statements made in the Form 8-K filing. ECF 88-1 at 17. But the court in *Fischkoff* "ma[de] no ruling regarding the effect of New York Civil Rights Law § 74 on

Fischkoff's defamation claim." 339 F. Supp. at 390. Further, the parties dispute the extent to which any purported illegal activity by the Plaintiff bore on the SEC's investigation of the Defendant, and resolving that dispute is central to the question of immunity. Under New York law, "witness testimony 'in the course of a judicial proceeding [is] absolutely privileged, as long as such statements are material and pertinent to the questions involved in the proceeding.'" *Greer v. Emp. Health referral Sys., Inc.*, 768 F. App'x 55, 56 (2d Cir. 2019) (Summary Order) (quoting *Stega v. New York Downtown Hosp.*, 31 N.Y.3d 661, 82 N.Y.S.3d 323, 107 N.E.3d 543, 549 (2018) (internal quotation marks omitted)). Accordingly, the parties should be given the opportunity to more thoroughly address this issue.

However, the two other instances of alleged defamation do not appear in the first amended complaint. They occurred months after the Form 8-K filing, and they are thus not a part of the same transaction or occurrence that led to the first instance of alleged defamation. The Plaintiff relies on a Southern District of New York case, *Contemporary Mission, Inc. v. New York Times Co.*, 665 F. Supp. 248, 256 (S.D.N.Y. 1986), for the proposition that the other two instances are part of a "common core of operative facts" raised in the first amended complaint. The Court disagrees. In *Contemporary Mission*, the court allowed amendment of a claim to raise additional instances of libel where the original claims and the proposed new claims were based on the same newspaper article. *See* 665 F. Supp. At 256 ("Because there is only the November 1, 1980 article in question, there is only one 'transaction or occurrence' giving rise to the complaint"). That same case cited an instance in which the "*separate* publication of a libelous statement [was] found to be an entirely different transaction for amendment purposes." *Id.* (internal quotation marks omitted); *see also Goldman v. Barrett*, No. 15-Civ-9223, 2017 WL 4334011, at *7 (S.D.N.Y. July 25, 2017), *aff'd*, 733 F. App'x 568 (2d Cir. 2017) (ruling that

plaintiff's new defamation claim in an amended complaint based on oral statements made by defendants did not relate back to the defamation claim concerning the article published by defendants).

For the foregoing reasons, the Court grants the Plaintiff leave to amend the complaint to raise a defamation claim with regard to the September 2016 Form 8-K filing, and denies the Plaintiff leave to amend the complaint to add defamation claims regarding the November 2016 letter to NASDAQ and the December 2016 statement to one of the Plaintiff's competitors.

### c. The Proposed Misappropriation Claim

The requirements of a misappropriation of trade secrets claim are similar under state and federal law. *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957, 2017 WL 6459464, at *5 (E.D.N.Y. Dec. 15, 2017) (Spatt, *J.*). Trade secrets are defined under the DTSA as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if–
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). A plaintiff succeeds on a DTSA misappropriation claim if she shows that the trade secret was: (A) acquired by someone who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosed by another without express or implied consent. 18 U.S.C. §§ 1839(5)(A), (B).

To state a misappropriation claim under state law, a plaintiff must plead (1) that it possessed a trade secret or confidential information; and (2) that the defendant used the trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *Uni-Sys., LLC. v. United States Tennis Assoc., Inc.*, 350 F. Supp. 3d 143, 171 (E.D.N.Y. 2018); *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 410 (E.D.N.Y. 2012) (Spatt *J.*). Courts rely on the following factors for determining whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of the measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Oneida*, 2017 WL 6459464, at *5.

In this case, the Plaintiff alleges that the Defendant (a) hired one of its former employees to gain the Plaintiff's confidential business information; (b) communicated with the former employee, knowingly seeking confidential information by improper means; (c) received from the former employee Plaintiff's marketing strategy, budget, sales targets, price structure and margin, as well as its business plan; (d) thanked the former employee for gathering the information; and (e) sent this information to one of the Plaintiff's competitors. ECF 80 at 16–17. The Court considers these allegations sufficient to state a misappropriation claim under both state and federal law.

The Court disagrees that the Plaintiff is simply restating its unfair competition claim. The Plaintiff bases its proposed misappropriation claim on the acts of a former employee, while the Court has already ruled that the unfair competition claim was based on the Defendant's

alleged failure to "compl[y] with its obligations under the Agreement." ECF 15 at 13 (internal quotation marks omitted). Thus, the claim raised by the Plaintiff now has a different origin from both the unfair competition claim and the breach of contract claim. *See E.J. Brooks Co. v. Cambridge Security Seals*, No. 12-CV-2937, 2015 WL 9704079, at *11 (S.D.N.Y. Dec. 23, 2015) ("CSS notes several cases which hold that claims for unfair competition or unjust enrichment are duplicative of a claim for misappropriation of trade secrets, *when there is the same underlying factual predicate for each claim*.") (emphasis added); *Faiveley Transp. USA v. Wabtec Corp.*, 758 F. Supp. 2d 211, 221 (S.D.N.Y. 2010) ("Under New York law, where an unfair competition claim and a misappropriation claim arise from the same factual predicate, as in this action, the two claims generally rise and fall together.") (internal quotation marks omitted); *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851, 2006 WL 6937123, at *20 n.21 (E.D.N.Y. July 11, 2006).

The Court also holds that in the proposed amended complaint, the Plaintiff has alleged the existence of trade secrets. They allege that the Defendant obtained a detailed customer list, which, if "developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . . provided the information it contains is not otherwise readily available." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-CV-4887, 2007 WL 952069, at *8–9 (E.D.N.Y. Mar. 29, 2007).

## III. CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's motion to amend in part and denies it in part. The Court grants the plaintiff leave to amend its complaint as to the request for damages on the breach of contract claim; the defamation claim based on the September 2016 letter to the SEC; and the misappropriation of trade secrets claim. The Court denies the Plaintiff

17

leave to amend its complaint as to the other proposed claims. Counsel for the Plaintiff are directed to serve a copy of the amended complaint on the Defendant within twenty (20) days of the date of this order.

It is **SO ORDERED.**

　　　　/s/ Artur D. Spatt　　　　　　　　　　　　　　January 23, 2020

　　Arthur D. Spatt, U.S.D.J.　　　　　　　　　　　　　　　　Date